Mark Miller (#9563)
Brett Foster (#6089)
Tamara L. Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone:  (801) 933-7360
Facsimile:  (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

Mike Keyes (pro hac vice pending)
**DORSEY & WHITNEY LLP**
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone:  (206) 903-8800
Facsimile:  (206) 903-8820
keyes.mike@dorsey.com

*Attorneys for Plaintiff Instructure, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **INSTRUCTURE, INC.**, a Delaware corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**CANVAS TECHNOLOGIES, INC.**, a Delaware corporation,<br><br>    Defendant. | **COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, CANCELLATION OF REGISTRATION, AND DECLARATION OF ASSIGNMENT INVALIDITY**<br><br>Civil No. 2:21-cv-00454-DAK<br><br>Judge Dale A. Kimball |

Plaintiff Instructure, Inc. ("Plaintiff" or "Instructure"), by and through its counsel, alleges and complains against Defendant Canvas Technologies, Inc. ("Defendant") as follows:

### THE PARTIES

1.      Plaintiff Instructure is a Delaware corporation with its principal place of business at 6330 South 3000 East, Suite 700, Salt Lake City, Utah. Instructure provides a cloud-based technology platform that enables uploading, posting, showing, displaying, tagging, blogging, sharing, and providing information over the internet under the CANVAS® trademark. Instructure's

online platform is used by K-12, Higher Education institutions, and private businesses throughout the United States and around the world.

2.      Upon information and belief, Defendant (f/k/a Jumpstart Ventures, Inc.) is a Delaware corporation with its principal place of business at 55 2nd Street, Suite 325, San Francisco, California. Defendant provides a cloud-based technology platform that enables uploading, posting, showing, displaying, tagging, blogging, sharing, and providing information over the internet under the CANVAS trademark. Defendant's online platform is directed at companies and job candidates around the world, and includes a University Solutions platform for candidates from Higher Education institutions.

## JURISDICTION AND VENUE

3.      This is an action arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq*. (the "Lanham Act") and the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338, as it involves claims arising under the Lanham Act.

4.      Upon information and belief, this Court has personal jurisdiction over Defendant because Defendant has established minimum contacts with this forum. On information and belief, Defendant regularly and continuously transacts business in the State of Utah, including by targeting Utah companies and Utah Higher Education institutions as potential customers, doing business with customers located in Utah, promoting its software platform to Utah consumers, registering and granting Utah residents with access to Defendant's online candidate and community platforms, hosting an online messaging board where Utah residents and Utah Higher Education students discuss Utah and Salt Lake City employment opportunities, and creating

confusion with respect to a trademark owned by a Utah-based company.  Further, the harm caused

by the actions alleged herein are felt in Utah and impacts the goodwill and reputation of Instructure

in Utah and beyond. By virtue of these actions, Defendant has purposefully availed itself of the

privilege of conducting business in this State and in this judicial district.

5.      Venue is proper in this Court under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### Instructure's Online Platform and Trademark Rights

6.      Instructure launched its CANVAS® technology platform in June of 2010.

7.      CANVAS is a cloud-based software service platform used by K-12, Higher

Education institutions, and private businesses throughout the United States and around the world.

The CANVAS platform offers a variety of online services for students, employers, schools and

universities, including: (i) CANVAS LMS (learning management system) to support and enhance

content creation, management, and delivery of face-to-face and online instruction, (ii) CANVAS

Studio to enable creation and delivery of video learning experiences, (iii) CANVAS Catalog to

enable institutions to create and maintain a branded marketplace, (iv) a CANVAS assessment

system to measure student learning and preparedness, (v) a CANVAS online skills portfolio and

recruiting system (aka Portfolium) to assist and guide students in showcasing their online

portfolios to employers, (vi) CANVAS Network to enable institutions to offer and deliver online

content beyond their own student-body, and (vii) a CANVAS ePortfolio solution that enables users

to collect and document their educational projects and experiences and showcase their experience

and work for future employers.

8.      Instructure's CANVAS platform has enjoyed widespread success. By February of

2011, at least 26 educational institutions were operating on the CANVAS platform. By October of

2012, the number of educational institutions on CANVAS had grown to over 300 and more than 4.5 million users connected to CANVAS at that time.

9.      Today, Instructure's diverse CANVAS platform serves as a connection hub for students, educators, parents, content providers, businesses, employers, and recruiters. The CANVAS platform currently has over 6,000 customers in more than 90 countries.  More than 30 million users currently connect to the CANVAS platform across the globe.  In July 2021, Instructure became a publicly-traded company with a proposed $250 million IPO.

10.      On April 1, 2010, Instructure filed U.S. Trademark Application Serial No. 85/004,447 to register CANVAS as a service mark in International Class 42 for "application service provider (ASP) featuring software for use in educational course and curriculum management, online communication between teachers, academic researchers, and students, tracking student progress, and for facilitating and conducting online connections, collaborations, and interactive discussions between classroom students; technical support services, namely troubleshooting of computer software problems."

