Sterling A. Brennan (UT Bar No. 10060)
sbrennan@mabr.com
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850

Peter J. Willsey (Admitted Pro Hac Vice)
pwillsey@brownrudnick.com
Vincent J. Badolato (Admitted Pro Hac Vice)
vbadolato@brownrudnick.com
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1700

Jason M. Sobel (Admitted Pro Hac Vice)
jsobel@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

Stephanie P. Calnan (Admitted Pro Hac Vice)
scalnan@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INSTRUCTURE, INC.,<br>a Delaware corporation,<br><br>   Plaintiff/<br>   Counterclaim-Defendant,<br><br> v.<br><br><br>CANVAS TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>   Defendant/<br>   Counterclaim-Plaintiff. | Civil No. 2:21-cv-00454-DAK-CMR<br><br><br>**CANVAS TECHNOLOGIES, INC.'S OPPOSITION TO INSTRUCTURE, INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>District Judge: Hon. Dale A. Kimball<br>Magistrate Judge: Hon. Cecelia M. Romero |

## TABLE OF CONTENTS

I.   INTRODUCTION                                                                         1

II.  FACTUAL BACKGROUND                                                                   2

    A.   Canvas and Its Predecessor in Interest Have Used the CANVAS
       Mark in Connection with Employment Recruiting and Job Placement
       Services Since At Least 2013.                                                    2

    B.   Instructure's Use of the CANVAS Mark in Connection with
       Employment Recruiting and Job Placement Services Did Not Begin
       Until February 2019, After It Acquired Portfolium.                               6

    C.   Instructure Never Took Enforcement Action Against Canvas's
       Predecessor in Interest or Jobvite.                                            10

III. ARGUMENT                                                                            11

    A.   Legal Standard                                                              11

    B.   Instructure Has Not Shown a Likelihood of Success on the Merits,
       Let Alone a "Substantial Likelihood."                                          13

       1.   Instructure Cannot Establish That It Has Prior Rights in the
          CANVAS Mark.                                                            13

       2.   Canvas Is Not Unlawfully Using a Mark in Commerce Because
          it Owns Prior Rights in CANVAS.                                         17

       3.   Instructure's Use, Not Canvas's Use, of the CANVAS Mark Is
          Likely to Cause Consumer Confusion.                                     17

    C.   Instructure Is Not Entitled to a Presumption of Irreparable Harm, and
       in Fact Instructure Will Not Be Irreparably Harmed Absent an Injunction.        20

    D.   The Balance of Harms Weighs Against Issuing a Preliminary Injunction.       23

    E.   A Preliminary Injunction Does Not Serve the Public Interest.                24

IV.  CONCLUSION                                                                          25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
  722 F.3d 1229 (10th Cir. 2013) ............................................................13

*AAA Alarm & Sec. Inc., v. A3 Smart Home LP*,
  No. CV-21-00321-PHX-GMS, 2021 WL 3857417 (D. Ariz. Aug. 30, 2021) .................15, 23

*Am. Int'l Grp., Inc. v. Am. Int'l Airways, Inc.*,
  726 F. Supp. 1470 (E.D. Pa. 1989) ........................................................22

*Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*,
  2021 WL 2497928 (C.D. Cal. May 19, 2021) .......................................20

*United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter.*
  *Mgmt. Consultants, Inc.*,
  883 F.2d 886 (10th Cir. 1989) ..............................................................11

*Coquina Oil Corp. v. Transwestern Pipeline*,
  825 F.2d 1461 (10th Cir. 1987) ............................................................25

*Cornaby's LLC v. Carnet, LLC*,
  2017 WL 3503669 (D. Utah Aug. 15, 2017) ....................................13, 14, 15, 18

*Desknet Sys., Inc. v. Desknet, Inc.*,
  1997 WL 253246, at *3 (S.D.N.Y. May 14, 1997)................................16

*Diné Citizens Against Ruining Our Env't v. Jewell*,
  839 F.3d 1276 (10th Cir. 2016) ............................................................12

*Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*,
  2021 WL 1372658 (S.D.N.Y. Apr. 12, 2021).......................................20

*First W. Cap. Mgmt. Co. v. Malamed*,
  874 F.3d 1136 (10th Cir. 2017) ............................................................12

*Forney Indus., Inc. v. Daco of Mo., Inc.*,
  835 F.3d 1238 (10th Cir. 2016) ............................................................14

*Gen. Motors Corp. v. Urb. Gorilla, LLC*,
  500 F.3d 1222 (10th Cir. 2007) ....................................................11, 12, 23

*Glow Indus., Inc. v. Lopez*,
  252 F. Supp. 2d 962 (C.D. Cal. 2002) ..................................................15

*GTE Corp. v. Williams*,
   731 F.2d 676 (10th Cir.1984) ...........................................................12, 21, 22, 24

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir. 2003) ..............................................................21, 23, 25

*Implant Innovations, Inc. v. Debbie, LLC*,
   2007 WL 9701982, at *1 (S.D. Fl. June 21, 2007) ................................................16

*Krause Int'l Inc. v. Reed Elsevier, Inc.*,
   866 F. Supp. 585, 587-88 (D.D.C. 1994) ..............................................................24

*LL&L Innovations, LLC v. Jerry Leigh of Cal., Inc.*,
   2010 WL 3956815 (D. Utah Oct. 8, 2010) ...........................................................25

*New Mexico Dep't of Game & Fish v. United States Dep't of Interior*,
   854 F.3d 1236 (10th Cir. 2017) .............................................................................20

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*,
   389 F.3d 973 (10th Cir. 2004) (en banc) ..............................................................12

*Proactive Envtl. Products Int'l, LLC v. Pine Envtl. Servs., LLC*,
   2021 WL 3025481 (M.D. Fl. May 20, 2021) ........................................................20

*Sally Beauty Co., Inc. v. Beautyco, Inc.*,
   304 F.3d 964 (10th Cir. 2002) ..............................................................................17

*Sec. USA Servs., LLC v. Invariant Corp.*,
   2021 WL 2936612, at *4 (D.N.M. July 13, 2021) ................................................16

*Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*,
   889 F.2d 1018, 1028–29 (11th Cir. 1989) ............................................................15

*Warner Lambert Co. v. McCrory's Corp.*,
   718 F. Supp. 389 (D.N.J. 1989) ............................................................................22

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ..............................................................................................24

*Zibalstar, L.C. v. Conte*,
   2017 WL 2589291 (D. Utah June 14, 2017) ........................................................21

**Statutes**

15 U.S.C. § 1057(c) ......................................................................................................14

15 U.S.C. § 1115(b) .................................................................................................13, 14

15 U.S.C. § 1116 ...........................................................................................................20

Trademark Modernization Act, Pub. L. 116-260, § 226, 134 Stat. 2208, 139-140
(2020).................................................................................................................................20

**Other Authorities**

J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition (5th ed.) ............... *passim*

Defendant/Counterclaim-Plaintiff Canvas Technologies, Inc. ("Canvas"), by and through its counsel, hereby submits its opposition to Plaintiff/Counterclaim-Defendant Instructure, Inc.'s ("Instructure") Motion for Preliminary Injunction (ECF No. 13).

