Sterling A. Brennan (UT Bar No. 10060)
sbrennan@mabr.com
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850

Peter J. Willsey (Admitted Pro Hac Vice)
pwillsey@brownrudnick.com
Vincent J. Badolato (Admitted Pro Hac Vice)
vbadolato@brownrudnick.com
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1700

Jason M. Sobel (Admitted Pro Hac Vice)
jsobel@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

Stephanie P. Calnan (Admitted Pro Hac Vice)
scalnan@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| INSTRUCTURE, INC., a Delaware corporation,<br><br>    Plaintiff/<br>    Counterclaim-Defendant,<br><br>v.<br><br>CANVAS TECHNOLOGIES, INC., a Delaware corporation,<br><br>    Defendant/<br>    Counterclaim-Plaintiff. | Civil No. 2:21-cv-00454-DAK-CMR<br><br>**CANVAS TECHNOLOGIES, INC.'S RULE 12(b)(6) MOTION TO DISMISS INSTRUCTURE, INC.'S CYBERSQUATTING CLAIM**<br><br>District Judge: Hon. Dale A. Kimball<br>Magistrate Judge: Hon. Cecelia M. Romero |

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................2

III. ARGUMENT .......................................................................................................4

      A.   Legal Standard ................................................................................4

      B.   Instructure's Cybersquatting Claim Fails to State a Cause
          of Action ..........................................................................................4

IV.  CONCLUSION..................................................................................................10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)...........................................................................................................4

*Big Squid, Inc. v. Domo, Inc.*,
　No. 2:19-CV-193, 2019 WL 3555509 (D. Utah Aug. 5, 2019)..........................................7

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
　861 F.3d 1081, 1104 (10th Cir. 2017) ............................................................................2, 3

*Cleary Bldg. Corp. v. David A. Dame, Inc.*,
　674 F. Supp. 2d 1257, 1263 (D. Colo. 2009)....................................................................5

*Crossfit, Inc. v. 5280 Realty, Inc.*,
　157 F. Supp. 3d 954 (D. Colo. 2016).................................................................................5

*Dubbs v. Head Start, Inc.*,
　336 F.3d 1194 (10th Cir. 2003) .........................................................................................4

*Ellis ex rel. Est. of Ellis v. Ogden City*,
　589 F.3d 1099 (10th Cir. 2009) .........................................................................................4

*GoPets Ltd. v. Hise*,
　657 F.3d 1024 (9th Cir. 2011) .......................................................................................6, 8

*Grynberg v. Koch Gateway Pipeline Co.*,
　390 F.3d 1276 (10th Cir. 2004) ......................................................................................2, 3

*Jysk Bed'n Linen v. Dutta-Roy*,
　810 F.3d 767 (11th Cir. 2015) ...........................................................................................8

*Kansas Penn Gaming, LLC v. Collins*,
　656 F.3d 1210 (10th Cir. 2011) .........................................................................................4

*MacArthur v. San Juan Cty.*,
　309 F.3d 1216 (10th Cir. 2002) ......................................................................................2, 3

*Mehdiyev v. Qatar Nat'l Tourism Council*,
　2021 WL 1291143 (D. Colo. Apr. 1, 2021).............................................................6, 7, 8, 9

*O'Toole v. Northrop Grumman Corp.*,
　499 F.3d 1218 (10th Cir. 2007) .........................................................................................2

*One Man Band Corp. v. Smith*,
   No. 2:14-CV-221 TS, 2014 WL 12622274 (D. Utah Aug. 19, 2014) .......................................5

*Schaffer v. Clinton*,
   240 F.3d 878 (10th Cir.2001) ..................................................................................................2

*Schmidheiny v. Weber*,
   319 F.3d 581 (3d Cir. 2003)......................................................................................................8

*Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*,
   527 F.3d 1045 (10th Cir. 2008) .......................................................................................4, 5, 6

**Statutes**

15 U.S.C. § 1125(d) ...................................................................................................................5, 7, 9

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................1, 2, 4, 9

Fed. R. Evid. 201(b)(2) ....................................................................................................................2

**Other Authorities**

McCarthy on Trademarks and Unfair Competition, § 25A:50 (5th ed.) .........................................5

Defendant/Counterclaim-Plaintiff Canvas Technologies, Inc. ("Canvas" or "Defendant/Counterclaim-Plaintiff"), by and through its counsel, hereby moves the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules") for an ordering dismissing the Third Claim for Relief – the cybersquatting claim – pled by Plaintiff/Counterclaim-Defendant Instructure, Inc. ("Instructure" or "Plaintiff/Counterclaim-Defendant"). *See* Compl. (ECF No. 2), ¶¶ 114-122.

