Sterling A. Brennan (UT Bar No. 10060)
sbrennan@mabr.com
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850

Peter J. Willsey (Admitted Pro Hac Vice)
pwillsey@brownrudnick.com
Vincent J. Badolato (Admitted Pro Hac Vice)
vbadolato@brownrudnick.com
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1700

Jason M. Sobel (Admitted Pro Hac Vice)
jsobel@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

Stephanie P. Calnan (Admitted Pro Hac Vice)
scalnan@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INSTRUCTURE, INC.,<br>a Delaware corporation,<br><br>       Plaintiff/<br>       Counterclaim-Defendant,<br><br>   v.<br><br>CANVAS TECHNOLOGIES, INC.,<br>a Delaware corporation,<br><br>       Defendant/<br>       Counterclaim-Plaintiff. | Civil No. 2:21-cv-00454-DAK-CMR<br><br>**CANVAS TECHNOLOGIES, INC.'S<br>ANSWER AND COUNTERCLAIMS**<br><br>**Jury Trial Demanded**<br><br><br><br>District Judge: Hon. Dale A. Kimball<br>Magistrate Judge: Hon. Cecelia M. Romero |

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant/Counterclaim-Plaintiff Canvas Technologies, Inc. ("Canvas" or "Defendant/Counterclaim-Plaintiff"), by and through its counsel, hereby provides its Answer, Affirmative Defense, and Counterclaims to the Complaint filed by Plaintiff/Counterclaim-Defendant Instructure, Inc. ("Instructure" or "Plaintiff/Counterclaim-Defendant") on July 27, 2021 (ECF No. 2). The numbered paragraphs below correspond to the numbered paragraphs of Instructure's Complaint. Headings used in Instructure's Complaint are restated below for ease of reference, but no admissions are thereby made, as such headings are not allegations requiring an answer. Canvas denies all allegations not expressly admitted.

## THE PARTIES

1. Canvas lacks knowledge and information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2. Canvas admits that it is a Delaware corporation with its principal place of business at 55 2nd Street, Suite 325, San Francisco, California, and it was formerly named Jumpstart Ventures, Inc., but denies the remaining allegations in Paragraph 2 because they are mischaracterizations of its business. Canvas avers that it is in the business of employment recruiting and job placement services and provides those services over the internet. More particularly, Canvas enables online recruiting and placement of human resources through communication among employers and candidates for employment, including creating, managing, organizing, sharing, and conducting job recruitment events, and searching, organizing, managing. contacting, sharing, and posting information in the field of recruiting and placement of human resources, both via a web interface and app-based interface.

**JURISDICTION AND VENUE**

3.      Canvas admits that the claims Plaintiff has asserted in the Complaint are based on 15 U.S.C. § 1051, *et seq*. and 28 U.S.C. § 2201, *et seq*. Canvas also admits that this Court has original jurisdiction over the federal claims asserted in the Complaint, but denies that the claims have any merit and hence denies the remaining allegations of Paragraph 3.

4.      Canvas admits that it transacts business within the state of Utah and admits that it is subject to the personal jurisdiction of this Court. Canvas states that the remaining allegations in Paragraph 4 are conclusions of law to which no answer is required. Except as expressly admitted, Canvas denies all the allegations in Paragraph 4 that require an answer.

5.      Paragraph 5 alleges a legal conclusion such that no response is required.

**GENERAL ALLEGATIONS**

**Instructure's Online Platform and Trademark Rights**

6.      Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 and, therefore, denies them.

7.      Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7 and, therefore, denies them.

8.      Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 and, therefore, denies them.

9.      Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 and, therefore, denies them.

10.     Canvas admits that the United States Patent and Trademark Office ("USPTO") records indicate that on April 1, 2010, Instructure filed U.S. Trademark Application Ser. No. 85/004,447 for the mark CANVAS in International Class 42 for "application service provider

(ASP) featuring software for use in educational course and curriculum management, online communication between teachers, academic researchers, and students, tracking student progress, and for facilitating and conducting online connections, collaborations, and interactive discussions between classroom students; technical support services, namely troubleshooting of computer software problems."

11.    Canvas states that the allegations in Paragraph 11 are conclusions of law to which no answer is required, and to the extent a response is required, Canvas lacks knowledge or information sufficient to form a belief as to the truth and, therefore, denies them.

12.    Canvas admits that USPTO records indicate that on January 3, 2012, the USPTO issued to Instructure U.S. Trademark Registration No. 4,080,698 for the mark CANVAS on the Principal Register.

13.    Canvas admits that USPTO records indicate that Instructure is the owner of U.S. Trademark Registration No. 4,080,698 for the mark CANVAS and that the registration has been deemed incontestable.  The remaining allegations in Paragraph 13 are conclusions of law to which no answer is required, and to the extent a response is required, Canvas lacks knowledge or information sufficient to form a belief as to the truth and, therefore, denies them.