11.      As a result of this application, Instructure has nation-wide constructive use priority in the CANVAS Mark for the foregoing services based on its April 1, 2010 application date.

12.      On January 3, 2012, the United States Patent and Trademark Office issued to Instructure U.S. Registration No. 4,080,698 ("the '698 Registration") on the Principal Register for the CANVAS mark.

13.      Instructure is the owner of the '698 Registration, it is valid and incontestable.

14.      Instructure claims a first use in commerce of the CANVAS mark in June 2010. A true and correct copy of the '698 Registration is attached hereto as **Exhibit A**.

15.     On May 22, 2012, Instructure filed U.S. Trademark Application Serial No. 85/632,326 to register CANVAS as a service mark in International Class 42 for "Application service provider (ASP) featuring software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network, all excluding support services in the fields of science, engineering, aviation, petrochemical, and geographical information system."

16.     As a result of this application, Instructure has nation-wide constructive use priority in the CANVAS Mark for the foregoing services based on its May 22, 2012 application date.

17.     On April 25, 2017, the United States Patent and Trademark Office issued to Instructure U.S. Registration No. 5,191,435 ("the '438 Registration") on the Principal Register for the CANVAS mark.

18.     Instructure is the owner of the '435 Registration.

19.     Instructure claims a first use in commerce of the CANVAS mark in May of 2012. A true and correct copy of the '435 Registration is attached hereto as **Exhibit B**.

20.     Instructure's efforts and accomplishments have contributed to its reputation and goodwill, making Instructure's CANVAS a well-known and recognized name across the globe.  In recent months, Instructure's CANVAS website has been among the top 20 most visited websites in the United States.

21.     Instructure enjoys success and a highly regarded reputation in its field due in large part to its use of, and rights in, the CANVAS mark.  The CANVAS mark is well-known in higher education institutions, K-12 schools, and businesses in 90 countries, including all Ivy League Universities in the United States, State Universities from California to Florida, and many of the nation's largest K-12 systems.

4818-2354-1747\1

22.     Instructure has made significant expenditures and sacrifices to achieve the success it now enjoys as the market share leader for LMS. Instructure enforces its rights in the CANVAS mark to ensure its continued success and excellent reputation.

23.     As a result of Instructure's continuous use of the CANVAS mark, including advertising and selling services under this mark, the CANVAS mark has become an asset of substantial value to Instructure as a distinctive indication of the origin and quality of Instructure's services. Instructure uses the CANVAS mark in interstate commerce in connection with the sale and advertising of its online platform and other services nationwide and throughout the world.

### Jumpstart Rebrands to Canvas and Infringes the CANVAS Mark

24.     Upon information and belief, around June of 2017, Jumpstart Ventures, Inc. was launched as an online technology platform that connected job candidates with employers.

25.     From its launch in June of 2017 until on or about May 24, 2021, Jumpstart's online platform operated on www.jumpstart.me.

26.     On or about May 24, 2021, Jumpstart publicly announced its rebrand as "Canvas."

27.     On May 24, 2021, Defendant published a press release titled "The Journey from Jumpstart to Canvas," in which Defendant explained its name change as follows:

"With our mission to make the world more equitable and our platform as a tool to make that happen, we decided to accelerate our product roadmap to serve not just early career recruiting teams, *but talent teams at ALL levels*. . . . **From that brainstorm, Canvas was born**.  It was more than just a change in our company name. Where Jumpstart began as a platform to help people *jumpstart* their career, Canvas could expand that journey and become a *canvas* upon which they paint the story of their life & career to get discovered for who they are and how they want to uniquely represent themselves.  With that we decided to close the chapter as Jumpstart and begin this new phase of growth as Canvas. . . . That's why we want a name and brand that represents how big our mission is and what we stand for while empowering us to progress into what we'll do tomorrow and beyond."

6

28.     As stated above, as of April 2010, Instructure had constructive use priority for the CANVAS mark under the '698 Registration, and it had constructive use priority for CANVAS under the '435 Registration as of May 2012.

29.     Years prior to Jumpstart's rebranding to Canvas for its career platform that allows users to "paint the story of their life & career to get discovered for who they are and how they want to uniquely represent themselves," Instructure offered its users the very same services through its CANVAS ePortfolios, which allows users to build an unlimited number of ePortfolios to collect and showcase their educational experiences, projects, and professional work product for friends and future employers. *See* https://community.canvaslms.com/t5/Canvas-Basics-Guide/What-are-ePortfolios/ta-p/1.

30.     Despite this, upon information and belief, on or about May 26, 2021, Defendant acquired the www.canvas.com domain from Branded Holding Group, LLC ("BHG") in a lease to own deal.