## I.    INTRODUCTION

In an overly aggressive and entirely misguided strategic maneuver, the infringer in this case has not only sued the infringed but asks this Court to issue a preliminary injunction. This despite clear evidence that the defendant holds prior rights in the CANVAS mark in the field of recruiting and job placement services. This case is a dispute about one primary issue: trademark priority. Although Instructure weaves a misleading tale depicting Canvas as a trademark infringer, it is Instructure, in fact, that has infringed Canvas's prior lawful rights in the CANVAS mark.

Canvas and its predecessor in interest, Colby Smith ("Ms. Smith"), have continuously used the CANVAS mark since September 2010 and have specifically used the CANVAS mark in connection with employment recruiting and job placement services since at least July 2013. Although Instructure launched its CANVAS platform in June 2010 with a narrow focus on online education services, it was not until February 2019, through Instructure's acquisition of a company named Portfolium, that Instructure first began using the CANVAS mark in connection with employment recruiting and job placement services. Canvas therefore has effectively been using the CANVAS mark in connection with employment recruiting and job placement services for over five and a half years before Instructure began using the CANVAS mark for related services. As such, Canvas holds prior rights in the CANVAS mark and for that reason has concurrently filed counterclaims against Instructure – the actual trademark infringer in this case.

Canvas's prior rights in the CANVAS mark render Instructure's request for preliminary injunction baseless because it lacks trademark priority and thus cannot demonstrate a substantial

1

likelihood of success on the merits of its trademark infringement claim. Furthermore, Instructure's request for emergency relief is inappropriate because Instructure cannot show irreparable harm given its failure to take earlier enforcement action against other users of the CANVAS mark in connection with employment recruiting and job placement services. Specifically, Instructure has never taken legal action to prevent Ms. Smith, individually and/or through her company, or other parties such as Jobvite, Inc. ("Jobvite"), both of whom have used, and/or continue to use, the CANVAS mark for related services. To now claim "irreparable harm" while previously sitting on its alleged rights in the CANVAS mark is not only disingenuous but completely undermines any basis for a preliminary injunction against Canvas. Because Instructure cannot establish either a substantial likelihood of success on the merits or a risk of irreparable harm (both of which are prerequisites for a preliminary injunction), this Court should deny Instructure's motion.

## II.     FACTUAL BACKGROUND

### A.      Canvas and Its Predecessor in Interest Have Used the CANVAS Mark in Connection with Employment Recruiting and Job Placement Services Since At Least 2013.

Canvas was founded in 2017 under the name Jumpstart Ventures, Inc. ("Jumpstart") as a diversity recruiting platform created to help companies hire diverse teams. *See* Herman Decl., ¶ 2.[1] Canvas's online cloud-based platform permits companies to hire diverse teams with insight and transparency into the diversity of applicants and also allows prospective employees to search for employment opportunities. *Id.* at ¶ 3. Companies utilize Canvas's platform to understand the diversity of their recruiting pipeline, hire underrepresented talent, conduct virtual events, and measure the efficacy of their diversity recruiting initiatives. *Id.* In May 2021, Jumpstart announced that it was changing its name to "Canvas" and also entered into an agreement with Branded

---

[1] References to the "Herman Decl." are to the Declaration of Ben Herman submitted herewith. References to "Herman Ex." are to the exhibits attached to the Herman Decl.

Holding Group, LLC ("BHG") to lease the domain name www.canvas.com, which it operates today. *Id.* at ¶¶ 4,5.

Canvas is a successor in interest to Colby Smith, an individual residing in California, who in September 2010 first began using the trademarks CANVAS and CANVAS [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA] (Stylized) canvas (collectively, the "CANVAS Marks"), individually and through her company, Concierge Alliance, LLC ("Concierge Alliance"), in connection with the provision of networking services, training and educational programs, educational information, newsletters, trade shows, and consumer outreach services, all via communications channels including magazines and websites and in-person events, in interstate commerce throughout the United States. *See* Smith Decl., ¶ 1.[2] On April 25, 2014, Ms. Smith filed U.S. Application Serial No. 86/263,311 to register [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA] (Stylized) canvas in connection with, among other services, conducting trade shows, providing membership club services, and organizing exhibitions. *See* Smith Exs. 1,2.

Since at least as early as July 2013, and continuously thereafter to the present, Canvas's predecessor in interest, Ms. Smith, has also used the CANVAS Marks, individually and/or through Concierge Alliance, in connection with an interactive website, https://jobs.conciergealliance.com/, for online recruiting of human resources and for facilitating communication among employers and job candidates, featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment. (the "CANVAS Job Board"). *See* Smith Decl., at ¶ 2. On July 2, 2021, Ms. Smith filed U.S.

---

[2] References to the "Smith Decl." are to the Declaration of Colby Smith submitted herewith. References to "Smith Ex." are to the exhibits attached to the Smith Decl.

Application Serial No. 90/808,387 to register the mark CANVAS in connection with the aforementioned services with a claimed first use date of July 18, 2013. *Id. See* Smith Exs. 3,4.

Canvas is Ms. Smith's successor in interest by virtue of a trademark acquisition agreement dated July 13, 2021 ("Trademark Acquisition Agreement"), *see* Smith Ex. 5, and a trademark assignment agreement dated July 13, 2021 ("Trademark Assignment Agreement"), *see* Smith Ex. 6, that was recorded with the United States Patent and Trademark Office ("USPTO") on July 15, 2021. *See* Smith Decl., ¶ 6; Calnan Ex. 1.[3] Also on July 13, 2021, Canvas and Ms. Smith executed a trademark license agreement ("Trademark License Agreement") under which Canvas licensed the use of the CANVAS Marks to Ms. Smith for the same services for which she had been using the marks since 2010. *See* Smith Ex. 7. Ms. Smith's use of the CANVAS Marks continues uninterrupted to the present, including through her websites https://conciergealliance.com/ and https://www.blankbycanvas.com/. *See* Smith Decl., ¶ 8.