## I.  INTRODUCTION

Instructure's cybersquatting claim should be dismissed because it fails to allege an essential element of a cybersquatting claim, specifically, that Instructure's alleged CANVAS mark was distinctive or famous at the time of the registration of the canvas.com domain name. Instructure does not, and cannot, make the requisite allegation because the domain name at issue — www.canvas.com — was registered by Branded Holding Group, LLC ("BHG"), a non-party to this suit, in 1997, *eleven years* before Instructure was founded and *thirteen years* before Instructure launched its CANVAS platform or established any of its alleged marks.

The plain statutory language of the Lanham Act is clear and the case law confirms that the *date of registration* is the only relevant timeframe for purposes of a cybersquatting claim. Canvas's lawful leasing of the domain name from BHG in March of 2021 has no impact on the analysis of Instructure's cybersquatting claim. Instructure cannot allege that its marks were distinctive or famous at the time of the registration — and an essential element of a cybersquatting claim — because those marks did not even exist and, accordingly, Instructure's cybersquatting claim should be dismissed.

## II. FACTUAL BACKGROUND

On June 27, 2021, Instructure sued Canvas for, among other claims, cybersquatting under Section 43 of the Lanham Act based on Canvas's use of the domain name www.canvas.com. Compl. (ECF No. 2), ¶¶ 114-122. Instructure, founded in 2008[1], launched its CANVAS technology platform in June 2010. Compl. (ECF No. 2), ¶ 6. BHG, a non-party to this suit, registered www.canvas.com on June 6, 1997, as reflected on the Internet Corporation for Assigned Names and Numbers' (ICANN)[2] website.[3]

---

[1] Instructure, *The Tale of Instructure: Our Company Story*, https://www.instructure.com/about/our-story (visited August 15, 2021).

[2] ICANN is a not-for-profit public-benefit corporation dedicated to keeping the Internet secure, stable, and interoperable by, among other things, coordinating the Internet's naming system. *See* ICANN, *Welcome to the Global Community!*, https://www.icann.org/get-started (visited August 16, 2021) ("ICANN plays a unique role in the infrastructure of the internet. Through its contracts with registries (such as dot-com or dot-info) and registrars (companies that sell domain names to individuals and organisations), [ICANN] help[s] define how the domain name system functions and expands.").

[3] The screenshots depict information accessible using the registration data lookup tool function on ICANN's website. *See* ICANN, *Registration Data Lookup Tool*, https://lookup.icann.org/ (visited on August 16, 2021). Pursuant to Fed. R. Evid. 201(b)(2), Canvas requests that the Court take judicial notice that the domain name canvas.com was registered on June 6, 1997. *See, e.g., O'Toole v. Northrop Grumman Corp.,* 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); *Schaffer v. Clinton,* 240 F.3d 878, 885 n.8 (10th Cir.2001) (taking judicial notice of information found in a political reference almanac and citing to the almanac's website). Further, it is proper for the Court to take judicial notice of this fact at the motion to dismiss stage. *See, e.g., Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278, n.1 (10th Cir. 2004) (facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment) (citing 27A Fed. Proc., L.Ed. § 62:520 (2003)); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) ("district court did not abuse its discretion and properly considered [the defendant's] motion as a Rule 12(b)(6) motion to dismiss" when the district court considered "the pleadings, [a] seminar recording, and [a TV] episode" and the "seminar recording and the episode were (1) attached to or referenced in the amended complaint, (2) central to [the plaintiff's] claim, and (3) undisputed as to their accuracy and authenticity"); *MacArthur v. San Juan Cty.,* 309 F.3d 1216, 1221 (10th Cir. 2002) ("[i]t is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.") (quotation and citation omitted).