14.    Canvas admits that Instructure claims a first use in commerce of the CANVAS mark in June 2010 but lacks knowledge or information sufficient to form a belief as to the truth of that claim and, therefore, denies it.  Canvas admits that Exhibit A to the Complaint purports to contain a copy of the registration certificate for U.S. Trademark Registration No. 4,080,698.

15.    Canvas admits that USPTO records indicate that on May 22, 2012, Instructure filed U.S. Trademark Application Serial No. 85/632,326 for the mark CANVAS in International Class 42 for "application service provider (ASP) featuring software to enable uploading, posting,

showing, displaying, tagging, blogging, sharing or otherwise providing electronic media or information over the Internet or other communications network, all excluding support services in the fields of science, engineering, aviation, petrochemical, and geographical information system."

16.     Canvas states that the allegations in Paragraph 16 are conclusions of law to which no answer is required, and to the extent a response is required, Canvas lacks knowledge or information sufficient to form a belief as to the truth and, therefore, denies them.

17.     Canvas admits that USPTO records indicate that on April 25, 2017 the USPTO issued to Instructure U.S. Trademark Registration No. 5,191,435 for the mark CANVAS on the Principal Register.

18.     Canvas admits that USPTO records indicate that Instructure is the owner of U.S. Trademark Registration No. 5,191,435 for the mark CANVAS, but lacks knowledge or information sufficient to form a belief as to the truth of whether Instructure is in fact the owner of the Registration and therefore denies the remaining allegations in Paragraph 18.

19.     Canvas admits that Instructure claims a first use in commerce of the CANVAS mark in May of 2012, but lacks knowledge or information sufficient to form a belief as to the truth of that claim and, therefore, denies it.  Canvas admits that Exhibit B to the Complaint purports to contain a copy of the registration certificate for U.S. Trademark Registration No. 5,191,435.

20.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and, therefore, denies them.

21.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, therefore, denies them.

22.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 and, therefore, denies them.

23.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and, therefore, denies them.

**Jumpstart Rebrands to Canvas and Infringes the CANVAS Mark**

24.     Admitted.

25.     Admitted.

26.     Admitted.

27.     Canvas admits that on May 24, 2021, a blog post entitled "The Journey from Jumpstart to Canvas" appeared on the website at www.canvas.com, and the contents of that blog post speak for themselves.  Except as expressly admitted, Canvas denies the allegations in Paragraph 27.

28.     Canvas states that the allegations in Paragraph 28 are conclusions of law to which no answer is required, and to the extent a response is required, Canvas lacks knowledge or information sufficient to form a belief as to the truth and, therefore, denies them.

29.     Denied.

30.     Canvas admits that it leases the domain name www.canvas.com from Branded Holding Group, LLC ("BHG").  Except as expressly admitted, Canvas denies the allegations in Paragraph 30.

31.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 and, therefore, denies them.

32.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 and, therefore, denies them.

33. To the extent that Paragraph 33 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 33.

34. Denied.

35. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 and, therefore, denies them.

36. To the extent that Paragraph 36 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 36.

37. Denied.

38. To the extent that Paragraph 38 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 38.

39. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 and, therefore, denies them.

40. Canvas admits that ever since Instructure acquired a company named Portfolium and began offering the Portfolium product as its own in 2019, there are similarities and points of overlap between the products and services offered by the parties, and admits that the parties are now offering some similar services to similar end users under marks featuring the term CANVAS. To the extent that Paragraph 40 purports to quote, paraphrase, or characterize

documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 40.

41. Canvas admits that both parties provide an online community where users can interact with each other, post questions and comments, gather information, and learn from each other, and that the services offered by Instructure under the PORTFOLIUM brand are closely related to services offered by Canvas. Canvas denies, however, that the overall nature of the platform offered by Instructure is similar to the platform offered by Canvas. Canvas denies the remaining allegations of Paragraph 41.

42. To the extent that Paragraph 42 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 and, therefore, denies them.

43. Canvas admits that its "Canvas talent community" allows its members to ask questions, learn from seasoned mentors, and network. To the extent that Paragraph 43 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegation of Paragraph 43 (specifically, that the "community" offered by Instructure is similar to any "community" offered by Canvas).

44. Canvas admits that users of its platform are depicted by squares or icons that can contain the user's picture, name, and title. To the extent that Paragraph 44 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas

denies any characterization of those documents contained in this paragraph. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 44 and, therefore, denies them.

45. Canvas admits that one part of its mission is to connect some of its users with job opportunities. To the extent that Paragraph 45 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 45 and, therefore, denies them.

46. To the extent that Paragraph 46 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 46.

47. To the extent that Paragraph 47 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 47.

48. To the extent that Paragraph 48 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations of Paragraph 48.

49. To the extent that Paragraph 49 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of

those documents contained in this paragraph.  Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 and, therefore, denies them.

50.     To the extent that Paragraph 50 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterizations of those documents contained in this paragraph.  Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50 and, therefore, denies them.

51.     Canvas admits that it has stated on its website that Fortune 500 companies are using its Canvas platform.  To the extent that Paragraph 51 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

52.     Canvas admits that it promotes its online technology platform to, among others, higher education students entering the job market and to prospective employers.  Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52 and, therefore, denies them.