31.     Upon information and belief, prior to Defendant's acquisition of the www.canvas.com domain, BHG simply parked and held the domain with the obvious intention to cash in on the domain's clear commercial value at the right time.  At one point Instructure offered to purchase the domain, but BHG demanded an unreasonably-high price.  Instructure was not willing to pay what BHG demanded, but cautioned BHG that it should not sell this domain to anyone operating in similar channels with similar services to Instructure's CANVAS-branded platforms.  Unfortunately, that is exactly what BHG did when it licensed the domain to Defendant.

32.     Upon information and belief, prior to Defendant' acquisition of the www.canvas.com domain, the only content located at the domain was "Canvas.com," as shown by this screenshot captured by the Wayback Machine (a/k/a Internet Archive) on February 20, 2020:



Canvas.com

33.     In a news story published on May 26, 2021, one commentator recognized the significance of Defendant' acquisition of the www.canvas.com domain:

> "Jumpstart's rebrand to Canvas also sees the company move to the incredible Canvas.com domain name. In terms of digital branding, that is an enormous step up from jumpstart.me, and cements an instant sense of trust, legitimacy, and legacy."

34.     The problem for Defendant, however, is that at the time of Defendant's rebrand to Canvas and acquisition of the canvas.com domain, Instructure had already been operating its technology services platform under its federally registered CANVAS marks for over eleven years offering many of the same services to the same target audience.

35.     The significance of Defendant's rebranding to CANVAS, a well-known and widely published and used mark owned by Instructure, was not lost on consumers.

36.     For example, shortly after the rebrand, Defendant published an announcement on its community platform announcing the name change:



**Sara Son** in *Announcements*
about 2 months ago · 13,198 Views

**It's official: Jumpstart is now Canvas** 🕐

If you haven't heard the news already, we officially rebranded as Canvas 🎨
This rebrand was about better amplifying our commitment to you. We stand with you.
Where you're from, who you love, your gender, your body, your race, your journey.

Canvas is where you can show who you really are, and **get hired for it**.

37.     In response, and evidencing that Defendant targets the same audience that uses

Instructure's CANVAS platform, one Canvas user commented as follows:



38.     Other Canvas users commented as follows:



39.     Instructure has received similar communications from its user community.

4818-2354-1747\1

40.     These consumers' expressed apprehension over Defendant's rebrand to Instructure's CANVAS mark was well-founded.  There are significant similarities and points of overlap between Instructure's CANVAS platform and Defendant's Canvas platform.  First, as explained above, Defendant's Canvas platform offers university students and job seekers the exact same service that Instructure offers with its CANVAS ePortfolios product: an online portfolio to showcase the student's achievements, projects, educational experience and skills.  Defendant's Canvas platform offers university students the ability to "show who you are."  Similarly, Instructure's Canvas platform offers university students an ePortfolio product to "showcase professional-quality work for prospective employers."  Defendants are offering the same services to the same end users under the identical CANVAS mark.

41.     In addition to providing identical services to identical audiences, both Canvas platforms provide a "community" where users interact with each other, post questions and comments, gather information, and learn from each other.

42.     Instructure's CANVAS community, which has over 1,330,000 members, is for "Canvas users sharing, collaborating, and shaping Canvas together," as shown by the following screen shot of Instructure's Canvas community:



43.    Similarly, Defendant's "Canvas talent community" allows its members to ask questions, learn from seasoned mentors, and network:



44.    Users of both Canvas platforms are represented graphically by squares or icons containing the user's picture, name, and title, as shown by the following screenshots:



4818-2354-1747\1



45.     Part of both Canvas platforms' mission is to "align" their respective users with job opportunities to help them promote themselves to future employers:



**Aligning Student and Institutional Success**

The road to student success begins when students can showcase the skills they acquired throughout their higher education journey and connect their abilities to relevant job opportunities. As institutions strive to support students in taking this important next step, educators must also have a way to demonstrate the value of their programs.

But how can a one-page resume capture all of the achievements and abilities obtained in one's college career?

Digital folios like Portfolium allow students to showcase what they know in an intuitive, visual way so they can connect with the right employers and opportunities, and track their growth over time.

Download the eBook to see how Portfolium contributes to student success by:

• Tracking and measuring learning progress

• Providing certified evidence of skills

• Connecting students with relevant job opportunities



Home › Canvas › Canvas Basics Guide › **What are ePortfolios?**

## What are ePortfolios? 🖼

ePortfolios are tied to the user's profile and not to to a specific course. Users who are enrolled in a course can build an unlimited number of ePortfolios in which to collect and document their educational projects, submissions, experiences, and other work products. Users can keep ePortfolios private or share with other students, instructors, and/or future employers.