During the period in which Ms. Smith has been using the CANVAS Marks, she has also used the logo for CANVAS without the words "CONCIERGE ALLIANCE NAPA VALLEY & SONOMA," *see* Smith Decl., ¶ 3, as demonstrated in the below examples from June 2013 and July 2014. *See* Calnan Decl., ¶¶ 3,4.

---

[3] References to the "Calnan Decl." are to the Declaration of Stephanie Calnan submitted herewith. References to "Calnan Ex." are to the exhibits attached to the Calnan Decl.

 

Today, Ms. Smith continues to use a stylized version of the CANVAS mark without the words "CONCIERGE ALLIANCE NAPA VALLEY & SONOMA" on her company's website as shown in the below screenshot. *See* Calnan Decl., ¶ 5.



In addition, since 2013, Ms. Smith has consistently used the CANVAS mark in connection with the CANVAS Job Board on her website jobs.conciergealliance.com as reflected in the below screenshots of her website from January 13, 2014. *See* Calnan Decl., ¶ 6; *see also* Smith Decl., ¶ 2.

We are pleased you are using the CANVAS Job Board. To post jobs and/or resumés, please REGISTER or LOGIN using the links directly below.

This Job Board is for Job Providers and Job Seekers in Napa and Sonoma. It is all about giving someone a career footstep or getting a dream job. The Concierge Alliance of Napa Valley and Sonoma, CANVAS, is a dynamic organization comprised of outstanding leaders in the hospitality community. CANVAS Members continually provide guests to Napa and Sonoma with the best possible experiences. We are proud to have such dedicated and loyal individuals participating in the programs facilitated by CANVAS that benefit our Community.

Ms. Smith continues to use the CANVAS mark in connection with recruiting and job placement services as shown in the below screenshot. *See* Calnan Decl., ¶ 7.



In summary, Canvas and its predecessor in interest and licensee, Ms. Smith, have continuously used, and continue to use, the CANVAS mark in connection with employment recruiting and job placement services, including "[p]roviding a website featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment" and "[p]roviding an interactive website for online recruiting of human resources and for communication among employers and candidates for employment" since July 18, 2013. *See* Smith Decl., ¶ 2; Smith Ex. 3.

**B.      Instructure's Use of the CANVAS Mark in Connection with Employment Recruiting and Job Placement Services Did Not Begin Until February 2019, After It Acquired Portfolium.**

Instructure launched its CANVAS technology platform and began using the CANVAS mark exclusively in connection with online education services in June 2010. *See* Daly Ex. 1.[4] Notably, the descriptions of services in Instructure's trademark registrations for the CANVAS mark (Reg. Nos. 4,080,698 and 5,191,435) make no reference to employment recruiting services at all:

---

[4] References to the "Daly Decl." are to the Declaration of Steve Daly (ECF No. 14) submitted with Instructure's Motion for Preliminary Injunction. References to "Daly Ex." are to the exhibits attached to the Daly Decl.

FOR: APPLICATION SERVICE PROVIDER (ASP) FEATURING SOFTWARE FOR USE IN EDUCATIONAL COURSE AND CURRICULUM MANAGEMENT, ONLINE COMMUNICATION BETWEEN TEACHERS, ACADEMIC RESEARCHERS, AND STUDENTS, TRACKING STUDENT PROGRESS, AND FOR FACILITATING AND CONDUCTING ONLINE CONNECTIONS, COLLABORATIONS, AND INTERACTIVE DISCUSSIONS BETWEEN CLASSROOM STUDENTS; TECHNICAL SUPPORT SERVICES, NAMELY, TROUBLESHOOTING OF COMPUTER SOFTWARE PROBLEMS, IN CLASS 42 (U.S. CLS. 100 AND 101).

CLASS 42: Application service provider (ASP) featuring software to enable uploading, posting, showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network, all excluding technical graphics or imaging, and technical graphic or imaging software and pertinent support services in the fields of science, engineering, aviation, petrochemical, and geographical information systems

Daly Ex. 1; Daly Ex. 2. Indeed, from 2010 to 2019, none of the services offered by Instructure in connection with the CANVAS mark included any sort of hiring, recruiting, placement, or staffing services. Rather, prior to 2019, Instructure's use of the CANVAS mark was limited to its online learning management system.

For example, in September 2010, Instructure described its CANVAS platform as "a platform that facilitates a seamless and productive online relationship between professor and student," Calnan Ex. 2; in June 2011, as "the simple, open LMS ["Learning Management System"] from Instructure" that "has helped teachers and administrators save dozens of hours of time . . . in their classes and institutions," Calnan Ex. 3; and, in October 2013, as a product that "more than twenty schools choose . . . every month" Calnan Ex. 4. In July 2017, Instructure described its CANVAS platform as: "[d]esigned specifically for K-12 teachers and students, Canvas is an easy-to-use, cloud-based learning management system (LMS) that connects all the digital tools and resources teachers use into one simple place. It integrates seamlessly with hundreds of apps, empowering teachers and students with countless tools to make teaching and learning easier and more fun." Calnan Ex. 5. Today, Instructure continues to market itself primarily as a learning management platform as depicted in the below screenshot of its website. *See* Calnan Decl., ¶ 12.

Instructure's suggestion that its "ePortfolio" product is "the exact same service" as Canvas's employment recruiting platform, *see* Mot. 10, is demonstrably false, as evidenced by the sources Instructure references, including certain YouTube tutorials, *see* Daly Decl., ¶¶ 9-11, and articles reporting on certain higher education institutions' decisions to use the CANVAS platform in part because of the Canvas ePortfolio product, *see id.* at ¶¶ 12-15; Daly Exs. 4-6. Notably, none of these sources make any reference whatsoever to ePortfolio being used as a recruiting tool to connect job applicants with employers – the essential feature and function of Canvas's recruiting platform. Instead, the Canvas ePortfolio product is described as a tool used by students to organize their coursework and, if made public (the default setting is private), to allow students to share some of their work with their classmates and teachers. *See, e.g.,* Daly Decl., ¶ 9 (linking to the "Instructure Canvas ePortfolios" tutorial, which describes the use of ePortfolios in the context of when "a teacher wants you to assemble a Portfolio, you just create a new ePortfolio to satisfy the requirements for that specific course" and "when we edit it is when you can reflect on the specific assignment and what you have learned with it."); *id.* at ¶ 11 (linking to "An example ePortfolio in Canvas" tutorial in which the user describes her creation of an ePortfolio for the OESP (Online Education Standards and Practice) course offered by @ONE (Online Network of Educators) as part of its pilot program and ends the tutorial with the following remark: "for those of you who