**Domain Information**

**Name:** CANVAS.COM

**Registry Domain ID:** 455642_DOMAIN_COM-VRSN

**Domain Status:**
clientDeleteProhibited
clientRenewProhibited
clientTransferProhibited
clientUpdateProhibited

**Nameservers:**
LANA.NS.CLOUDFLARE.COM
NILE.NS.CLOUDFLARE.COM

**Dates**

**Registry Expiration:** 2023-06-05 04:00:00 UTC

**Created:** 1997-06-06 04:00:00 UTC

**Contact Information**

**Registrant:**

**Handle:** 1

**Name:** Registration Private

**Organization:** Domains By Proxy, LLC

**Email:** canvas.com@domainsbyproxy.com

**Kind:** individual

**Mailing Address:** DomainsByProxy.com 2155 E Warner Rd, Tempe, Arizona, 85284, United States

Instructure's complaint fails to allege *any* date of registration of the domain name, and instead alleges only that Canvas acquired www.canvas.com from BHG in a "lease to own" deal. Compl. (ECF No. 2), ¶ 30. However, the court may take judicial notice of the June 6, 1997 date based on ICANN's records. *See, e.g., Grynberg,* 390 F.3d at 1279, n.1; *Brokers' Choice of Am., Inc.*, 861 F.3d at 1104; *MacArthur,* 309 F.3d at 1221. Accordingly, BHG registered www.canvas.com as a domain name thirteen years before Instructure launched its CANVAS technology platform in June 2010, when it alleges it started using its CANVAS trademark. Compl. (ECF No. 2), ¶ 6.

3

### III. ARGUMENT

#### A. Legal Standard

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotations omitted). "[T]o withstand a motion to dismiss, a complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "If the plaintiff fails to allege an essential element of his claim, the complaint is appropriately dismissed pursuant to Rule 12(b)(6)." *Ellis ex rel. Est. of Ellis v. Ogden City*, 589 F.3d 1099, 1102 (10th Cir. 2009). Further "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679.

#### B. Instructure's Cybersquatting Claim Fails to State a Cause of Action

"Congress enacted the Anti–Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1057 (10th Cir. 2008) (citations and quotations omitted). The statute provides a civil remedy for an owner of a mark where a person:

4

  (i)  has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
  (ii)  registers, traffics in, or uses a domain name that—
    (I)  in the case of a mark that is distinctive *at the time of registration of the domain name*, is identical or confusingly similar to that mark;
    (II)  in the case of a famous mark that is famous *at the time of registration of the domain name*, is identical or confusingly similar to or dilutive of that mark; or
    (III)  is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, "[t]o prevail on a cybersquatting claim, [the plaintiff] must show (1) that its trademark ... was distinctive at the time of registration of the domain name, (2) that the domain names registered by [the defendant] ... are identical or confusingly similar to the trademark, and (3) that [the defendant] used or registered the domain names with a bad faith intent to profit." *Utah Lighthouse Ministry*, 527 F.3d at 1057; *see also One Man Band Corp. v. Smith*, No. 2:14-CV-221 TS, 2014 WL 12622274, at *9 (D. Utah Aug. 19, 2014) (following *Utah Lighthouse Ministry* regarding the necessary elements for a cybersquatting claim); *Crossfit, Inc. v. 5280 Realty, Inc.,* 157 F. Supp. 3d 954, 957–58 (D. Colo. 2016) (same); *Cleary Bldg. Corp. v. David A. Dame, Inc.,* 674 F. Supp. 2d 1257, 1263 (D. Colo. 2009) ("Therefore to defeat Defendant's Motion to Dismiss the ACPA claim, the Complaint and attached exhibits must contain enough facts for this Court to find it plausible (1) that the Cleary Building Marks were distinctive *at the time of registration of Plaintiff's domain name*, (2) that the domain name registered by Defendant, www.myclearybuilding.com, is identical or confusingly similar to the trademarks, and (3) that Defendant used or registered the domain names with a bad faith intent to profit.") (emphasis added)*; accord* J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 25A:50 (5th ed.) (enumerating the elements of cybersquatting as "(1) The defendant has registered, trafficked in or used a domain name; (2) Which is identical or confusingly similar to a mark owned by the plaintiff; (3) The mark was distinctive *at the time of the defendant's*

*registration of the domain name*; (4) The defendant has committed the acts with a bad faith intent to profit from the plaintiff's mark.") (emphasis added).