53.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53 and, therefore, denies them.

54.     Denied.

### After Instructure Raises the Issue of Defendant's
### Infringement, Defendant Attempts to Buy Trademark Rights

55.     Canvas admits that it received a letter dated June 2, 2021, in which Instructure made certain baseless allegations and demands.  To the extent that Paragraph 55 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and

Canvas denies any characterization of those documents contained in this paragraph. Canvas lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 55 and, therefore, denies them.

56. To the extent that Paragraph 56 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

57. Admitted.

58. Denied.

59. Denied.

60. Canvas admits that it entered into a trademark assignment agreement dated July 13, 2021, with Ms. Colby Smith whereby trademark Registration No. 4,737,811, among other intellectual property rights, was assigned to Canvas. Canvas denies, or lacks knowledge or information sufficient to form a belief as to the truth of, the remaining allegations in Paragraph 60 and, therefore, denies them.

61. Canvas admits that USPTO records indicate that on April 25, 2014, Ms. Colby Smith filed an application that led to U.S. Trademark Registration No. 4,737,811, which issued on May 19, 2015.

62. Canvas admits that USPTO records indicate that U.S. Trademark Registration No. 4,737,811 describes the mark as "consist[ing] of the word 'canvas' in lower case lettering with the wording 'concierge alliance napa valley & sonoma' below within brackets. The letters of the word 'canvas' appear to two successions of the colors coral, lime, and blue, and the remaining text below and the brackets appear in the color black."

63.     Canvas admits that USPTO records indicate that the services covered by U.S. Trademark Registration No. 4,737,811 are described as "conducting trade shows in the field of hotel, food service, hospitality, and concierge services; conducting, arranging and organizing trade shows and trade fairs for commercial and advertising purposes; membership club services, namely, providing on-line information to members in the fields of branding, business development, business marketing, and marketing; organizing, promoting and conducting exhibitions, tradeshows and events for business purposes."

64.     Canvas states that the allegations in Paragraph 64 are conclusions of law to which no answer is required.

65.     Denied.

66.     To the extent that Paragraph 66 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

67.     Denied, and Canvas avers that its licensee is involved in, among other things, the wine and hospitality industries.

68.     Denied.

69.     Canvas admits that it does not use the stylized version of the mark depicted in its '811 Registration, but avers that it uses the word mark "Canvas", which is the prominent feature of the stylized mark depicted in that registration.

70.     Denied.

71.     Canvas admits that upon information and belief Ms. Colby Smith, pursuant to a license from Canvas, is still using the trademark described in Paragraph 71. Canvas denies the remaining allegations in Paragraph 71.

72.     Denied.

73.     Canvas admits that USPTO records indicate that Application Ser. No. 90/808,387 was filed on July 2, 2021, by Ms. Colby Smith. Canvas denies the remaining allegations in this paragraph.

74.     To the extent that Paragraph 74 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

75.     To the extent that Paragraph 75 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

76.     To the extent that Paragraph 76 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

77.     Denied.

78.     To the extent that Paragraph 78 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.

79.     Denied.

80.     To the extent that Paragraph 80 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph. Canvas denies the remaining allegations in this paragraph.

81.     Denied.

82.     Denied.

83.     Denied, and Canvas avers that its Application No. 90/808,387 refers to the services identified in the application that were used as of July 2013.

84.     Denied.

85.     Canvas admits that its predecessor in interest Ms. Colby Smith did not employ the modern-day filtering and data analytics capabilities that Canvas currently employs but avers that Ms. Smith did employ technology continuously to recruit human resources under the CANVAS mark since 2013.  Canvas denies the remaining allegations of Paragraph 85.

86.     Denied.

87.     To the extent that Paragraph 87 purports to quote, paraphrase, or characterize documents, those documents speak for themselves, and Canvas denies any characterization of those documents contained in this paragraph.  Canvas denies the remaining allegations in this paragraph.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement Under § 32 of the Lanham Act)

88.     Canvas incorporates its responses to the foregoing paragraphs by reference as though set forth fully herein.

89.     Canvas admits that USPTO records indicate that Instructure is the owner of U.S. Trademark Registration No. 4,080,698 for the mark CANVAS and that it is registered on the Principal Register, but lacks knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 89 and, therefore, denies them.

90.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and, therefore, denies them.

91.     Canvas admits that USPTO records indicate that Instructure is the owner of U.S. Trademark Registration No. 5,191,435 for the mark CANVAS and that it is registered on the Principal Register, but lacks knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 91 and, therefore, denies them.

92.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92 and, therefore, denies them.

93.     Canvas states that the allegation in Paragraph 93 that its purported CANVAS trademark is "distinctive" is a conclusion of law to which no answer is required. Canvas lacks knowledge or information to form a belief as to the truth of the remaining allegations of Paragraph 93 and, therefore, denies them.

94.     Canvas admits that on or about May 24, 2021, it rebranded from Jumpstart to Canvas and began using the CANVAS mark to offer its services to, among others, companies, job candidates, and students. Canvas denies the remaining allegations in this paragraph.