In Canvas, ePortfolios remain active as long as the user is in the institution's SIS and maintains a school login. Canvas also allows users to export ePortfolios to a zip file. ePortfolios can be set to allow private or public access. Admins can download a report of all ePortfolios in an account from the Account Settings page.

## When would I use ePortfolios?

### What's an ePortfolio?

ePortfolios are a place where you can display and discuss the significant submissions and experiences that are happening during your learning process. You can use an ePortfolio to:

- Display the papers you're proud of for more than just your instructor to see
- Talk about all the thought and work that went into your class submissions
- Gather an overview of your educational experience as a whole
- Share your work with friends, future employers, etc.

ePortfolios can be public for everyone to see, or private so only those you allow can see, and you can change that setting at any time.

Ready to get started? Click the button.

+ Create an ePortfolio

4818-2354-1747\1



46.     Both platforms provide resources for their members that are graphically represented

by visually similar clickable icons:

 

47.     Further, the login screens for both Canvas platforms are highly similar visually,

using a circular design next to the CANVAS mark, and both invite users to join by asking if users

4818-2354-1747\1

"Need a Canvas account?":

 

48.     As shown by these screenshots, the parties' respective Canvas platforms are visually similar, provide the same services, and target the same group of higher education students about to enter the job market.  On information and belief, Defendant adopted the CANVAS mark and appropriated an aesthetic similar to Instructure's branding with the intent to benefit and profit from the wide-spread name recognition and goodwill Instructure has built in the CANVAS mark for more than a decade.

49.     Instructure's Canvas platform is not just for students, however. As Instructure states on its website located at www.instructure.com/canvas, Canvas is "built to make teaching and learning easier for everyone," including "business leaders." Canvas invites business leaders to "learn more about how to make Canvas work with your institution":



50.     As the screen shot above indicates, Fortune 1000 companies are using Instructure's

Canvas platform.

51.     Similarly, Defendant touts on its website that Fortune 500 companies are using its

Canvas platform:



52.     As a result, Instructure and Defendant have a large segment of overlapping target customers as both companies promote their online technology platforms to higher education students entering the job market and to prospective employers.

53.     Not only do Instructure and Defendant target the same end users, they actually have many common customers. Given the widespread use of Instructure's CANVAS platform at every Ivy League University and many State Universities across the country, millions of higher education students about to enter the job market are undoubtedly users of Instructure's CANVAS platform and are the target audience of Defendant's new Canvas platform.

54.     As the similarities and crossover in the Canvas platforms indicate, and as the comments reproduced above from Canvas users suggest, Defendant's use of the CANVAS mark creates a substantial likelihood of consumer confusion or mistake regarding the affiliation, connection, or association of Instructure's Canvas platform with Defendant's Canvas platform, and may cause consumers to mistakenly believe that Instructure owns or has sponsored or approved Defendant's platform.

**After Instructure Raises the Issue of Defendant's**
**Infringement, Defendant Attempts to Buy Trademark Rights**

55.     After learning about Defendant's rebranding and adoption of Instructure's CANVAS mark, Instructure sent a cease and desist letter to Defendant on June 2, 2021. A true and correct copy of the letter is attached hereto as **Exhibit C**.

56.     In the letter, Instructure advised Defendant of Instructure's trademark rights in CANVAS and attached Instructure's '698 Registration and '435 Registration for CANVAS.

57.     Thus, as of June 2, 2021, Defendant had actual notice of Instructure's '698 Registration and '435 Registration for Canvas.

4818-2354-1747\1

58.     In response to Instructure's demand, Defendant indicated that it would be willing to rebrand and stop using CANVAS, requested a reasonable rebranding transition period, and requested money from Instructure to help with Defendant's rebranding costs, all of which Instructure was willing to provide if Defendant also transferred the canvas.com domain to Instructure.

59.     Despite Defendant's initial suggestion to Instructure that it would rebrand to avoid infringing Instructure's CANVAS mark, Defendant appears to have misrepresented that intention, as it deliberately delayed those negotiations while it was actually secretly looking for a way to circumvent Instructure's prior rights in the CANVAS mark.

60.     Instructure recently learned that on or about July 13, 2021, *after* Defendant received the cease and desist letter and *after* Defendant had actual knowledge of Instructure's Registrations for the CANVAS mark, Defendant supposedly acquired through assignment (the "Assignment in Gross") trademark Registration No. 4,737,811 for the following mark (the "'811 Registration"):



61.     The '811 Registration was filed on April 25, 2014, several years after Instructure's applications to register CANVAS were filed, and it issued on May 19, 2015.  The original registrant of the '811 Registration is an individual by the name of Ms. Colby Smith.

62.     The '811 Registration states that the mark "consists of the word 'canvas' in lower case lettering with the wording 'concierge alliance napa valley & sonoma' below within brackets. The letters of the word 'canvas' appear to two successions of the colors coral, lime, and blue, and the remaining text below and the brackets appear in the color black."