chose to use the ePortfolio Canvas tool hopefully this give you a good overview of what that might look like and what it could look like for our students should we try it with our students"); Daly Ex. 4 (describing the "ePortfolio system" as one for "storing and organizing student content" and Instructure as "a technology company committed to improving education" and providing "Canvas - the open, easy-to-use, cloud-native learning platform."). None of the articles that Instructure cites to mention that a single higher education institution chose Instructure's CANVAS platform because it could also be used as a recruiting tool. *See* Daly Exs. 4-6.

In fact, out of all the sources that Instructure cites to as support for its position that the Canvas ePortfolio is somehow a recruiting tool, only one makes an employment-related reference. *See* Daly Decl., ¶ 9 (linking to the "Instructure Canvas ePortfolios" tutorial, which notes that students may share their ePortfolios with "classmates,…friends, or even potential employers"). The cursory mention of the mere possibility of sharing content with "potential employers" does not transform ePortfolio into a recruiting tool. Indeed, Instructure has offered no evidence that employers or students ever utilized ePortfolio as an employment recruiting and hiring tool. Instead, the Canvas ePortfolio product was designed and offered solely for use in an educational setting among students, classmates, and teachers. It is not, and never has been, an employment recruiting or job placement tool.

In or about February 2019, Instructure acquired Portfolium. *See* Daly Decl., ¶ 20. It was not until sometime after this acquisition that Instructure first began using the CANVAS mark in connection with any hiring, recruiting, placement, or staffing services – which marked the flashpoint for the conflict between the CANVAS marks at issue in this case. Instructure began using CANVAS in conjunction with its PORTFOLIUM platform on the internet on or around October 19, 2019. *See* Calnan Ex. 6.

9

On June 2, 2021, Instructure, through its counsel, sent a letter to Canvas alleging trademark infringement of its CANVAS trademark and made specific reference to its "Portfolium" platform as a "recruiting system" while notably making no reference to the Canvas ePortfolio. *See* Herman Decl., ¶ 6; Herman Ex. 1. On July 15, 2021, Canvas notified Instructure of Canvas's acquisition of the rights in the CANVAS trademarks. *See* Herman Decl., ¶ 7. Instructure is now grasping at straws by pivoting to argue that its other services (unrelated to Portfolium) establish priority over Canvas's far senior 2013 priority date in the relevant field of business: employment recruiting and job placement.

### C. Instructure Never Took Enforcement Action Against Canvas's Predecessor in Interest or Jobvite.

As mentioned above, Canvas's predecessor in interest, Ms. Smith, began using the CANVAS marks in connection with recruiting services as early as July 2013, yet Instructure never took any enforcement action with respect to her use of the marks. *See* Smith Decl., ¶ 5. Similarly, as reflected in the below screenshots from the USPTO's website, the word mark CANVAS, originally registered by Canvas Talent, Inc. and then acquired by Jobvite, Inc., has been used in connection with recruiting services since as early as March 10, 2017, *see* Calnan Ex. 7, and yet upon information and belief Instructure never took any enforcement action against either user of the mark. *See* Herman Decl., ¶ 8.

| Owner | (REGISTRANT) CANVAS TALENT, INC. CORPORATION DELAWARE 350 E. New York Street, Suite 230 INDIANAPOLIS INDIANA 46204 |
| --- | --- |
| | (LAST LISTED OWNER) JOBVITE, INC. CORPORATION DELAWARE GUARANTY BUILDING 20 N. MERIDIAN ST., SUITE 300 INDIANAPOLIS INDIANA 46204 |

| | |
|---|---|
| **Word Mark** | CANVAS |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: Downloadable software in the nature of a mobile application for recruiting of human resources; downloadable software in the nature of a mobile application for analysis and reporting of data, business analytics, and business intelligence in the field of human resources; downloadable software in the nature of a mobile application for communicating among professionals in the field of human resources; downloadable software in the nature of a mobile application for communicating among employers and employees; and downloadable software in the nature of a mobile application for communicating among employers and candidates for employment. FIRST USE: 20170613. FIRST USE IN COMMERCE: 20170613 |
| | IC 042. US 100 101. G & S: Software as a service (SaaS) services providing on-line non-downloadable software and applications for recruiting of human resources; software as a service (SaaS) services providing on-line non-downloadable software and applications for analysis and reporting of data, business analytics, and business intelligence in the field of human resources; software as a service (SaaS) services providing on-line non-downloadable software and applications for communicating among professionals in the field of human resources; software as a service (SaaS) services providing on-line non- downloadable software and applications for communicating among employers and employees; and software as a service (SaaS) services providing on-line non-downloadable software and applications for communicating among employers and candidates for employment. FIRST USE: 20170310. FIRST USE IN COMMERCE: 20170310 |

Jobvite uses the CANVAS mark on its website, https://gocanvas.io/, in connection with its recruiting services as reflected below. *See* Calnan Decl., ¶ 15.



Thus, Instructure and Jobvite have been using the CANVAS mark in the recruiting space for almost two years coextensively, and Jobvite together with its predecessor-in-interest used the CANVAS mark in the recruiting sector since about four years ago, apparently without any enforcement action taken by Instructure. *See* Herman Decl., ¶ 8.

## III.    ARGUMENT

### A.    Legal Standard

The Tenth Circuit has recognized that "[i]n general, 'a preliminary injunction is an extraordinary remedy; it is the exception rather than the rule.'" *Gen. Motors Corp. v. Urb. Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (quoting *GTE Corp. v. Williams,* 731 F.2d 676, 678 (10th Cir.1984)); *see also United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888–89 (10th Cir. 1989) (stating that a preliminary injunction "constitutes drastic relief to be provided with caution ... [and] should be granted only in

cases where the necessity for it is clearly established."). "To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest." *Gen. Motors Corp.*, 500 F.3d at 1226. A movant must prove all four elements, and the failure to prove even one element will be fatal to its request for injunctive relief. *See First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1143 (10th Cir. 2017) ("Without showing irreparable harm, [plaintiff] cannot obtain a preliminary injunction.").

"Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Wilderness Workshop v. BLM*, 531 F.3d 1220, 1224 (10th Cir. 2008)). Courts "should be hesitant to grant the extraordinary interim relief of a preliminary injunction in any particular case…." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc).

Importantly, as is the case here, a movant must satisfy a heightened standard where the injunction alters the status quo, mandates rather than prohibits action, or affords the movant substantially all relief that it could recover at the conclusion of a full trial on the merits. *Id.* at 975 (affirming the three categories identified in *SCFC ILC* in which a movant must satisfy a heightened standard). This heightened standard requires that the court "more closely scrutinize[] to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* Here, because the requested injunctive relief would require Canvas to undergo a complete rebranding and afford Instructure substantially all the relief that it could recover at the conclusion of a full trial on the merits, Instructure is subject to this heightened standard. *See GTE*

12

*Corp.*, 731 F.2d at 679 (finding that the trial court abused its discretion in granting the preliminary injunction and noting "[t]he burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits.").

As set forth below, under any standard, heightened or otherwise, Instructure's request for injunctive relief fails.

**B.      Instructure Has Not Shown a Likelihood of Success on the Merits, Let Alone a "Substantial Likelihood."**

Instructure has failed to demonstrate that it will prevail on the merits of any of its trademark infringement claims, primarily because it is, in fact, the trademark infringer rather than Canvas. To succeed on a trademark infringement claim, Instructure must establish that (1) it is the owner of a valid, protectable mark, (2) Canvas unlawfully uses an identical or similar mark in commerce, and (3) Canvas's use of the mark is likely to cause consumer confusion. *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013). Instructure cannot establish any of these factors because Canvas is the owner of prior rights in its valid, protectable CANVAS mark.

**1.      Instructure Cannot Establish That It Has Prior Rights in the CANVAS Mark.**

A plaintiff must first prove that it is the owner of a valid, protectable mark. It is a basic tenet of trademark law that it is the first party to use a mark, not the first to register a mark, who holds trademark priority. *Cornaby's LLC v. Carnet, LLC*, 2017 WL 3503669, at *4 (D. Utah Aug. 15, 2017) ("Rights in a trademark are determined by the date of the mark's first use in commerce. The party who first uses a mark in commerce is said to have priority over other users."); J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition (5th ed.) [hereinafter "McCarthy"], § 16:18.50. The fact that a registration has become incontestable under 15 U.S.C. § 1115(b) does

13

not conclusively establish ownership of a mark where "the mark whose use is charged as an infringement was registered and used prior to the registration . . . and not abandoned: *[p]rovided, however,* [t]hat this defense or defect shall apply only for the area in which the mark was used prior to such registration or such publication of the registrant's mark." 15 U.S.C. § 1115(b)(6); *see also* McCarthy § 16:18.50 ("The nonregistered rights of a senior user continue and are not erased by the later federal registration of a junior user. This is true even if the registration has achieved 'incontestable' status."). In other words, "constructive registration rights to a trademark do not supersede common law rights to the mark that are established prior to the date when the application for the registration was filed." *Cornaby's*, 2017 WL 3503669, at *8 (citing 15 U.S.C. 1057(c)); *see also* McCarthy § 16:18 ("In a priority battle, it is the first to use, not the first to register, who achieves priority."); *Forney Indus., Inc. v. Daco of Mo., Inc.*, 835 F.3d 1238, 1244 (10th Cir. 2016) ("the failure to register a [mark] does not preclude its protectability.") (quoting *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1147 (10th Cir. 2016)).

Here, Canvas and its predecessor-in-interest have continuously used the CANVAS mark in connection with recruiting and job placement services since at least as early as July 2013, as evidenced by the CANVAS Job Board. *See* Smith Decl., ¶ 2.; *see also* Calnan Decl., ¶ 6,7. Consistent therewith, Ms. Smith applied to register the mark CANVAS (U.S. Appl. Ser. No. 90/808,387) for, among other services, the CANVAS Job Board as well as "[e]mployment recruiting services" and "[e]mployment hiring, recruiting, placement, staffing and career networking services" with a claimed first use of July 18, 2013. *See* Smith Ex. 3. Ms. Smith assigned all of her rights and goodwill in the CANVAS Marks to Canvas under the Trademark Acquisition Agreement and Trademark Assignment Agreement. *See* Smith Exs. 5,6. Instructure, on the other hand, did not begin using the CANVAS mark in connection with recruiting or job placement

14

services until five and a half years later, in 2019, when it acquired Portfolium. *See* Daly Decl., ¶ 20. Because "[r]ights in a trademark are determined by the date of the mark's first use in commerce," *Cornaby's*, 2017 WL 3503669, at *4, Canvas holds prior rights in the CANVAS mark.

Instructure seems to suggest that its use of CANVAS for an online learning platform going back to 2010 gives it a monopoly over the term with respect to *all* products and services. Yet trademarks are by nature limited to the specific goods and services with which they are used. For example, different companies use and hold rights in DELTA for water faucets, DELTA for an airline, and DELTA for a dental health care plan. Similarly, entirely unrelated companies can own and use the mark UNITED for an airline, on the one hand (see https://www.united.com/en/us), and a long-distance moving company, on the other (see https://www.unitedvanlines.com/). In this case, quite simply, until 2019 Instructure failed to even attempt to create rights in its CANVAS mark that would cover employment recruiting and job placement services.[5]

Even assuming, *arguendo*, that Instructure has even a plausible argument that it has priority (which it does not), the substantial evidence that Canvas has priority precludes a finding of

---

[5] For the same reason, any suggestion by Instructure that its 2017 trademark registration that claims first use of 2012 for generic interactive internet activities (i.e., "posting, showing, displaying…") gives it a monopoly over CANVAS with respect to all internet uses is critically flawed. The actual environment in which Instructure's CANVAS hosted software performed those functions was entirely in the learning management field, not recruiting and job placement. To the extent that Instructure argues that its priority in the CANVAS mark is based on the broad language it used in obtaining its USPTO registrations and a "natural expansion" argument, that argument fails because a learning management system and an employment recruiting platform are wholly different products in different fields and, accordingly, consumers are not likely to be confused as to their source or affiliation. *See Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 984 (C.D. Cal. 2002) ("The 'natural zone of expansion,' however, is generally defined narrowly.") (*citing Tally–Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1028–29 (11th Cir. 1989)). "A user's natural zone of expansion is a function of the defendant's territory, market penetration, and the manner in which the products are advertised." *AAA Alarm & Sec. Inc., v. A3 Smart Home LP*, No. CV-21-00321-PHX-GMS, 2021 WL 3857417, at *3 (D. Ariz. Aug. 30, 2021).