Here, Instructure cannot prove one of the essential elements of a cybersquatting claim: that its mark was famous or distinctive *at the time the domain name was registered*. *See Utah Lighthouse Ministry*, 527 F.3d at 1057 (denying plaintiff's cybersquatting claim where plaintiff failed to meet its burden of showing, among other things, that its mark was distinctive at the time the defendant registered the domain name); *see also supra* Section II (identifying time of domain name registration as thirteen years before Instructure adopted its alleged mark).

Instructure may argue that its cybersquatting claim should survive based on its allegation that Canvas began leasing the domain name from BHG in May 2021 in a "lease to own transaction." Compl. (ECF No. 2), ¶¶ 30, 115. Such a position would require an interpretation of the cybersquatting statute that contradicts its plain meaning, and congressional intent. *GoPets Ltd. v. Hise,* 657 F.3d 1024, 1031 (9th Cir. 2011) (finding no cybersquatting claim existed because the domain name was registered before the plaintiff's mark was distinctive, even though the domain name was later transferred to a different owner at a time when the plaintiff's mark was distinctive because only the initial registration mattered). The Ninth Circuit explained that "[l]ooking at ACPA in light of traditional property law, however, we conclude that Congress meant 'registration' to refer only to the initial registration." This court's sister district court followed the Ninth Circuit's decision in *Mehdiyev v. Qatar Nat'l Tourism Council*, dismissing a cybersquatting claim where the domain name was initially registered before the counterclaim-plaintiff's mark was distinctive or famous. 2021 WL 1291143 (D. Colo. Apr. 1, 2021).

The *Mehdiyev* case is on point with the instant case.[4] In *Mehdiyev*, the counterclaim-plaintiff argued that the counterclaim-defendant violated ACPA because the counterclaim-defendant's acquisition of the domain name from a non-party to the suit, occurring after the initial registration, constituted a "registration" of the domain name that occurred after the counterclaim-plaintiff had a similar, distinctive mark. *Id.* at *4. The court rejected that position as contrary to the plain meaning of the statute. The court found that "[t]o hold that a trademark is re-registered after each acquisition of a domain name would render the specific references to acquisition in § 1125(d)(B)(VIII) meaningless." *Id.* at *5. The court further reasoned, applying principles of property law, that:

> Just as physical squatting involves a newcomer occupying another's property without any right to it, cybersquatting depends on who had the right in the first place. There is no dispute here that [plaintiff's] predecessor registered <visitqatar.com> prior to the [defendant's] mark becoming distinctive, and was thus not cybersquatting. And there is no dispute that [the plaintiff] legally acquired the predecessor's legal interest in the domain. Acquiring another's legal interest in property (intellectual or otherwise) is not squatting.

*Id.* at *6 (citation omitted). Accordingly, the court granted partial summary judgment as a matter of law, dismissing the cybersquatting claim and stating that "[counterclaim-plaintiff] developed its mark after <visitqatar.com> was registered and now seeks to get around that fact because the registration was transferred. But the statute does not turn on the ownership or time of transfer of domains—it turns on the time of registration." *Id.* at *7

---

[4] There is limited case law in the District of Utah analyzing cybersquatting claims under 15 U.S.C. § 1125(d), specifically the definition of registration as used in this statute. It is common for the U.S. District Court for the District of Utah to rely on decisions from district courts within the jurisdiction of the 10th Circuit, including the U.S. District Court for the District of Colorado. *See Big Squid, Inc. v. Domo, Inc.*, No. 2:19-CV-193, 2019 WL 3555509, at *12, n.182 (D. Utah Aug. 5, 2019) ("This court therefore looks to the decisions of other district courts in this Circuit for guidance.") (citations and quotations omitted).