95.     Denied.

96.     Denied.

97.     Denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

/ / /

/ / /

## SECOND CLAIM FOR RELIEF
### (Unfair Competition and
### False Designation of Origin Under § 43 of the Lanham Act)

103.     Canvas incorporates its responses to the foregoing paragraphs by reference as though set forth fully herein.

104.     Canvas lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104 and, therefore, denies them.  Moreover, Paragraph 104 includes a conclusion of law to which no answer is required, and therefore, Canvas denies it.

105.     Canvas states that the allegations in Paragraph 105 are conclusions of law to which no answer is required, and to the extent a response is required, Canvas lacks knowledge or information to form a belief as to the truth of the allegations in Paragraph 105 and, therefore, denies them.

106.     Denied.

107.     Denied.

108.     Denied.

109.     Denied.

110.     Denied.

111.     Denied.

112.     Denied.

113.     Denied.

## THIRD CLAIM FOR RELIEF
### (Cybersquatting Under § 43 of The Lanham Act)

114.     Paragraphs 114 to 122 are subject to Canvas's Rule 12(b)(6) Motion to Dismiss Instructure's Cybersquatting Claim.  Canvas reserves its right to respond to the allegations in these paragraphs, if necessary, at the appropriate time.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Judgment of Invalid Assignment under 28 U.S.C. § 2201)

123.    Canvas incorporates its responses to the foregoing paragraphs by reference as though set forth fully herein.

124.    Denied.  Moreover, Canvas avers that it acquired all right, title, and interest in and to Ms. Colby Smith's CANVAS trademark pursuant to acquisition and assignment agreements dated July 13, 2021. As set forth in the agreements, Ms. Smith had been using the CANVAS trademark individually and through her related company, Concierge Alliance, LLC, since 2010, and since at least as early as 2013 in connection with an online, interactive job board for the recruiting of human resources, and for facilitating communication between employers and job applicants throughout the United States and internationally.

125.    Denied.  Moreover, Canvas avers that pursuant to a license agreement dated July 13, 2021, Ms. Smith is the licensee of CANVAS marks and under license from Canvas provides, among other services, the services listed in '811 Registration and Trademark Application No. 90/808,387.

126.    Denied.

127.    Denied. Canvas avers that its licensee, Colby Smith, provides services in the concierge industry and provides the same or substantially similar services as those previously provided by Colby Smith and Concierge Alliance, as is evidenced on her website at www.conciergealliance.com.

128.    Denied.

129.    Denied. Canvas avers that it owns the goodwill associated with the Canvas mark covered by the '811 Registration and Trademark Application No. 90/808,387 and continues to

accumulate such goodwill through providing the services listed in such registration and application, including through its licensee, Colby Smith.

130.    Denied.

131.    Denied.

132.    Denied.

133.    Denied.

**FIFTH CLAIM FOR RELIEF**
**(Cancellation of the '811 Registration Under 15 U.S.C. § 1119)**

134.    Canvas incorporates its responses to the foregoing paragraphs by reference as though set forth fully herein.

135.    Denied.  Moreover, Canvas avers that pursuant to a license agreement dated July 13, 2021, Ms. Smith licenses the CANVAS '811 Registration from Canvas for use in connection with the covered services.

136.    Denied.

137.    Denied.  Moreover, Canvas avers that pursuant to a license agreement dated July 13, 2021, Ms. Smith licenses the CANVAS '811 Registration from Canvas for use in connection with the covered services, and Colby Smith provides such services as is evidenced on her website at www.conciergealliance.com.

138.    Denied.  Moreover, Canvas avers that its licensee is offering the services previously provided by Colby Smith and the Concierge Alliance as is evidenced at www.conciergealliance.com.

139.    Denied.

140.    Denied.

141.    Denied.

17

142.    Denied.

## PRAYER FOR RELIEF

Canvas denies that Instructure is entitled to any relief in any form whatsoever from Canvas and specifically denies that Instructure is entitled to any of the relief sought in Paragraphs 1 through 10 of Instructure's Prayer for Relief.

## AFFIRMATIVE DEFENSE

## (LACHES)

Assuming without conceding that Instructure could ever have asserted any causes of action arising from any use by Canvas of any valid trademarks Instructure may own, all of Instructure's causes of action are barred by the doctrine of laches. Without limitation, Instructure had actual or constructive knowledge of Ms. Colby Smith's use of Instructure's alleged marks since Ms. Smith began using the CANVAS mark in 2010 and offering services through her website, conciergealliance.com, including the services identified in the '811 Registration and Trademark Application No. 90/808,387 as of the dates of first use claimed therein.  Instructure unreasonably delayed before taking any action such that Canvas would be materially prejudiced by Instructure's delay if Instructure is allowed to proceed with any of the claims in the Complaint because Canvas, and its predecessor in interest and licensee, have been using the CANVAS mark continuously for over a decade and continued to expand its business throughout that time, including growing the goodwill associated with its use of the CANVAS mark, such that any impingement on its ability to use the CANVAS mark would constitute material harm.