63.     The '811 Registration is for "conducting trade shows in the field of hotel, food service, hospitality, and concierge services; conducting, arranging and organizing trade shows and trade fairs for commercial and advertising purposes; membership club services, namely, providing on-line information to members in the fields of branding, business development, business marketing, and marketing; organizing, promoting and conducting exhibitions, tradeshows and events for business purposes."

64.     The description of goods covered by the '811 Registration does not cover the recruitment platform offered by Defendant.

65.     The "canvas" portion of the mark covered by the '811 Registration is, and is known by the public as, an acronym that stands for the **C**oncierge **A**lliance **N**apa **V**alley **A**nd **S**onoma.  A review of the services associated with the mark covered by the '811 Registration, reveals that the business has largely (if not exclusively) marketed itself as Concierge Alliance and provides services related to the wine hospitality industry in California ("Concierge Alliance").

66.      For example, according to Concierge Alliance's website located at www.conciergealliance.com, it is a "membership organization that supports the Hospitality Communities of Wine Country."  The members of this alliance are listed on the website and they are almost <u>all</u> exclusively connected the wine and hospitality industries in California.

67.     Upon information and belief, Defendant has no current plans to enter the wine hospitality business.

68.     Upon information and belief, Defendant acquired the "canvas [concierge alliance napa valley & sonoma]" mark from Ms. Smith only in a misguided and futile attempt to purportedly gain instant trademark rights in CANVAS even though these "rights" flow from Ms.

Smith's wine-centric alliance that has no logical, legal, or commercial connection or relation to Defendant's actual business.

69.     Moreover, Defendant's May 2021 rebranding was not to the colorful logo mark that it acquired by assignment in July of 2021.

70.     In fact, there are striking differences between the two marks:

       

71.     Upon information and belief, Defendant is not currently using Ms. Smith's colorful "canvas [concierge alliance napa valley & sonoma]" logo and has no intention to do so.  Quite the contrary.  It appears to be business as usual for Ms. Colby Smith.  Even after she purportedly "assigned" her rights in the '811 Registration earlier this month, she is still using the mark to promote her wine country alliance on conciergealliance.com.

72.     Moreover, Ms. Smith's '811 Registration includes the words "[concierge alliance napa valley & Sonoma"] as part of the registered mark to indicate the meaning of "canvas" as an acronym, so Defendant could not possibly have a present or future intent to use this mark in connection with its current commercial offerings.

73.     Instructure also recently discovered that on July 2, 2021, exactly one month after Instructure sent its cease and desist letter to Defendant, Ms. Smith, the owner of the "canvas [concierge alliance napa valley & sonoma]" mark filed with the USPTO application No. 90/808,387 to register "Canvas" as a word mark (the "Application").  On information and belief, this Application was filed after the Concierge Alliance owner had spoken with Defendant and was part of Defendant's scheme to manufacture the appearance of established trademark rights in the CANVAS mark.

4818-2354-1747\1

74.     The Application lists two categories of services covered by the applied-for mark.

75.     First, the Application covers the identical classification of goods as did the '811 Registration with two notable additions: "providing business information via a web site" and "employment recruiting services; employment hiring, recruiting, placement, staffing and career networking services."

76.     The Application claims a first use in commerce for this classification of services of September 1, 2010 based on the prior business activities of Concierge Alliance in the wine and hospitality industry.

77.     Even assuming the legitimacy of the Application, the asserted first use in commerce of Instructure's CANVAS mark under the '698 Registration of June 2010 has priority over this newly-applied for mark.

78.     The Application also lists the following classification of goods: "Providing a website featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment; Providing an interactive website for online recruiting of human resources and for communication among employers and candidates for employment; Providing a website featuring educational information in field of hotel, food and beverage, hospitality, wineries and concierge services."

79.     Upon information and belief, this classification was written strategically to cover the services provided by Defendant under the CANVAS mark for the first time in 2021.

80.     The Application claims a first use in commerce for this classification of July 8, 2013.  On information and belief, the Concierge Alliance has not offered the full scope of these services under the CANVAS mark such that associating this statement of services with a first-use date of July 8, 2013 is fraudulent.

81.     On information and belief, the stated additional services in the Application are beyond the scope of actual services provided by Ms. Colby Smith and the Concierge Alliance.

82.     On information and belief, the additional services added to the Application are based on a small, informal community job-posting board added to the Concierge Alliance website and described as follows: "CANVAS hears about job openings from time to time, and also from people looking for new positions. In some small way we are happy to very informally help make introductions. To better keep track of what we hear we now have this simple, discreet, page to collect this information. The information collected here is private in our secure administration files. OR... if you wish to have it seen by others you can check the box to make it visible. **Disclaimer: CANVAS is not an employment agency or employment search firm. We are offering an informal support when we hear about opportunities." https://web.archive.org/web/20110616221459/http://conciergealliance.com/JobBoard-post.