substantial likelihood of success. In *Implant Innovations, Inc. v. Debbie, LLC*, a case factually similar to this case, the court denied the plaintiff's motion for preliminary injunction in part because there was evidence that defendant had prior rights to the mark at issue. 2007 WL 9701982, at *1 (S.D. Fl. June 21, 2007). The court noted that "there is evidence in the record that defendants' first use of the mark in commerce occurred on May 2, 2006, pre-dating the plaintiff's intent-to-use application by two days." *Id.* Based in part on the issue of priority, the court held: "[b]ecause the plaintiff has failed to establish[] a substantial likelihood of success on the merits at this stage in the litigation, the court will deny the plaintiff's motion for preliminary injunction."

Similarly, in *Desknet Sys., Inc. v. Desknet, Inc.,* the court denied the plaintiff's motion for preliminary injunction because "[t]he factual dispute regarding which company actually first used the mark DESKNET in commerce indicates that [plaintiff's] claims and [defendant's] defenses raise a fair ground for litigation, but weighs against plaintiff's likelihood of success on the merits of its underlying trademark infringement claims." 1997 WL 253246, at *3 (S.D.N.Y. May 14, 1997). Also, in *Sec. USA Servs., LLC v. Invariant Corp.,* the court found that "this record shows that Defendants continuously used the [mark] in nationwide commerce prior to Plaintiff's use of the [mark] in commerce" and "[t]herefore, . . . conclude[d] that Plaintiff has not made a strong showing that it is substantially likely to succeed on the trademark claims." 2021 WL 2936612, at *4 (D.N.M. July 13, 2021).

This case primarily involves a dispute regarding the priority of rights in the CANVAS mark – and specifically, the priority of rights in the CANVAS mark *in the field of employment recruiting and job placement*. Canvas's evidence of its prior rights in the CANVAS mark precludes the granting of a preliminary injunction because Instructure cannot prove a substantial likelihood of

success on the merits on its trademark infringement claims without first demonstrating clear priority *in the relevant field of business*, which it cannot do.

### 2. Canvas Is Not Unlawfully Using a Mark in Commerce Because it Owns Prior Rights in CANVAS.

Because Canvas, not Instructure, has prior rights in the CANVAS mark in the relevant field, it is Instructure who has been unlawfully using an identical or similar mark in commerce since it acquired Portfolium in 2019 and began using the CANVAS mark in connection with employment recruiting and job placement services.  Instructure cannot prove otherwise.

### 3. Instructure's Use, Not Canvas's Use, of the CANVAS Mark Is Likely to Cause Consumer Confusion.

The Tenth Circuit considers six non-exhaustive factors to evaluate a likelihood of confusion: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) the similarity of the parties' products and the manner in which they market them; (5) the degree of care that consumers are likely to exercise in purchasing the parties' products; and (6) the strength of the mark. *Sally Beauty Co., Inc. v. Beautyco, Inc*., 304 F.3d 964, 972 (10th Cir. 2002). Here, Canvas is the lawful owner of prior rights in the CANVAS mark and, as outlined in its concurrently filed Counterclaims, it is Instructure, not Canvas, that is the infringing party. Therefore, while a likelihood of confusion does exist, Instructure's use of the CANVAS mark since 2019 is the cause of that confusion.

In its Motion, Instructure argues that a likelihood of confusion exists. Canvas agrees but not for the reasons Instructure provides nor with Instructure's characterizations of the relevant facts and chronology. For example, Instructure contends that Canvas "brazenly acquired" Ms. Smith's trademarks rights in the CANVAS mark and characterizes her "newly-filed trademark application" as an "unlawful (and futile) attempt to gain instant trademark rights and circumvent

Instructure's Canvas Registrations." Mot., 15. Yet Canvas's legitimate acquisition of Ms. Smith's senior trademark rights defeats Instructure's argument. As previously noted, it is a bedrock principle of trademark law that "it is the first to use, not the first to register, who achieves priority." McCarthy § 16:18; *Cornaby's*, 2017 WL 3503669, at *4. Here, Canvas and its predecessor in interest have been using the CANVAS mark in connection with recruiting and job placement services since as early as July 2013, long before Instructure began using the CANVAS mark with similar recruiting services as part of its Portfolium platform in 2019. *See* Smith Decl., ¶ 2; *see also* Calnan Decl., ¶¶ 6,7. Instructure's unfounded allegations concerning Canvas's intent in acquiring rights in the CANVAS mark are simply irrelevant. The sole dispositive fact is that Canvas owns rights in the CANVAS mark that have priority over any rights that Instructure developed in the mark for recruiting services in 2019.

Instructure's contention that Canvas "deliberately chose to use an *identical* copy of Instructure's Canvas Mark" is similarly unfounded. Mot., 15. First, Canvas is an employment recruiting platform. *See* Herman Decl., ¶¶ 2,3. On the other hand, Instructure's primary platform of services is offered in an educational setting for teaching and learning by teachers and students. *See* Calnan Exs. 2-5, Calnan Decl., ¶ 12. Again, to extent that Instructure later associated its own marks with recruiting services, it was Instructure who came second as an infringer, not Canvas.

Instructure only offers conclusory and irrelevant allegations that "BHG undoubtedly disclosed to Jumpstart details of its negotiations with Instructure as a bargaining chip" and alludes to a "friendship" between Canvas's CEO and BHG's owner. Mot., 15, 16. Not only do these allegations lack evidentiary support, but they fail to support any cause of action because Canvas

was well within its rights to lease the canvas.com domain name (an opportunity that by Instructure's own admission it could have also taken but chose not to).[6] *See* Daly Decl., ¶¶ 58-60.

Instructure also contends that the parties offer overlapping services and market them in a similar manner. Mot., 10. Canvas does not dispute this argument, but such a finding bolsters its affirmative trademark infringement claim against Instructure as the party that has engaged in infringement since 2019 when it acquired Portfolium and started using Canvas with recruiting and job placement services – *over five and a half years* after Canvas's predecessor adopted its mark for relevant services. *See* Smith Decl., ¶ 2; *see also* Daly Decl., ¶ 20.