The *Mehdiyev* court acknowledged that the Third and Eleventh Circuit courts, *see Jysk Bed'n Linen v. Dutta-Roy*, 810 F.3d 767 (11th Cir. 2015); *Schmidheiny v. Weber*, 319 F.3d 581 (3d Cir. 2003), reached a different conclusion in cases involving "re-registration" of a domain name. The *Mehdiyev* court noted that the facts of those cases were distinguishable because they involved "re-registration" which was different from the continuously registered domain name in *Mehdiyev*. 2021 WL 1291143 at *5 (finding that evidence is undisputed that the domain name has been continuously renewed since registration). Like the domain name in *Mehdiyev,* the www.canvas.com domain name was not re-registered but continuously renewed since the date of registration (and in this case, by the same owner). Nevertheless, the *Mehdiyev* court did not ultimately rely on this distinguishing factor, and instead found that those circuit courts had incorrectly interpreted the statute, and that its neighboring sister circuit, the Ninth Circuit, correctly interpreted the statute. *See GoPets Ltd.*, 657 F.3d at 1031 (9th Cir. 2011) ("We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner.").

The *Mehdiyev* court disagreed with the statutory interpretation espoused by the Third and Eleventh Circuits and, instead, followed the statutory interpretation espoused by the Ninth Circuit.

> [T]he court is not persuaded that a transfer of ownership, renewal, change in address or other registration information can effect a "re-registration" of a domain that has been continuously registered . . . . First, the concept of "re-registration" has no basis in the text. That term does not appear anywhere in the statute. And the text, as noted, speaks of a singular point in time: "the time," not "the times" or the "time of registrations." The plain meaning of this is that a registration is a single event, not something that is redone . . . . This understanding is corroborated by the database used to record the domain names in existence, maintained by ICANN, which says that the *<visitqatar.com>* domain has been registered since 2004.
>
> The Third and Eleventh Circuit cases both rely heavily on a negative inference from the fact that the statute does not limit its application to the "initial" or "first" registration. *Jysk*, 810 F.3d at 777; *Schmidheiny*, 319 F.3d at 582. But that inference only makes sense if you've already decided that there can be multiple registrations and re-registrations. If there

8

>is only one "time of registration," as the text states, then there is no reason to include a qualifier such as "initial" or "first." The fact that the statute does not discuss multiple registrations, to this court, supports rather than undermines the conclusion that, consistent with the plain reading of the text, Congress contemplated only a single time of registration.

*Id.* at *5-6. The *Mehdiyev* court also noted that while "the courts were put off by fairly obvious bad-faith actions by the registrants in those cases," such actions did not allow the court to stray from the statutory text. *See id.* at * 6 ("But if Congress had wanted to prohibit any such bad-faith use of a registration, it could have saved everyone a lot of trouble by not limiting § 1125(d) to domains that were registered after a similar mark became distinctive.").

Here, because BHG registered the domain *more than a decade* before Instructure was founded and it launched its CANVAS platform, Instructure cannot prove an essential element of cybersquatting: that its alleged marks were distinctive or famous *at the time of the domain name registration.* The fact that Canvas leased, or even if it had acquired the domain name from BHG, is inconsequential because it does not change the fact that the domain name was registered well before Instructure's alleged marks came into existence. As a matter of law, Canvas's leasing and even acquisition of the domain name (had Canvas acquired it) does not constitute a "registration" for purposes of a cybersquatting claim. Accordingly, the cybersquatting claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim.

/ / /

/ / /

## IV. CONCLUSION

For all the foregoing reasons, Instructure's Third Claim for Relief – the cybersquatting claim – should be dismissed.

Dated: September 1, 2021          Respectfully submitted,

*/s/ Peter J. Willsey*
Peter J. Willsey (*pro hac vice*)
Vincent J. Badolato (*pro hac vice*)
Jason M. Sobel (*pro hac vice*)
Stephanie P. Calnan (*pro hac vice*)
BROWN RUDNICK LLP
pwillsey@brownrudnick.com
vbadolato@brownrudnick.com
jsobel@brownrudnick.com
scalnan@brownrudnick.com

*/s/ Sterling A. Brennan*
Sterling A. Brennan (UT Bar No. 10060)
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
sbrennan@mabr.com

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.