/ / /

/ / /

**(CANVAS'S RESERVATION OF RIGHTS)**

Canvas reserves the right to amend or supplement its Answer and defenses to assert such additional defenses as may later become available or apparent to Canvas. Canvas denies any remaining allegations not expressly admitted and addressed in this Answer.

/ / /

/ / /

## COUNTERCLAIMS

For its counterclaims against Plaintiff and Counterclaim-Defendant Instructure, Inc. ("Instructure"), Defendant and Counterclaim-Plaintiff Canvas Technologies, Inc. ("Canvas") alleges as follows.

## PARTIES

1.      Canvas is a Delaware corporation with its principal place of business at 55 2nd Street, Suite 325, San Francisco, California.

2.      Upon information and belief and as alleged in paragraph 1 of the Complaint, Instructure is a Delaware corporation with its principal place of business at 6330 South 3000 East, Suite 700, Salt Lake City, Utah.

## JURISDICTION

3.      Canvas's Counterclaims are for trademark infringement, unfair competition and false designation of origin arising under the United States Trademark Act of 1946, as amended, 15 U.S.C. § 1051, *et seq.* (the "Lanham Act"), common law trademark infringement and unfair competition, violation of the Utah Registration and Protection of Trademarks and Service Marks Act, Utah Code Ann. § 70-3a-402, and violation of the Utah Unfair Competition Act, Utah Code Ann 13-5a-101 et. seq.  This Court has jurisdiction over Canvas's Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      Instructure has consented to the personal jurisdiction of this Court with respect to Canvas's Counterclaims at least by commencing its action in this District, as set forth in its Complaint. This Court further has general personal jurisdiction over Instructure as to Canvas's Counterclaims because, upon information and belief and as alleged by Instructure in its Complaint, Instructure has its principal place of business in Salt Lake City, Utah.  The exercise of personal

jurisdiction over Instructure with respect to Canvas's Counterclaims would not offend traditional notions of fair play and substantial justice.

5.      Based on Instructure's filing of this action and Instructure's principal place of business being in this District, venue with respect to Canvas's Counterclaims is proper, though not necessarily convenient, in this District pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

6.      Canvas was founded in 2017 under the name Jumpstart Ventures, Inc. as a diversity recruiting platform created to help companies hire diverse teams, and for job applicants to find employment. Canvas's online cloud-based platform permits companies to hire diverse teams with insight and transparency into the diversity of applicants in the hiring process, and prospective employees to search for employment opportunities. Companies utilize Canvas's platform to understand the diversity of their recruiting pipeline, hire underrepresented talent, conduct virtual events, and measure the effectiveness of their diversity recruiting initiatives. Job applicants use Canvas's platform to find employment with companies that need their skills.

7.      In May 2021, Jumpstart announced that it was changing its name to "Canvas." Also in May 2021, Canvas entered into an agreement with Branded Holding Group LLC to lease the domain name "www.canvas.com."

8.      Ms. Colby Smith, an individual residing in California ("Ms. Smith"), is Canvas's predecessor in interest pursuant to a certain trademark acquisition agreement dated July 13, 2021 ("Trademark Acquisition Agreement") and a certain trademark assignment agreement dated July 13, 2021 ("Trademark Assignment Agreement") that was recorded with the United States Patent and Trademark Office ("USPTO") on July 15, 2021 at REEL/FRAME 7356/0572.

9.     In September 2010, Ms. Smith began using the CANVAS, CANVAS (Stylized) and CANVAS [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA] (Stylized) (collectively, the "Smith CANVAS Marks") trademarks individually and through her company, Concierge Alliance, LLC, in connection with the provision of networking services, training and educational programs, educational information, newsletters, and trade shows.

10.     Since at least as early as July 2013, Ms. Smith has also used the Smith CANVAS Marks in connection with an online, interactive job board for the recruiting of human resources, and for facilitating communication between employers and job applicants throughout the United States and internationally (the "Canvas Job Board").

11.     Ms. Smith has continuously operated the Canvas Job Board since 2013 on her website at jobs.conciergealliance.com.

12.     On July 2, 2021, Ms. Smith applied for a trademark registration for the mark CANVAS, namely U.S. Application Serial No. 90/808,387, in connection with "[p]roviding business information via a web site; [c]onducting trade shows in the field of hotel, food service, hospitality, and concierge services; [c]onducting, arranging and organizing trade shows and trade fairs for commercial and advertising purposes; [m]embership club services, namely, providing on-line information to members in the fields of branding, business development, business marketing, and marketing; [o]rganizing, promoting and conducting exhibitions, tradeshows and events for business purposes; [e]mployment recruiting services; [e]mployment hiring, recruiting, placement, staffing and career networking services" in Class 35 with a claimed first use date of September 1, 2010, and "[p]roviding a website featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment; [p]roviding an interactive website for online recruiting of human resources and

for communication among employers and candidates for employment; [p]roviding a website featuring educational information in field of hotel, food and beverage, hospitality, wineries and concierge services" in Class 42 with a claimed first use date of July 18, 2013.