83.     The forgoing community job board for the wine and concierge industry of Napa Valley and Sonoma on Concierge Alliance's website does not constitute broad generalized employment recruiting services or employment hiring, recruiting, placement, staffing and career networking services unlimited in geographical or industry-specific scope.

84.     The community job board for the wine and concierge industry of Napa Valley and Sonoma on Concierge Alliance's website does not constitute a website *featuring* technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment unbounded by industry or geography.  Nor does it constitute an interactive website for online recruiting of human resources and for communication among employers and candidates for employment unlimited in industrial and geographical scope.

85.     The Concierge Alliance and Ms. Colby Smith do not offer, and never have offered, a software platform designed to help companies recruit a diverse team of employees with filtering and data analytics capabilities as does Defendant.

86.     Even assuming the accuracy of the Application, the asserted first use in commerce of Instructure's CANVAS mark under the '698 Registration of June 2010 has priority over this newly-applied for mark. In addition, the asserted first use in commerce of Instructure's CANVAS mark under the '435 Registration of May 2012 also has priority over this newly-applied for mark.

87.     The Assignment in Gross also assigned the Application to Defendant. A true and correct copy of the Assignment in Gross is attached hereto as **Exhibit D**.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement Under § 32 of the Lanham Act)

88.     Plaintiff repeats, realleges, and incorporates each of the foregoing allegations as if fully set forth herein.

89.     Instructure is the owner of the '698 Registration for the CANVAS mark, which is registered on the Principal Register.

90.     Instructure has been using the CANVAS mark in interstate commerce since at least June of 2010 in connection with an online technology platform for communications between students, teachers, and others, and for facilitating and conducting online connections, among other things.

91.     Instructure is also the owner of the '435 Registration for the CANVAS mark, which is registered on the Principal Register.

92.     Instructure has been using the CANVAS mark under the '435 Registration in interstate commerce since at least May of 2012 in connection with an online technology platform

that enables uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network.

93.     Instructure's CANVAS mark is distinctive of and has become renown as a symbol for Instructure's quality educational and networking platform services to students, job candidates, and companies throughout the United States and the world.

94.     On or about May 24, 2021, Defendant announced its rebranding from Jumpstart to Canvas and began using the CANVAS mark to promote, offer for sale, and sell its technology platform services to students, job candidates, and companies, including services essentially identical to those offered by Instructure under the CANVAS mark.

95.     Defendant's actions as described herein constitute trademark infringement of Instructure's CANVAS mark, including the rights under the '698 Registration and '435 Registration under 15 U.S.C. § 1114, in that Defendant's use of the CANVAS mark creates a likelihood of confusion among the consuming public as to the source, origin, or association of the parties, or is likely to cause mistake or to deceive.

96.     Upon information and belief, Defendant was aware of Instructure's CANVAS marks when it committed the acts as alleged herein and intended to profit from and appropriate the goodwill and name recognition Instructure had established in the CANVAS mark for over a decade.

97.     Defendant committed its acts of infringement in willful and flagrant disregard of Instructure's lawful rights.

98.     Defendant will, if not enjoined by this Court, continue its acts of trademark infringement as set forth above.

4818-2354-1747\1

99.     Defendant's trademark infringement has caused and continues to cause damage and irreparable injury to the value and goodwill of Instructure's registered CANVAS mark, as well as damages and irreparable injury to Instructure's business, goodwill, and reputation. Instructure has no adequate remedy at law because damages are continuing and difficult to ascertain. On information and belief, Defendant's continued use of CANVAS is deliberate, willful, fraudulent, and constitutes knowing infringement of Instructure's mark, and makes this case exceptional.

100.     By virtue of the foregoing, and pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), Instructure is entitled to an order of this Court, effective during the pendency of this action and thereafter to be made permanent, enjoining Defendant its officers, agents, assigns, and employees from using Instructure's CANVAS mark or any other confusingly similar marks in the advertising, marketing, or sale of products or services from Defendant.

101.     By virtue of the foregoing, Defendant's conduct is and has been exceptional and Instructure is entitled to an award of treble damages and attorneys' fees under § 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

102.     By virtue of the foregoing, Instructure is entitled to monetary damages, together with interest thereon, including an award of Instructure's sustained damages and Defendant's profits realized under the CANVAS mark.

## SECOND CLAIM FOR RELIEF
### (Unfair Competition and
### False Designation of Origin Under § 43 of the Lanham Act)

103.     Plaintiff repeats, realleges, and incorporates each of the foregoing allegations as if fully set forth herein.

104.     Instructure has been using the CANVAS name and mark for its online platform continuously since June of 2010, and accordingly has developed common law rights therein.