Instructure's argument that its earlier ePortfolio product elevated its learning management system into a recruiting platform is factually unsupported. *See supra* p. 8-9. Instructure offers no evidence of how employers could access this product and/or otherwise solicit or connect with students and potential employees. Rather, based on the evidence that Instructure has offered, Canvas ePortfolio is simply a tool for students to share their coursework with teachers and fellow students. *See* Daly Decl., ¶¶ 9-15; Daly Exs. 4-6. While students may change the default setting of ePortfolio from private to public and share their coursework with anyone, including potential employers, such a feature does not convert this product into a recruiting platform or tool.

Canvas agrees with Instructure that the CANVAS mark is conceptually and commercially strong but disagrees that this supports Instructure's argument for injunctive relief. Canvas also disagrees that the CANVAS mark is commercially strong as a result of Instructure's investment in

---

[6] As explained more fully in Canvas's concurrently filed Motion to Dismiss Instructure's Cybersquatting Claim, Instructure cannot allege that its marks were distinctive or famous at the time of the registration – an essential element of a cybersquatting claim – because those marks did not even exist at the time of registration.

the mark. The commercial strength of the CANVAS mark in the employment recruiting space is in fact attributable to Canvas and its predecessor in interest, not Instructure.

### C.  Instructure Is Not Entitled to a Presumption of Irreparable Harm, and in Fact Instructure Will Not Be Irreparably Harmed Absent an Injunction.

Instructure is not entitled to a presumption of irreparable harm. The presumption of irreparable harm that arises under 15 U.S.C. § 1116(a), which is rebuttable even if it applies, is triggered "only where a party demonstrates a likelihood of success on the merits." *Proactive Envtl. Products Int'l, LLC v. Pine Envtl. Servs., LLC*, 2021 WL 3025481, at * 15 (M.D. Fl. May 20, 2021).[7] The rebuttable presumption of irreparable harm does *not* apply if a party is unable to demonstrate a likelihood of success on the merits of its claims. *Caryn Mandabach Prods. Ltd. v. Sadlers Brewhouse Ltd.*, 2021 WL 2497928, at *7 (C.D. Cal. May 19, 2021) (denying the plaintiff's motion for preliminary injunction because, among other reasons, the plaintiff failed to prove likelihood of success on the merits and, accordingly, the rebuttable presumption of irreparable harm did not apply); *see also Engine Cap. Mgmt., LP v. Engine No. 1 GP LLC*, 2021 WL 1372658, at *12 (S.D.N.Y. Apr. 12, 2021) (finding that "[plaintiff's] reliance on a presumption of irreparable harm is unavailing" where plaintiff had not demonstrated a likelihood of success on the merits and "[t]he rebuttable presumption of irreparable harm therefore [did] not apply."). Because Instructure has not demonstrated a substantial likelihood of success on the merits, as discussed above, it is not entitled to a rebuttable presumption of irreparable harm.

"[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *New Mexico Dep't of Game & Fish v. United States Dep't*

---

[7] The Trademark Modernization Act, effective on December 27, 2020, modified 15 U.S.C. § 1116 and created this rebuttable presumption of irreparable harm where a plaintiff has shown a substantial likelihood of success on the merits. *See* Pub. L. 116-260, § 226, 134 Stat. 2208 (2020). There is limited case law interpreting this modification and Canvas is not aware of any such cases in the Tenth Circuit.

*of Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004)). To constitute irreparable harm, an injury must be "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (quotation and citation omitted). Irreparable harm is not simply a harm that is "serious or substantial," *id.,* it is a harm that a court "would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain," *Zibalstar, L.C. v. Conte*, 2017 WL 2589291, at *4 (D. Utah June 14, 2017) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)), and a harm of "such *imminence* that there is a clear and present need for equitable relief." *Heideman,* 348 F.3d at 1189 (citation and quotation marks omitted).

Simple economic loss is not in and of itself an irreparable harm. *Id.* Moreover, "[d]elay in seeking relief . . . undercuts any presumption that infringement alone has caused irreparable harm *pendate lite*; therefore, such delay may justify denial of a preliminary injunction for trademark infringement." *GTE Corp.*, 731 F.2d at 678; *see also* McCarthy § 30:49 ("Failure to enforce an alleged mark or trade dress against third party users for a long period of time may undercut the ability to prove irreparable injury and result in denial of a preliminary injunction.").

Here, Instructure cannot prove irreparable harm absent an injunction. At least two other entities – Canvas's predecessor in interest, Ms. Smith (individually and through Concierge Alliance), and Jobvite – have been using the CANVAS mark in connection with employment recruiting and job placement services for years before Instructure first started using the mark for related services in 2019. Again, Ms. Smith has been using the CANVAS mark in connection with recruiting and job placement services since at least as early as July 2013. *See* Smith Decl., ¶ 2. Jobvite has been using the CANVAS mark in connection with its recruiting platform since 2017.

*See* Calnan Ex. 7. Instructure never initiated legal action against either Ms. Smith or Jobvite despite their use of CANVAS marks for almost two years coextensively with Instructure's use of the CANVAS mark for employment recruiting services. *See* Smith Decl., ¶ 5; Herman Decl., ¶ 8.

It is nonsensical for Instructure to argue that it will be irreparably harmed by Canvas's use of the mark now when Instructure passively sat by and allowed Canvas's predecessor in interest and Jobvite to use CANVAS marks in connection with recruiting services for years earlier. *See GTE Corp.*, 731 F.2d at 679 (finding that trial court abused its discretion in granting the movant's request for preliminary injunction because "[a]ny injury that [movant] would suffer before trial on the merits would be a relatively short extension of the injury that [movant] knowingly suffered for three years before it filed suit."); *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 394 (D.N.J. 1989) (denying preliminary injunction in part because "on the issue of irreparable harm, [plaintiff's] prior inaction against other retailers is particularly relevant; not only does it suggest that [plaintiff] does not feel especially threatened by potentially infringing private label brands such as [defendant's], but also [plaintiff's] prior inaction against other major retailers' use of the disputed trade dress dilutes the equity of the court now using its coercive powers, on the basis of an incomplete record, to preliminarily enjoin defendant from selling the type of product plaintiff has idly watched other retailers sell for years."); *Am. Int'l Grp., Inc. v. Am. Int'l Airways, Inc.*, 726 F. Supp. 1470, 1482 (E.D. Pa. 1989) (analyzing the irreparable harm element and noting that "[the plaintiff's] position is weakened substantially by the proliferation of use of the [mark] by numerous third parties" and ultimately denying the plaintiff's motion for a preliminary injunction); McCarthy § 30:49 ("Failure to enforce an alleged mark or trade dress against third party users for a long period of time may undercut the ability to prove irreparable injury and result in denial of a preliminary injunction.").