13.     By way of the July 13, 2021 Trademark Acquisition Agreement and Trademark Assignment Agreement, Canvas acquired the Smith CANVAS Marks and all trademark registrations and trademark applications therefor and all goodwill associated therewith.

14.     On July 13, 2021, concurrently with the Trademark Acquisition Agreement and Trademark Assignment Agreement, Canvas and Ms. Smith also executed a certain trademark license agreement under which Canvas licensed to Ms. Smith the Smith CANVAS Marks for the same services for which she had been using the marks and Ms. Smith's use of the Smith CANVAS Marks continues uninterrupted, including through her websites at www.conciergealliance.com and www.blankbycanvas.com.

15.     Canvas together with its predecessor in interest and licensee, Ms. Smith, have used the Smith CANVAS Marks continuously in connection with "employment recruiting services; employment hiring, recruiting, placement, staffing and career networking services" since at least as early as July 18, 2013.

16.     Canvas, together with its predecessor in interest and licensee, Ms. Smith, has used the Smith CANVAS Marks continuously in connection with "[p]roviding a website featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment; [p]roviding an interactive website for online recruiting of human resources and for communication among employers and candidates for employment; [p]roviding a website featuring educational information in field of hotel, food and beverage, hospitality, wineries and concierge services" since at least as early as July 18, 2013.

17.     As alleged by Instructure in its Complaint, in June 2010 Instructure launched its CANVAS technology platform and began using the CANVAS mark in connection with online education services.

18.     From 2010 to 2019, none of the services offered by Instructure in connection with the CANVAS mark included hiring, recruiting, placement, or staffing services.

19.      From 2010 to 2019, none of the services offered by Instructure in connection with the CANVAS mark included enabling communication among employers and candidates for employment.

20.     From 2010 to 2019, none of the services offered by Instructure in connection with the CANVAS mark included technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment.

21.     From 2010 to 2019, none of the services offered by Instructure were related to the employer/employee hiring and recruiting process.

22.     Upon information and belief, in about February 2019, Instructure acquired a company named Portfolium.

23.     The Internet Archive shows a screen capture of Instructure's use of "Canvas" in conjunction with its Portfolium platform as of October 18, 2019, available at https://web.archive.org/web/20191018180318/https://www.instructure.com/canvas/portfolium.

24.     Upon information and belief, at some time after Instructure acquired the "Portfolium" platform in February 2019, it first began using the CANVAS mark in connection with services in the field of the recruiting of human resources.

25.     Upon information and belief, at some time after Instructure acquired the "Portfolium" platform in February 2019, it first began using the CANVAS mark in connection with a service enabling communication among employers and candidates for employment.

26.     Upon information and belief, at some time after Instructure acquired the "Portfolium" platform in February 2019, it first began using the CANVAS mark in connection with a service that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment.

27.     On June 2, 2021, Instructure through its counsel sent a letter to Canvas alleging trademark infringement of its CANVAS trademark.   In its June 2, 2021 letter, Instructure specifically referred to its "Portfolium" platform as a "recruiting system" and asserted that Canvas's services were similar.

28.     On July 15, 2021, Canvas notified Instructure of Canvas's acquisition of the rights in the Smith CANVAS Marks.

29.     Instructure did not subsequently cease using "Canvas" with its "Portfolium" platform and upon information and belief its usage therewith continues as it was on June 2, 2021, when Instructure referred to its "Portfolium" product as a "recruiting system."

30.     Instead of ceasing use of "Canvas" with its "Portfolium" platform, Instructure filed its Complaint asserting that Canvas was infringing its CANVAS trademark.

31.     As alleged by Instructure in Paragraph 95 of its Complaint, Instructure's use of its CANVAS mark, which is virtually identical to the Smith CANVAS Marks, in connection with recruiting and job placement services creates a likelihood of confusion with respect to the Smith CANVAS Marks, in which Canvas hold prior rights.

32. Specifically, Instructure's continued use of its CANVAS mark to offer and provide employment recruiting and job placement services to at least some of Canvas's target consumers causes confusion among the consuming public as to the source of services offered by Instructure and Canvas, or as to whether Instructure and Canvas are associated or somehow affiliated with each other.

**FIRST CAUSE OF ACTION**
**FEDERAL TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**

33. Canvas realleges and herein incorporates by this reference Paragraphs 1 through 32 of the Counterclaims as if fully set forth herein.

34. Canvas owns the distinctive Smith CANVAS Marks, including a valid federal trademark registration for the CANVAS [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA] (Stylized) mark.

35. Without consent from either Ms. Smith or Canvas, since at least as early as October 2019 Instructure has used the CANVAS mark, which is nearly identical to the Smith CANVAS Marks, in commerce and advertised Instructure's employment recruiting services.

36. Instructure is not affiliated or associated with Canvas or its services, and Canvas does not approve or sponsor Instructure or its services.