4818-2354-1747\1

105.    Instructure's CANVAS mark is distinctive and has acquired secondary meaning.

106.    Defendant's actions of using CANVAS as described herein in its advertising, marketing, and selling of products and services constitutes a violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), on the ground that it creates a likelihood of confusion among prospective purchasers as to the source, origin, or association of the parties, and further on the grounds that such usage induces, or is likely to induce, prospective purchasers and other to believe that Defendant's services and products are performed, manufactured, endorsed, or approve by, or otherwise connected in some way with, Instructure.

107.    Defendant was aware of Instructure's CANVAS mark when it committed its acts of infringement and intended to profit from and appropriate the goodwill and name recognition Instructure had established in the CANVAS mark for over a decade.

108.    Upon information and belief, Defendant intends to cause confusion and mistake and intend to deceive the buyers of its services and products into believing that they are buying products or services produced by, marketed by, sponsored by, approved of, or licensed by Instructure.

109.    Defendant's actions as alleged herein infringe Instructure's common law and registered trademark rights under federal common law, Utah law, and constitute acts of unfair competition.

110.    Defendant will, if not enjoined by this Court, continue its acts of trademark infringement as set forth above. Such improper acts have caused and will continue to cause Instructure immediate and irreparable harm.

111.    By virtue of the foregoing, and pursuant to Section 34 of the Lanham Act (15 U.S.C. § 1116), Instructure is entitled to an order of this Court, effective during the pendency of this action

and thereafter to be made permanent, enjoining Defendant its officers, agents, assigns, and employees from using Instructure's CANVAS mark or any other confusingly similar marks in the advertising, marketing, or sale of products or services from Defendant.

112.    By virtue of the foregoing, Instructure has suffered damages, the exact amount of which it has not yet been able to determine, and is entitled to recover Defendant's profits, sustained damages and its costs under 15 U.S.C. § 1117.

113.    By reason of the foregoing, and pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117), Defendant's conduct is and has been exceptional and Instructure is also entitled to injunctive relief, attorneys' fees, treble damages, together with interest thereon, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (Cybersquatting Under § 43 of the Lanham Act)

114.    Plaintiff repeats, realleges, and incorporates each of the foregoing allegations as if fully set forth herein.

115.    On information and belief, in May of 2021, Defendant acquired the domain name www.canvas.com in a lease to own transaction.

116.    Upon information and belief, Defendant is the current user of the www.canvas.com domain name.

117.    The domain name canvas.com is identical to the CANVAS marks owned by Instructure.

118.    The domain name canvas.com is likely to cause confusion, mistake, or to deceive the public as to the identity or origin of Defendant's services.

119.    Upon information and belief, Defendant acquired and uses the domain name www.canvas.com with the bad faith intent to profit from Instructure's goodwill in its CANVAS marks.

120.    Defendant, even after being notified of Instructure's rights in the CANVAS mark, continues to utilize www.canvas.com with the willful, bad faith intent to trade on Instructure's reputation and goodwill established in the CANVAS mark.

121.    Defendant has had actual knowledge of Instructure's rights in the CANVAS mark, and has willfully and deliberately infringed, and continues to infringe, such rights.

122.    Unless www.canvas.com is forfeited or cancelled by this Court, Defendant will continue its infringing actions resulting in damage to Instructure and its extensive business and goodwill in the CANVAS mark.

### FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment of Invalid Assignment under 28 U.S.C. § 2201)

123.    Plaintiff repeats, realleges, and incorporates each of the foregoing allegations as if fully set forth herein.

124.    An actual controversy exists between the parties as to the invalidity of the Assignment in Gross in that Defendant claims ownership of the '811 Registration and the Application by virtue of the Assignment in Gross and has refused and declined to cease infringing Instructure's CANVAS mark on that basis.

125.    The assignment to Defendant was not accompanied by any portion of the assignor's business and assets and Defendant is not using and has no plans to use the "canvas [concierge alliance napa valley & sonoma]" mark.

4818-2354-1747\1

126.     The goodwill associated with the term "canvas" in the '811 Registration and in the Application stems from "canvas" as an acronym for **C**oncierge **A**lliance **N**apa **V**alley **A**nd **S**onoma and carries that meaning and context to consumers and has no goodwill apart from that meaning.

127.     Defendant's business and services are not related to the concierge industry in Napa Valley and Sonoma, and Defendant does not offer services substantially similar to those offered by Ms. Colby Smith and the Concierge Alliance.

128.     Defendant does not and, on information and belief, has no intention of promoting itself as offering any services tailored to the concierge and wine industry in Napa Valley and Sonoma.  Therefore, Defendant's business and services are wholly disconnected from the goodwill and meaning of "canvas" in the '811 Registration and in the Application.