The clear inference from Instructure's unexplained lack of action against Ms. Smith and Jobvite is that its recently concocted claim of prior rights over Canvas is a fabrication primarily designed to help it obtain, through force, one thing: the canvas.com domain name. Instructure stood no chance at stopping Ms. Smith or Jobvite (and its predecessor) from using CANVAS and hence it never acted to stop them. Instructure simply cannot argue irreparable injury now where these uses of the CANVAS mark by other parties persisted for many years before.

Moreover, Instructure has offered no evidence of actual consumer confusion. *See* Daly Decl., ¶¶ 73-75 (citing to consumers' recognition of the two entities, Instructure and Canvas, *and not consumers confusing one platform for the other*); *Cf. AAA Alarm & Sec. Inc., v. A3 Smart Home LP*, No. CV-21-00321-PHX-GMS, 2021 WL 3857417, at *8 (D. Ariz. Aug. 30, 2021) (finding irreparable harm where plaintiff presented evidence of actual consumer confusion).

### D.    The Balance of Harms Weighs Against Issuing a Preliminary Injunction.

The balance of harms weighs against issuing a preliminary injunction in this case. The law requires that "the threatened injury to the movant outweigh[] the injury to the other party under the preliminary injunction." *Heideman*, 348 F.3d at 1190. Here, Instructure argues that because "the case for infringement [against Canvas] is clear, [Canvas] cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." Mot., 23-24 (quoting *Gen. Motors Corp.*, 500 F.3d at 1229). However, that reasoning is irrelevant here because "[w]here a movant has failed to make a strong case for infringement, it is not entitled to consideration of whether the nonmovant has brought the harm upon itself." *Gen. Motors Corp.*, 500 F.3d at 1229. Instructure cannot prevail on its trademark infringement claim because, as set forth in detail above, Canvas is the lawful and prior owner of the CANVAS mark in the relevant field of use. *See* Smith Decl., ¶ 2.

Moreover, and as cited by Instructure, "courts generally favor the trademark owner" "[w]hen considering the balance of hardships between the parties in infringement cases." Mot., 23 (quoting *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994)). Because Canvas is the trademark owner, an injunction enjoining its use of its lawfully owned mark would undoubtedly impose a substantial hardship on Canvas that would far outweigh any potential harm to Instructure. This injunction would also impose a substantial hardship for the independent reason that if Canvas must stop using the domain name, which it has lawfully leased from BHG, and the CANVAS trademark in connection with its recruiting services, and then Canvas wins on the merits, "it is probably unrealistic to expect [it] would change the name back to [Canvas.]" *GTE Corp.*, 731 F.2d at 679 ("[t]he burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits.").

Finally, Instructure's arguments that it has invested a large amount of money and resources into its use of the CANVAS mark are unavailing because it did not begin using the mark in connection with recruiting services until 2019, after it had already been in use for such services by at least two other parties. Prior to its acquisition of Portfolium, Instructure used the CANVAS mark in connection with its learning management system in the context of K-12 and higher education institutions as a tool to be used by students and teachers – not a recruiting tool. *See* Calnan Exs. 2-5. Accordingly, the balance of equities weighs against issuing an injunction against Canvas.

### E.    A Preliminary Injunction Does Not Serve the Public Interest.

Finally, a preliminary injunction in this case would not serve the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-*

*Barcelo*, 456 U.S. 305, 312 (1982). The movant has the burden of demonstrating that the injunction, if issued, is not adverse to the public interest. *Heideman*, 348 F.3d at 1191. "In general, the public interest inquiry follows the likelihood of success on the merits; that is, the public interest is best served by enforcing patents only if they are likely valid and infringed." *LL&L Innovations, LLC v. Jerry Leigh of Cal., Inc.*, 2010 WL 3956815, at *10 (D. Utah Oct. 8, 2010). Here, Instructure again anchors its argument on the theory that Canvas has engaged in trademark infringement and, therefore, an injunction serves the public interest. *See* Mot., 24-25. But Instructure fails to reconcile that argument with the facts that two parties, Canvas's predecessor and Jobvite, have been using the Canvas mark for many years without any evidence that Instructure attempted to do anything about it. Thus, it is disingenuous for Instructure to suggest that an injunction would serve anyone's interest other than its own.  In any event, Instructure cannot prove likelihood of success on the merits and, indeed, Instructure has infringed on Canvas's rights in the CANVAS trademarks and therefore the public interest will not be served by granting this preliminary injunction. *See id.*

## IV.   CONCLUSION

For all the foregoing reasons, Instructure's Motion for a Preliminary Injunction should be denied.[8]

---

[8] Instructure's argument that a bond is unnecessary is belied by the *Coquina Oil* case that it relies on, which stands for the proposition that a bond is unnecessary where the injunction will not harm defendant. Mot. at 25 (citing *Coquina Oil Corp. v. Transwestern Pipeline*, 825 F.2d 1461, 1462 (10th Cir. 1987)). However, as explained above, enjoining Canvas would strip Canvas of its commercial identity, and the benefit of its prior trademark rights in CANVAS dating back to 2013 and all the goodwill associated therewith. Canvas is the rightful legitimate owner of those prior rights. Hence, an injunction would cause serious harm to Canvas.

Dated: September 1, 2021                    Respectfully submitted,


                                            */s/ Peter J. Willsey*
                                            Peter J. Willsey (*pro hac vice*)
                                            Vincent J. Badolato (*pro hac vice*)
                                            Jason M. Sobel (*pro hac vice*)
                                            Stephanie P. Calnan (*pro hac vice*)
                                            BROWN RUDNICK LLP
                                            pwillsey@brownrudnick.com
                                            vbadolato@brownrudnick.com
                                            jsobel@brownrudnick.com
                                            scalnan@brownrudnick.com


                                            */s/ Sterling A. Brennan*
                                            Sterling A. Brennan (UT Bar No. 10060)
                                            MASCHOFF BRENNAN GILMORE
                                            ISRAELSEN & WRIGHT, PLLC
                                            sbrennan@mabr.com


                                            Attorneys for Defendant/Counterclaim-Plaintiff
                                            CANVAS TECHNOLOGIES, INC.

26