37. As alleged in Instructure's Complaint, Instructure's commercial activities as described herein together with Canvas's commercial activities under the Smith CANVAS Marks are likely to lead to and result in confusion, mistake, or deception and are likely to cause the public to mistakenly believe that Canvas has produced, sponsored, authorized, licensed, or is otherwise connected or affiliated with Instructure's commercial and business activities, all to the detriment of Canvas.

38.     Upon information and belief, Instructure's acts are deliberate and intended to confuse the public as to the source of Instructure's services and to injure Canvas and reap the benefit of Canvas's goodwill associated with the Smith CANVAS Marks.

39.     As a direct and proximate result of Instructure's willful and unlawful conduct, Canvas has been injured and will continue to suffer injury to its business and reputation unless Instructure is restrained by this Court from infringing Canvas's trademarks.

40.     The actions of Instructure described above constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

41.     Canvas has been, and will continue to be, damaged and irreparably harmed by the actions of Instructure, which will continue unless Instructure is enjoined by this Court. Canvas has no adequate remedy at law in that the amount of harm to Canvas's business and reputation and the diminution of the goodwill of the Smith CANVAS Marks are difficult to ascertain with specificity. Canvas is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

42.     Canvas is entitled to actual monetary damages in an amount to be determined at trial and to any profits made by Instructure in connection with its infringing activities.

43.     Instructure's infringement of the registered Smith CANVAS Marks is deliberate, willful, fraudulent, and without extenuating circumstances, and constitutes a knowing use of Canvas's trademarks.  Instructure's infringement is thus an "exceptional case" within the meaning of Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).  Canvas is therefore entitled to recover three times the amount of its actual damages and the attorneys' fees and costs incurred in this action, as well as prejudgment interest.

/ / /

/ / /

## SECOND CAUSE OF ACTION
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(a)

44.     Canvas realleges and herein incorporates by this reference Paragraphs 1 through 43 of the Counterclaims as if fully set forth herein.

45.     Canvas owns the distinctive and valid Smith CANVAS Marks, including superior common law rights in the Smith CANVAS Marks.

46.     Instructure's use of the Smith CANVAS Marks is without Canvas's permission or authority and is in total disregard of Canvas's rights to control its trademarks.

47.     As alleged by Instructure in its Complaint, Instructure's actions as described herein together with Canvas's commercial activities under the Smith CANVAS Marks have caused and are likely to cause confusion, mistake, and deception among ordinary consumers as to the affiliation, connection, or association of Instructure with Canvas, as to the true source of Instructure's services, and as to the sponsorship or approval of Instructure or Instructure's services by Canvas.

48.     Instructure's acts have damaged and will continue to damage Canvas, and Canvas has no adequate remedy at law.

49.     Instructure's actions constitute trademark infringement, unfair competition, and false designation of origin in violation of 15 U.S.C. § 1125(a).

50.     In light of the foregoing, Canvas is entitled to injunctive relief prohibiting Instructure from using the CANVAS Marks or any marks confusingly similar thereto, and to recover all damages, including attorneys' fees, that Canvas has sustained and will sustain, and all gains, profits, and advantages obtained by Instructure as a result of its infringing acts alleged above

in an amount not yet known, and costs pursuant to 15 U.S.C. §1117, as well as prejudgment interest.

## THIRD CAUSE OF ACTION
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

51. Canvas realleges and herein incorporates by this reference Paragraphs 1 through 50 of the Counterclaims as if fully set forth herein.

52. Canvas owns common law trademark rights in its Smith CANVAS Marks and all such rights owned by Canvas are superior to any rights that Instructure may claim to have in its claimed CANVAS mark.

53. Instructure's unauthorized use of the Smith CANVAS Marks in connection employment recruiting services together with Canvas's commercial activities under the Smith CANVAS Marks is likely to cause confusion as to the source or sponsorship of these services, and is likely to lead the public to believe that Canvas is affiliated with or sponsors or endorses Instructure and/or Instructure's services, and is likely to mislead persons in the ordinary course of purchasing Instructure's services, thereby injuring the reputation and goodwill and unjustly diverting from Canvas to Instructure the benefits arising therefrom.

54. Instructure's unauthorized association, labeling, and promoting of its "Portfolium" platform with the Smith CANVAS Marks amounts to passing off of Instructure's recruiting services as those offered by Canvas in a manner that induces consumers to use Instructure's platform instead of Canvas's genuine platform.

55. Instructure's unlawful activities constitute trademark infringement and unfair competition, including passing off as proscribed by common law.

56.     Instructure's acts of trademark infringement and unfair competition, including passing off, were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

57.     Instructure's acts or intended acts of trademark infringement and unfair competition, including passing off, unless enjoined by this Court, will threaten to cause Canvas irreparable damage, loss, and injury for which Canvas has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF UTAH REGISTRATION AND PROTECTION OF TRADEMARKS**
**AND SERVICE MARKS ACT, UTAH CODE ANN. § 70-3a-402**

58.     Canvas realleges and herein incorporates by this reference Paragraphs 1 through 57 of the Counterclaims as if fully set forth herein.