129.     Although the Assignment in Gross purports to assign the goodwill attendant to the mark covered by the '811 Registration, the reality of the transaction did not transfer any goodwill associated with the mark covered by the '811 Registration.

130.     Defendant has, therefore, attempted to acquire rights to the "canvas [concierge alliance napa valley & sonoma]" mark in order to use them in a manner wholly unrelated to the business and services underlying the goodwill and public recognition of the mark, which will confuse and deceive the consuming public.

131.     Similarly, with respect to the Application, on information and belief, the Concierge Alliance has not offered the full scope of the services identified in the Application under the CANVAS mark such that associating this statement of services with a first-use date of July 8, 2013 is fraudulent.

4818-2354-1747\1

132.     The Assignment in Gross through which Defendant claims to have acquired trademark rights is an invalid assignment and of no force or effect for the reasons set forth in this Complaint.

133.     Accordingly, Instructure is entitled to a declaratory judgment that the purported assignment of the '811 Registration and the Application is invalid Assignment in Gross and of no force or effect.

## FIFTH CLAIM FOR RELIEF
### (Cancellation of the '811 Registration Under 15 U.S.C. § 1119)

134.     Plaintiff repeats, realleges, and incorporates each of the foregoing allegations as if fully set forth herein.

135.     In the alternative, if the Assignment in Gross is a valid assignment, which Instructure disputes as indicated in its Fourth Claim for Relief above, then the '811 Registration for the "canvas [concierge alliance napa valley & sonoma]" mark has been abandoned.

136.     Defendant is not using the "canvas [concierge alliance napa valley & sonoma]" mark covered by the '811 Registration and, upon information and belief, has no present or future intention to use the mark.

137.     Defendant is not offering the services identified in the '811 Registration nor any services substantially similar thereto and, upon information and belief, has no intention to do so, presently or in the future.

138.     The actual services offered by Defendant are not substantially similar to the actual goods and services provided by the Concierge Alliance and bear no relation to the goodwill underlying the "canvas" acronym covered by the '811 Registration.

139.     On information and belief, Defendant has no intention of offering any services specifically tailored and promoted to the concierge and wine industry in Napa Valley and Sonoma.

4818-2354-1747\1

140.    Because Defendant is using the fiction of the Assignment in Gross to justify its continued use of the CANVAS mark and thereby continuing its infringement of Instructure's trademark rights in bad faith, Instructure is being damaged and will continue to be damaged by the '811 Registration unless this Court enters an order cancelling it.

141.    Defendant's conduct in relation to its infringement of Instructure's CANVAS mark and its deceptive, disingenuous attempt to justify its infringement by purchasing the wholly unrelated '811 Registration and the Application, render this case exceptional and Instructure is entitled to recover its attorneys' fees and costs under 15 U.S.C. § 1117.

142.    Based on the foregoing, if the Assignment in Gross is deemed a valid assignment, Instructure is entitled to an order pursuant to 15 U.S.C. § 1119, directing the Director of the Trademark Office to cancel U.S. Reg. No. 4,737,811.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in its favor against Defendant as follows:

1.    Enjoining Defendant, and all other persons participating or acting in concert with it, from all acts of trademark infringement, unfair competition, and/or any other wrongful conduct alleged in this Complaint;

2.    An order from the Court directing Defendant to provide an accounting of all revenues and profits gained by Defendant while engaging in the acts complained of in this Complaint;

3.    An order from the Court, pursuant to 15 U.S.C. § 1125, directing Defendant to forfeit or cancel its domain name – www.canvas.com – or to transfer the domain name to Instructure, the owner of the CANVAS mark.

4.      An order from the Court, pursuant to 15 U.S.C. § 1119, directing the Director of the Trademark Office to cancel U.S. Reg. No. 4,737,811.

5.      An order of declaratory judgment that Defendant does not own the "canvas [concierge alliance napa valley & sonoma]" mark or the Application and possesses no valid rights in the "canvas [concierge alliance napa valley & sonoma]" mark or the Application.

6.      Awarding Plaintiff its actual damages and any additional damages that the Court deems just and equitable under the circumstances;

7.      Awarding Plaintiff treble damages and attorneys' fees for Defendant's deliberate and willful misconduct;

8.      Awarding Plaintiff prejudgment and post-judgment interest;

9.      Awarding Plaintiff allowable costs; and

10.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues so triable pursuant to Fed. R. Civ. P. 38(b) and 38(c) and under the United States Constitution.

Dorsey & Whitney LLP

DATED this 27th day of July, 2021.

By: /s/*Mark A. Miller*
Mark Miller (#9563)
Brett Foster (#6089)
Tamara L. Kapaloski (#13471)

*Attorneys for Plaintiff Instructure, Inc.*

32