59.     Canvas owns superior common law trademark rights in its Smith CANVAS Marks, and said marks are distinctive in Utah and entitled to protection against infringement. Instructure began using the CANVAS mark without the consent of Canvas after Canvas (through its predecessor in interest Ms. Smith) began using the Smith CANVAS Marks.

60.     Instructure's unauthorized use of the Smith CANVAS Marks in connection with employment recruiting services is likely to cause  confusion, mistake, or to deceive as to the source of origin, nature, or quality of those services, and is likely to lead the public to believe that Canvas is affiliated with or sponsors or endorses Instructure and/or Instructure's services, and is likely to mislead persons in the ordinary course of purchasing Instructure's services, thereby injuring the reputation and goodwill and unjustly diverting from Canvas to Instructure the benefits arising therefrom.

61.     Instructure's acts were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

62.     Pursuant to Utah Code Ann. § 70-3a-402(2), Canvas is entitled to actual and trebled damages, attorneys' fees, and costs of suit all damages that Canvas has sustained and will sustain, and all gains, profits, and advantages obtained by Instructure as a result of its infringing acts alleged above in an amount not yet known.

## FIFTH CAUSE OF ACTION
### UTAH UNFAIR COMPETITION ACT, UTAH CODE ANN. § 13-5a-101 et. seq.

63.     Canvas realleges and herein incorporates by reference Paragraphs 1 through 62 of the Counterclaims as if fully set forth herein.

64.     Canvas owns superior common law trademark rights in its Smith CANVAS Marks, said marks are distinctive in Utah and constitute valuable intellectual property.

65.     Instructure began using the CANVAS mark without the consent of Canvas after Canvas (through its predecessor in interest Ms. Smith) began using the Smith CANVAS Marks.

66.     Instructure's unauthorized use of the Smith CANVAS Marks in connection with employment recruiting services is likely to cause confusion, mistake, or to deceive as to the source of origin, nature, or quality of those services, and is likely to lead the public to believe that Canvas is affiliated with or sponsors or endorses Instructure and/or Instructure's services, and is likely to mislead persons in the ordinary course of purchasing Instructure's services, thereby injuring the reputation and goodwill and unjustly diverting from Canvas to Instructure the benefits arising therefrom.

67.     Instructure's acts constitute trademark infringement and are unlawful and unfair.

68.     Instructure's acts were committed, or will imminently be committed, willfully, knowingly, intentionally, and in bad faith.

69. Instructure's acts of trademark infringement impair and diminish the distinctiveness of Canvas's Smith CANVAS Marks and hence Instructure's acts diminish the value of the Smith CANVAS Marks.

70. Instructure's acts of trademark infringement caused and are causing material diminution in value of Canvas's Smith CANVAS Marks.

71. Pursuant to Utah Code Ann. § 13-5a-103 Canvas is entitled to its actual damages, costs and attorney fees, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Canvas requests the following relief:

A. That Canvas be granted permanent injunctive relief under 15 U.S.C. § 1051, et seq., and the inherent powers of this Court; specifically, that Instructure and all officers, agents, servants, representatives, employees, attorneys, parent and subsidiary corporations, assigns, and successors in interest, and all other persons acting in concert with Instructure, be permanently enjoined from (i) using the Smith CANVAS Marks, or any other mark confusingly similar to Canvas's Smith CANVAS Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any employment recruiting, staffing, or job placement product and services; and (ii) from any acts of infringement of Canvas's Smith CANVAS Marks;

B. That Instructure be required to file, within 10 days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Instructure has complied with the terms of the injunction;

C. That Instructure be adjudged to have violated 15 U.S.C. § 1114 by infringing the Canvas's Smith CANVAS Marks;

D. That Instructure be adjudged to have violated 15 U.S.C. § 1125(a) for unfairly competing against Canvas by using a false designation of origin for Instructure's infringing products;

E. That the Court grant any and all relief to which Canvas may be entitled pursuant to federal and state law, including an award of monetary damages (in the form of actual damages and/or Instructure's profits) to be determined at trial, as well as enhanced and/or trebled damages, and attorneys' fees and costs pursuant to each of the causes of actions alleged, jointly and severally;

F. That the costs of this action be taxed against Instructure; and

G. That the Court grant Canvas such other and further relief as the Court may deem just and proper.

/ / /

/ / /

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Canvas hereby requests a

trial by jury of all issues properly triable by jury.

Dated: September 1, 2021                  Respectfully submitted,

*/s/ Peter J. Willsey*
Peter J. Willsey (*pro hac vice*)
Vincent J. Badolato (*pro hac vice*)
Jason M. Sobel (*pro hac vice*)
Stephanie P. Calnan (*pro hac vice*)
BROWN RUDNICK LLP
pwillsey@brownrudnick.com
vbadolato@brownrudnick.com
jsobel@brownrudnick.com
scalnan@brownrudnick.com

*/s/ Sterling A. Brennan*
Sterling A. Brennan (UT Bar No. 10060)
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
sbrennan@mabr.com

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.