(b)(1)(A),MAG,APPEAL,JURY,TRADEMARK

Email All Attys

Email All Attys and Secondary Emails

# US District Court Electronic Case Filing System
## District of Utah (Central)
## CIVIL DOCKET FOR CASE #: 2:21–cv–00454–DAK–CMR

| | |
|---|---|
| Instructure v. Canvas Technologies | Date Filed: 07/27/2021 |
| Assigned to: Judge Dale A. Kimball | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Cecilia M. Romero | Nature of Suit: 840 Trademark |
| Cause: 15:1051 Trademark Infringement | Jurisdiction: Federal Question |

**Plaintiff**

**Instructure**
*a Delaware corporation*

represented by **J. Michael Keyes**
DORSEY & WHITNEY
COLUMBIA CTR
701 FIFTH AVE STE 6100
SEATTLE, WA 98104–7043
206–903–8800
Fax: 206–299–3998
Email: keyes.mike@dorsey.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mark A. Miller**
DORSEY & WHITNEY LLP
111 S MAIN ST 21ST FL
SALT LAKE CITY, UT 84111–2176
(801)933–4068
Email: miller.mark@dorsey.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brett L. Foster**
DORSEY & WHITNEY LLP
111 S MAIN ST 21ST FL
SALT LAKE CITY, UT 84111–2176
(801)933–7360
Email: foster.brett@dorsey.com
*ATTORNEY TO BE NOTICED*

**Tamara L. Kapaloski**
DORSEY & WHITNEY LLP
111 S MAIN ST 21ST FL
SALT LAKE CITY, UT 84111–2176
(801)933–8955
Email: kapaloski.tammy@dorsey.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Canvas Technologies**<br>*a Delaware corporation* | represented by | **Jason Sobel**<br>BROWN RUDNICK LLP<br>7 TIMES SQUARE<br>NEW YORK, NY 10036<br>212–209–4878<br>Email: jsobel@brownrudnick.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Stephanie Calnan**
BROWN RUDNICK LLP
ONE FINANCIAL CENTER
BOSTON, MA 02111
617–856–8149
Email: scalnan@brownrudnick.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Sterling Arthur Brennan**
MASCHOFF BRENNAN
111 S MAIN STE 600
SALT LAKE CITY, UT 84111
(435)252–1360
Email: sbrennan@mabr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent Badolato**
BROWN RUDNICK LLP
601 THIRTEENTH ST NW STE 600
WASHINGTON, DC 20005
202–536–1758
Email: vbadolato@brownrudnick.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles J. Veverka**
MASCHOFF BRENNAN
1389 CENTER DR STE 300
PARK CITY, UT 84098
(435)252–1360
Email: cveverka@mabr.com
*ATTORNEY TO BE NOTICED*

**Peter J. Willsey**

2

BROWN RUDNICK LLP
601 THIRTEENTH ST NW STE 600
WASHINGTON, DC 20005
202−536−1751
Email: pwillsey@brownrudnick.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

| | | |
|---|---|---|
| **Canvas Technologies** | represented by | **Jason Sobel** |
| *a Delaware corporation* | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Stephanie Calnan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sterling Arthur Brennan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vincent Badolato**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Peter J. Willsey**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

| | | |
|---|---|---|
| **Instructure** | represented by | **J. Michael Keyes** |
| *a Delaware corporation* | | (See above for address) |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |

**Mark A. Miller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brett L. Foster**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tamara L. Kapaloski**

3

(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 07/27/2021 | 1 | | Case has been indexed and assigned to Judge Dale A. Kimball. Plaintiff Instructure is directed to E–File the <u>Complaint</u> and cover sheet (found under Complaints and Other Initiating Documents) and pay the filing fee of $ 402 by the end of the business day. <br> <span style="color:red">NOTE: The court will not have jurisdiction until the opening document is electronically filed and the filing fee paid in the CM/ECF system.</span> <br> Civil Summons may be issued electronically. Prepare the summons using the courts <u>PDF version</u> and email it to utdecf_clerk@utd.uscourts.gov for issuance. (mh) (Entered: 07/27/2021) |
| 07/27/2021 | 2 | | COMPLAINT against Canvas Technologies (Filing fee $ 402, receipt number AUTDC–4066952) filed by Instructure. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Civil Cover Sheet Civil Cover Sheet) Assigned to Judge Dale A. Kimball (Miller, Mark) (Entered: 07/27/2021) |
| 07/27/2021 | 3 | | CORPORATE DISCLOSURE STATEMENT under FRCP 7.1 filed by Plaintiff Instructure identifying Instructure Holdings, Inc. as Corporate Parent. (Miller, Mark) (Entered: 07/27/2021) |
| 07/27/2021 | 4 | | NOTICE OF REQUIREMENTS for appearance phv mailed to attorney Mike Keyes, for Plaintiff Instructure. (mh) (Entered: 07/27/2021) |
| 07/27/2021 | 5 | | Report on the Filing of an action sent to the Director of the U.S. Patent and Trademark Office. (mh) (Entered: 07/27/2021) |
| 07/28/2021 | 6 | | **\*\*RESTRICTED DOCUMENT\*\***Summons Issued Electronically as to Canvas Technologies. Instructions to Counsel: <br> 1. Click on the document number. <br> 2. If you are prompted for an ECF login, enter your 'Attorney' login to CM/ECF. <br> 3. Print the issued summons for service. (nmt) (Entered: 07/28/2021) |
| 07/28/2021 | 7 | | MOTION for Admission Pro Hac Vice of J. Michael Keyes , Registration fee $ 250, receipt number AUTDC–4067841, <br><br> Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. <br> Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf–electronic–case–filing. <br><br> filed by Plaintiff Instructure. (Attachments: # 1 Exhibit Application, # 2 Text of Proposed Order Granting Motion for Admission Pro Hac Vice)(Miller, Mark) (Entered: 07/28/2021) |
| 07/28/2021 | 8 | | <span style="color:red">ORDER granting 7 Motion for Admission Pro Hac Vice of Attorney J. Michael Keyes for Instructure.</span> <br><br> <span style="color:red">*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf–electronic–case–filing.*</span> <br><br> <span style="color:red">*Attorneys admitted Pro Hac Vice may download a copy of the District of Utah's local rules from*</span> |

| | | | |
|---|---|---|---|
| | | | *the court's web site at* <u>https://www.utd.uscourts.gov/rules−practice</u>.<br><br>Signed by Judge Dale A. Kimball on 7/28/2021. (eat) (Entered: 07/28/2021) |
| 07/28/2021 | 9 | | ORDER REFERRING CASE to Magistrate Judge Cecilia M. Romero under 28:636 (b)(1)(A), Magistrate to hear and determine all nondispositive pretrial matters. No attached document. Signed by Judge Dale A. Kimball on 7/28/2021. (eat) (Entered: 07/28/2021) |
| 07/29/2021 | 10 | | ORDER TO PROPOSE SCHEDULE – Plaintiff must propose a schedule to defendant in the form of a draft Attorney Planning Meeting Report within the earlier of fourteen(14) days after any defendant has appeared or twenty−eight (28) days after any defendant has been served with the complaint. See order for additional instructions. Signed by Magistrate Judge Cecilia M. Romero on 7/29/21. (jrj) (Entered: 07/29/2021) |
| 08/03/2021 | 11 | | **RESTRICTED DOCUMENT** SUMMONS Returned Executed by Instructure as to ~~Instructure~~ Canvas Technologies served on 7/29/2021, answer due 8/19/2021. (Attachments: # 1 Exhibit Summons)(Miller, Mark) Modified by correcting docket text, deleting incorrect answer date for Plaintiff and adding an answer date for Defendant on 8/3/2021 (eat). (Entered: 08/03/2021) |
| 08/03/2021 | | | ANSWER DEADLINE UPDATED for Defendant Canvas Technologies: Answer due 8/19/2021 pursuant to the date of service on the 11 Summons Returned Executed. (eat) (Entered: 08/03/2021) |
| 08/17/2021 | 12 | | Stipulated MOTION for Extension of Time To Respond to Complaint filed by Defendant Canvas Technologies. (Attachments: # 1 Text of Proposed Order) Motions referred to Cecilia M. Romero. Attorney Sterling Arthur Brennan added to party Canvas Technologies(pty:dft)(Brennan, Sterling) Modified by changing event type to motion for extension of time to file answer on 8/17/2021 (eat). (Entered: 08/17/2021) |
| 08/17/2021 | 13 | | MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Text of Proposed Order)(Kapaloski, Tamara) (Entered: 08/17/2021) |
| 08/17/2021 | 14 | | AFFIDAVIT/DECLARATION of Steve Daly in Support re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Exhibit 1: Reg. No. 4,080,698 issued on Jan. 3, 2012 for Instructures CANVAS Mark, # 2 Exhibit 2: Reg. No. 5,191,435 issued on April 25, 2017 for Instructures CANVAS Mark, # 3 Exhibit 3: June 2010 Article Introducing Instructures Canvas Platform, # 4 Exhibit 4: July 2012 Article Reporting on University of Central Florida Moving to Instructures Canvas Platform, # 5 Exhibit 5: Sept. 2012 Article Reporting on University of South Florida Moving to Instructures Canvas Platform, # 6 Exhibit 6: Dec. 2012 Article Reporting on San Jose University Moving to Instructures Canvas Platform Canvas, # 7 Exhibit 7: Feb. 2019 Press Release on Instructures Acquisition of Student Success Network Portfolium, # 8 Exhibit 8: Nov. 2020 Case Study on Palo Alto College Moving to Canvas Portfolium, # 9 Exhibit 9: 2020 Infosheet on Instructures Canvas Portfolium, # 10 Exhibit 10: Sept. 2013 Manual on Canvas by Instructure, # 11 Exhibit 11: 2019 Canvas Brochure, # 12 Exhibit 12: Oct. 2017 Press Release Announcing Canvas Awards from THE Journals Readers Choice Awards, # 13 Exhibit 13: Oct. 2017 Press Release Announcing Canvas Awards in Campus Technology Readers Choice Awards, # 14 Exhibit 14: Feb. 2011 Article Reporting that Instructures Canvas has 26 Educational Institutions as Customers, # 15 Exhibit 15: Oct. 2012 Article Reporting that Instructures Canvas has 4.5 Million Users, # 16 Exhibit 16: Jul. 2018 Article Reporting that Canvas has Unseated Blackboard as Leading LMS in the U.S., # 17 Exhibit 17: Sept. 2020 Article Reporting that 13 U.S. States Sign Deal with Instructure Canvas, # 18 Exhibit 18: Dec. 2019 Article Reporting that Jumpstart Moves University Recruiting Off Campus, # 19 Exhibit 19: May 2021 Blog Post Announcing that |

| | | | |
|---|---|---|---|
| | | | Jumpstart has Rebranded as Canvas, # 20 Exhibit 20: May 2021 Article Reporting that Jumpstart Acquired Canvas.com in Lease to Own Deal, # 21 Exhibit 21: Transcript of June 2021 Rec Tech Media Podcast with Canvas Tech CEO, Ben Herman, # 22 Exhibit 22: Transcript of June 2021 Chad & Cheese Podcast with Canvas Tech CEO, Ben Herman, # 23 Exhibit 23: Transcript of June 2021 Recruiting Daily Podcast with Canvas Tech VP of Marketing, Maya Grossman, # 24 Exhibit 24: May 2021 Canvas Tech Blog Titled The Journey from Jumpstart to Canvas, # 25 Exhibit 25: Consumer Comments Regarding Jumpstarts Rebrand to Canvas, # 26 Exhibit 26: Consumer Comments Regarding Jumpstarts Rebrand to Canvas, # 27 Exhibit 27: Consumer email to Instructure Regarding Jumpstarts Rebrand to Canvas, # 28 Exhibit 28: NCTC Manual on Creating Your NCTC ePortfolio Using Canvas, # 29 Exhibit 29: June 2, 2021, Cease & Desist Letter to Canvas Technologies Regarding Instructures Canvas Mark, # 30 Exhibit 30: July 13, 2021, Trademark Assignment Agreement between Colby Smith and Canvas Technologies, # 31 Exhibit 31: Reg. No. 4,737,811 issued on May 19, 2015 for Colby Smiths CANVAS Acronym Mark with Colors, # 32 Exhibit 32: Trademark Application for the CANVAS Mark filed by Colby Smith on July 2, 2021, # 33 Exhibit 33: Printout from the Concierge Alliance of Napa Valley and Sonoma Website)(Kapaloski, Tamara) (Entered: 08/17/2021) |
| 08/18/2021 | 15 | | ORDER RE: PROCEDURES FOR EMERGENCY MOTION re 13 MOTION for Preliminary Injunction filed by Instructure. Signed by Judge Dale A. Kimball on 8/18/2021. (eat) (Entered: 08/18/2021) |
| 08/18/2021 | 16 | | CERTIFICATE OF SERVICE by Instructure re 14 Affidavit/Declaration in Support of Motion,,,,,,,,,,,, 13 MOTION for Preliminary Injunction and Memorandum in Support , 15 Order (Miller, Mark) (Entered: 08/18/2021) |
| 08/18/2021 | 17 | | ORDER granting 12 Stipulated Motion for Extension of Time to Respond to 2 Complaint. Answer deadline updated for Canvas Technologies: answer or other response due by 9/7/2021. Signed by Magistrate Judge Cecilia M. Romero on 8/18/2021. (eat) (Entered: 08/18/2021) |
| 08/19/2021 | 18 | | MOTION for Admission Pro Hac Vice of Jason Sobel , Registration fee $ 250, receipt number AUTDC−4087486, Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf−electronic−case−filing. filed by Defendant Canvas Technologies. (Attachments: # 1 Application for Pro Hac Vice Admission, # 2 Text of Proposed Order)(Brennan, Sterling) (Entered: 08/19/2021) |
| 08/19/2021 | 19 | | MOTION for Admission Pro Hac Vice of Peter Willsey , Registration fee $ 250, receipt number AUTDC−4087492, Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf−electronic−case−filing. filed by Defendant Canvas Technologies. (Attachments: # 1 Application for Pro Hac Vice |

| | | | |
|---|---|---|---|
| | | | Admission, # 2 Text of Proposed Order)(Brennan, Sterling) (Entered: 08/19/2021) |
| 08/19/2021 | 20 | | MOTION for Admission Pro Hac Vice of Stephanie Calnan , Registration fee $ 250, receipt number AUTDC–4087507,<br><br>Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html.<br>Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf–electronic–case–filing.<br><br>filed by Defendant Canvas Technologies. (Attachments: # 1 Application for Pro Hac Vice Admission, # 2 Text of Proposed Order)(Brennan, Sterling) (Entered: 08/19/2021) |
| 08/19/2021 | 21 | | MOTION for Admission Pro Hac Vice of Vincent Badolato , Registration fee $ 250, receipt number AUTDC–4087514,<br><br>Attorneys awaiting Pro Hac Vice admission should immediately register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html.<br>Registration requests will not be approved until the court has granted the pro hac vice motion. Instructions are available on the court's website at https://www.utd.uscourts.gov/cmecf–electronic–case–filing.<br><br>filed by Defendant Canvas Technologies. (Attachments: # 1 Application for Pro Hac Vice Admission, # 2 Text of Proposed Order)(Brennan, Sterling) (Entered: 08/19/2021) |
| 08/19/2021 | 22 | | ORDER granting 18 Motion for Admission Pro Hac Vice of Attorney Jason Sobel for Canvas Technologies.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf–electronic–case–filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utah's local rules from the court's web site at https://www.utd.uscourts.gov/rules–practice.*<br><br>Signed by Judge Dale A. Kimball on 8/19/2021. (eat) (Entered: 08/19/2021) |
| 08/19/2021 | 23 | | ORDER granting 19 Motion for Admission Pro Hac Vice of Attorney Peter Willsey for Canvas Technologies.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf–electronic–case–filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utah's local rules from the court's web site at https://www.utd.uscourts.gov/rules–practice.*<br><br>Signed by Judge Dale A. Kimball on 8/19/2021. (eat) (Entered: 08/19/2021) |
| 08/19/2021 | 24 | | ORDER granting 20 Motion for Admission Pro Hac Vice of Attorney Stephanie Calnan for |

| | | | |
|---|---|---|---|
| | | | Canvas Technologies.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utah's local rules from the court's web site at https://www.utd.uscourts.gov/rules−practice.*<br><br>Signed by Judge Dale A. Kimball on 8/19/2021. (eat) (Entered: 08/19/2021) |
| 08/19/2021 | 25 | | ORDER granting 21 Motion for Admission Pro Hac Vice of Attorney Vincent Badolato for Canvas Technologies.<br><br>*Attorneys admitted Pro Hac Vice must register to efile and receive electronic notification of case activity in the District of Utah at https://www.pacer.uscourts.gov/cmecf/dcbk.html. Instructions are available at https://www.utd.uscourts.gov/cmecf−electronic−case−filing.*<br><br>*Attorneys admitted Pro Hac Vice may download a copy of the District of Utah's local rules from the court's web site at https://www.utd.uscourts.gov/rules−practice.*<br><br>Signed by Judge Dale A. Kimball on 8/19/2021. (eat) (Entered: 08/19/2021) |
| 09/01/2021 | 26 | | REPLY to Response to Motion re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 09/01/2021) |
| 09/01/2021 | 27 | | MEMORANDUM in Opposition re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 09/01/2021) |
| 09/01/2021 | 28 | | AFFIDAVIT/DECLARATION of Ben Herman in Opposition re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendant Canvas Technologies. (Attachments: # 1 Exhibit 1: Instructure Cease and Desist Letter)(Brennan, Sterling) (Entered: 09/01/2021) |
| 09/01/2021 | 29 | | AFFIDAVIT/DECLARATION of Colby Smith in Opposition re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendant Canvas Technologies. (Attachments: # 1 Exhibit 1: TESS Printout (USPTO # 86,263,311), # 2 Exhibit 2: Section 7 Amendment, # 3 Exhibit 3: TESS Printout (USPTO # 90,808,387), # 4 Exhibit 4: SMIC2−002 Serial Number 90808387, # 5 Exhibit 5: Trademark Acquisition Agreement, # 6 Exhibit 6: Trademark Assignment Agreement, # 7 Exhibit 7: Trademark License Agreement)(Brennan, Sterling) (Entered: 09/01/2021) |
| 09/01/2021 | 30 | | AFFIDAVIT/DECLARATION of Stephanie P. Calnan in Opposition re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendant Canvas Technologies. (Attachments: # 1 Exhibit 1: USPTO notice of recordation of assignment from Colby Smith to Canvas Technologies Inc for 2 canvas marks, # 2 Exhibit 2: 2010.09.11 − Internet Archive Capture of instructure.com, # 3 Exhibit 3: 2011.06.26 Internet Archive Capture of instructure.com, # 4 Exhibit 4: 2013.10.18 Internet Archive Capture of instructure.com, # 5 Exhibit 5: 2017.07.08 Internet Archive Capture of canvaslms.comlead_source_description=instructure.com, # 6 Exhibit 6: 2019.10.19 − Internet Archive of portfolium.com, # 7 Exhibit 7: Jobvite_s Canvas on TESS − U.S. Registration No. 5272503)(Brennan, Sterling) (Entered: 09/01/2021) |
| 09/01/2021 | 31 | | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Canvas Technologies. (Attachments: # 1 Text of Proposed Order)(Brennan, |

| | | | |
|---|---|---|---|
| | | | Sterling) (Entered: 09/01/2021) |
| 09/01/2021 | 32 | | ANSWER to Complaint with Jury Demand , COUNTERCLAIM against Instructure filed by Canvas Technologies.(Brennan, Sterling) (Entered: 09/01/2021) |
| 09/02/2021 | 33 | | MOTION for Extension of Time to File Response/Reply filed by Counter Claimant Canvas Technologies, Defendant Canvas Technologies. (Attachments: # 1 Text of Proposed Order) Motions referred to Cecilia M. Romero.(Brennan, Sterling) (Entered: 09/02/2021) |
| 09/03/2021 | 34 | | ORDER EXTENDING DEADLINES – granting 33 Motion for Extension of Time to File Response/Reply. Instructure's Reply in Support of Motion for Preliminary Injunction 26 is withdrawn, and the deadlines for the filing of the parties' responses to the specified matters are extended as listed in the Order. Signed by Magistrate Judge Cecilia M. Romero on 9/3/21. (jrj) (Entered: 09/03/2021) |
| 09/08/2021 | 35 | | **NOTICE OF ZOOM HEARING ON MOTIONS** re Plaintiff's 13 MOTION for Preliminary Injunction, and Defendant's 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (Notice generated by DAK Chambers): Motion Hearing is set for 10/28/2021 at 02:00 PM before Judge Dale A. Kimball. The hearing will be conducted via Zoom. The parties should not appear in person at the courthouse. The Zoom participation information is as follows:<br><br>Join ZoomGov Meeting:<br><br>https://www.zoomgov.com/j/16133447407?pwd=RWtlVFM2c2tmWXZKYUp5NVhTbkZ5UT09<br><br>Meeting ID: 161 3344 7407<br>Password: 584299<br>One tap mobile<br>+16692545252,,16133447407#,,,,*584299# US (San Jose)<br>+16692161590,,16133447407#,,,,*584299# US (San Jose)<br><br>Dial by your location<br>+1 669 254 5252 US (San Jose)<br>+1 646 828 7666 US (New York)<br>Meeting ID: 161 3344 7407<br>Password: 584299<br><br>Find your local number: https://www.zoomgov.com/u/acx9bO8sSS (eat) (Entered: 09/08/2021) |
| 09/09/2021 | 36 | | REPORT OF ATTORNEY PLANNING MEETING. (Attachments: # 1 Text of Proposed Order)(Kapaloski, Tamara) (Entered: 09/09/2021) |
| 09/10/2021 | 37 | | SCHEDULING ORDER: Amended Pleadings due by 10/20/2021. Joinder of Parties due by 10/20/2021. Expert Discovery due by 12/8/2022. Dispositive Motions due by 1/9/2023. 5−Day Jury Trial is set for 8/7/2023 at 08:30 AM in Rm 3.400 before Judge Dale A. Kimball. Signed by Magistrate Judge Cecilia M. Romero on 9/10/2021. (eat) (Entered: 09/10/2021) |
| 09/17/2021 | 38 | | REPLY to Response to Motion re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 09/17/2021) |
| 09/17/2021 | 39 | | Redacted AFFIDAVIT/DECLARATION of Steve Daly in Support re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H)(Kapaloski, Tamara) (Entered: 09/17/2021) |

| 09/17/2021 | 40 | | MOTION to Seal re 39 Affidavit/Declaration in Support of Motion, filed by Plaintiff Instructure. (Attachments: # 1 Text of Proposed Order) Motions referred to Cecilia M. Romero.(Kapaloski, Tamara) (Entered: 09/17/2021) |
| 09/17/2021 | 41 | | **SEALED DOCUMENT** re 40 MOTION to Seal re 39 Affidavit/Declaration in Support of Motion, filed by Plaintiff Instructure <br><br> **NOTE: Filer is instructed to serve the sealed document on all other parties..** (Kapaloski, Tamara) (Entered: 09/17/2021) |
| 09/20/2021 | 42 | | ORDER granting Plaintiff's 40 Motion for Leave to File Under Seal. Signed by Judge Dale A. Kimball on 9/20/2021. (eat) (Entered: 09/20/2021) |
| 09/20/2021 | 43 | | NOTICE of Preliminary Injunction Hearing Format by Instructure re 15 Order (Kapaloski, Tamara) (Entered: 09/20/2021) |
| 09/20/2021 | 44 | | MOTION for Leave to File Sur–Reply in Opposition to Instructure, Inc.'s Motion for Preliminary Injunction filed by Defendant Canvas Technologies. (Attachments: # 1 Text of Proposed Order) Motions referred to Cecilia M. Romero. Attorney Charles J. Veverka added to party Canvas Technologies(pty:dft)(Veverka, Charles) (Entered: 09/20/2021) |
| 09/20/2021 | 45 | | NOTICE of Preliminary Injunction Hearing by Canvas Technologies re 15 Order (Veverka, Charles) (Entered: 09/20/2021) |
| 09/21/2021 | 46 | | ORDER granting Defendant's 44 Motion for Leave to File a Sur–Reply. Signed by Judge Dale A. Kimball on 9/21/2021. (eat) (Entered: 09/21/2021) |
| 09/24/2021 | 47 | | RESPONSE to Motion re 13 MOTION for Preliminary Injunction and Memorandum in Support of *Evidentiary Objections to the Supplemental Declaration of Steve Daly in Support of Instructure's Reply to Preliminary Injunction Motion* filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 09/24/2021) |
| 09/24/2021 | 48 | | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Text of Proposed Order)(Kapaloski, Tamara) (Entered: 09/24/2021) |
| 09/24/2021 | 49 | | MOTION Re Request for Judicial Notice In Support of Plaintiff's Rule 12(b)(6) Motion to Dismiss Defendant's Counterclaims re 48 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Exhibit A: Instructure's '698 Federal Registration for CANVAS, # 2 Exhibit B: Instructure's '435 Federal Registration for CANVAS, # 3 Exhibit C: Colby Smith's '811 Federal Registration for CANVAS [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA], # 4 Exhibit D: July 13, 2021 Trademark Assignment Agreement Between Colby Smith and Defendant, # 5 Exhibit E: Printout from jobs.conciergealliance.com, # 6 Exhibit F: Printout of January 13, 2014 Internet Archive Capture of jobs.conciergealliance.com) Motions referred to Cecilia M. Romero.(Kapaloski, Tamara) (Entered: 09/24/2021) |
| 10/01/2021 | 50 | | REPLY BRIEF re 47 Response to Motion, *(Plaintiff's Response to Defendant's Evidentiary Objections to the Supplemental Declaration of Steve Daly)* filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 10/01/2021) |
| 10/01/2021 | 51 | | MEMORANDUM in Opposition re 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 10/01/2021) |
| 10/01/2021 | 52 | | |

| | | | |
|---|---|---|---|
| | | | MOTION (Request for Judicial Notice of Domain Report for Canvas.Com) re 51 Memorandum in Opposition to Motion and Memorandum in Support filed by Plaintiff Instructure. (Attachments: # 1 Exhibit 1: Domain History Report for Canvas.Com) Motions referred to Cecilia M. Romero.(Kapaloski, Tamara) (Entered: 10/01/2021) |
| 10/01/2021 | 53 | | Sur–reply MEMORANDUM in Opposition re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Counter Claimant Canvas Technologies. (Brennan, Sterling) (Entered: 10/01/2021) |
| 10/01/2021 | 54 | | Supplemental AFFIDAVIT/Declaration of Colby Smith in Opposition re 53 Memorandum in Opposition to Motion filed by Canvas Technologies. (Attachments: # 1 Exhibit A – Trade Marketing Manager in Charlotte North Carolina, # 2 Exhibit B – Division Sales Manager in New York New York, # 3 Exhibit C – Area Sales Manager in Fort Lauderdale Florida, # 4 Exhibit D – Area Sales Manager in New York New York, # 5 Exhibit E – Brand Ambassador, # 6 Exhibit F – 2014 01 15 WayBack Machine Snap Shot)(Brennan, Sterling) (Entered: 10/01/2021) |
| 10/04/2021 | 55 | | Motions No Longer Referred: 52 MOTION (Request for Judicial Notice of Domain Report for Canvas.Com), and 49 MOTION Re Request for Judicial Notice In Support of Plaintiff's Rule 12(b)(6) Motion to Dismiss Defendant's Counterclaims will be handled by the District Judge. (cvm) (Entered: 10/04/2021) |
| 10/05/2021 | 56 | | **AMENDED NOTICE OF ZOOM HEARING ON MOTIONS** re Plaintiff's 13 MOTION for Preliminary Injunction, Defendant's 31 MOTION to Dismiss for Failure to State a Claim, and Plaintiff's 48 MOTION to Dismiss Counterclaims for Failure to State a Claim (Notice generated by DAK Chambers): Motion Hearing is RESET for 11/30/2021 at 02:00 PM before Judge Dale A. Kimball. The hearing will be conducted via Zoom. The parties should not appear in person at the courthouse. The Zoom participation information is as follows:<br><br>Join ZoomGov Meeting:<br><br>https://www.zoomgov.com/j/16133447407?pwd=RWtlVFM2c2tmWXZKYUp5NVhTbkZ5UT09<br><br>Meeting ID: 161 3344 7407<br>Password: 584299<br>One tap mobile<br>+16692545252,,16133447407#,,,,*584299# US (San Jose)<br>+16692161590,,16133447407#,,,,*584299# US (San Jose)<br><br>Dial by your location<br>+1 669 254 5252 US (San Jose)<br>+1 646 828 7666 US (New York)<br>Meeting ID: 161 3344 7407<br>Password: 584299<br><br>Find your local number: https://www.zoomgov.com/u/acx9bO8sSS (eat) (Entered: 10/05/2021) |
| 10/11/2021 | 57 | | CORPORATE DISCLOSURE STATEMENT under FRCP 7.1 filed by Counter Claimant Canvas Technologies, Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 10/11/2021) |
| 10/12/2021 | 58 | | **SECOND AMENDED NOTICE OF ZOOM HEARING ON MOTIONS** re Plaintiff's 13 MOTION for Preliminary Injunction, Defendant's 31 MOTION to Dismiss for Failure to State a Claim, and Plaintiff's 48 MOTION to Dismiss Counterclaims for Failure to State a Claim (Notice generated by DAK Chambers): Motion Hearing is RESET at the request of the parties to 12/14/2021 at 02:00 PM before Judge Dale A. Kimball. The hearing will be conducted via Zoom. |

| | | | |
|---|---|---|---|
| | | | The parties should not appear in person at the courthouse. The Zoom participation information is as follows:<br><br>Join ZoomGov Meeting:<br><br>https://www.zoomgov.com/j/16133447407?pwd=RWtlVFM2c2tmWXZKYUp5NVhTbkZ5UT09<br><br>Meeting ID: 161 3344 7407<br>Password: 584299<br>One tap mobile<br>+16692545252,,16133447407#,,,,*584299# US (San Jose)<br>+16692161590,,16133447407#,,,,*584299# US (San Jose)<br><br>Dial by your location<br>+1 669 254 5252 US (San Jose)<br>+1 646 828 7666 US (New York)<br>Meeting ID: 161 3344 7407<br>Password: 584299<br><br>Find your local number: https://www.zoomgov.com/u/acx9bO8sSS (eat) (Entered: 10/12/2021) |
| 10/15/2021 | 59 | | REPLY to Response to Motion re 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 10/15/2021) |
| 10/15/2021 | 60 | | MEMORANDUM in Opposition re 52 MOTION (Request for Judicial Notice of Domain Report for Canvas.Com) re 51 Memorandum in Opposition to Motion and Memorandum in Support filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 10/15/2021) |
| 10/22/2021 | 61 | | MEMORANDUM in Opposition re 48 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 10/22/2021) |
| 10/22/2021 | 62 | | AFFIDAVIT/DECLARATION of Stephanie P. Calnan in Opposition re 48 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Defendant Canvas Technologies. (Attachments: # 1 Exhibit A – Trademark Acquisition Agreement, # 2 Exhibit B – TESS Printout (USPTO # 90,808,387))(Brennan, Sterling) (Entered: 10/22/2021) |
| 10/29/2021 | 63 | | REPLY to Response to Motion re 52 MOTION (Request for Judicial Notice of Domain Report for Canvas.Com) re 51 Memorandum in Opposition to Motion and Memorandum in Support filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 10/29/2021) |
| 11/05/2021 | 64 | | REPLY to Response to Motion re 48 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM and Memorandum in Support filed by Plaintiff Instructure. (Kapaloski, Tamara) (Entered: 11/05/2021) |
| 11/08/2021 | 65 | | NOTICE of SUPPLEMENTAL AUTHORITY by Instructure re 51 Memorandum in Opposition to Motion (Attachments: # 1 Exhibit 1: Supplemental Authority Relevant to Defendant's Motion to Dismiss) (Kapaloski, Tamara) (Entered: 11/08/2021) |
| 11/16/2021 | 66 | | NOTICE of Supplemental Evidence Relevant to Plaintiff's Preliminary Injunction by Instructure (Attachments: # 1 Exhibit 1) (Kapaloski, Tamara) (Entered: 11/16/2021) |
| 11/16/2021 | 67 | | |

| | | | |
|---|---|---|---|
| | | | DECLARATION of Tamara L. Kapaloski re 66 Notice (Other) filed by Instructure. (Kapaloski, Tamara) (Entered: 11/16/2021) |
| 11/23/2021 | 68 | | RESPONSE to Motion re 13 MOTION for Preliminary Injunction and Memorandum in Support filed by Defendant Canvas Technologies. (Brennan, Sterling) (Entered: 11/23/2021) |
| 11/24/2021 | 69 | | NOTICE of of Supplemental Evidence Relevant to Plaintiff's Preliminary Injunction by Instructure re 13 MOTION for Preliminary Injunction and Memorandum in Support (Attachments: # 1 Exhibit 1: Instructure's Cease and Desist Letter to Canvas Talent Inc., # 2 Exhibit 2: Canvas Talent Inc.'s Response to Instructure's Cease and Desist Letter) (Kapaloski, Tamara) (Entered: 11/24/2021) |
| 12/07/2021 | 70 | | NOTICE of Supplemental Evidence Relevant to Plaintiff's Preliminary Injunction Motion (Defendant's Advertisements Regarding HighEd) by Instructure re 13 MOTION for Preliminary Injunction and Memorandum in Support (Attachments: # 1 Exhibit 1: LinkedIn Advertisement Calling All Students, # 2 Exhibit 2: Advertisement Regarding How to Boost Campus Recruiting, # 3 Exhibit 3: Advertisement Regarding 2021 Hybrid University Recruiting Checklist) (Kapaloski, Tamara) (Entered: 12/07/2021) |
| 12/14/2021 | 71 | | Minute Entry for proceedings held before Judge Dale A. Kimball: Motion Hearing held on 12/14/2021 re Plaintiff's 13 MOTION for Preliminary Injunction, Defendant's 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, and Plaintiff's 48 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM re Defendant's Counterclaims. After hearing statements and arguments from counsel, the court takes the motions under advisement and will issue a ruling in due course. Attorneys for Plaintiff: Mark A. Miller, J. Michael Keyes, and Tamara L. Kapaloski. Attorneys for Defendant: Peter J. Willsey, Jason Sobel, Stephanie Calnan, Sterling Arthur Brennan, and Vincent Badolato. Court Reporter: Rebecca Janke. (eat) (Entered: 12/14/2021) |
| 12/22/2021 | 72 | | NOTICE of Filing of Slides Presented to the Court During Preliminary Injunction Hearing by Instructure re 71 Motion Hearing,, (Attachments: # 1 Exhibit 1: Plaintiff's Slides Presented During December 14 Hearing) (Kapaloski, Tamara) (Entered: 12/22/2021) |
| 12/23/2021 | 73 | | NOTICE of Filing Slides Prepared for Presentation at December 14, 2021 Hearing by Canvas Technologies (Attachments: # 1 Exhibit 1–Slides) (Brennan, Sterling) (Entered: 12/23/2021) |
| 01/05/2022 | 74 | | MEMORANDUM DECISION AND ORDER granting Plaintiff's 13 Motion for Preliminary Injunction; granting Plaintiff's Judicial Notice Requests (ECF Nos. 49 and 52 ); denying Defendant's 31 Motion to Dismiss; and denying Plaintiff's 48 Motion to Dismiss Counterclaims. Signed by Judge Dale A. Kimball on 1/5/2022. (eat) (Entered: 01/05/2022) |
| 01/06/2022 | 75 | | NOTICE OF APPEAL as to 74 Order on Motion to Dismiss for Failure to State a Claim,, Order on Motion for Miscellaneous Relief,,,, Order on Motion for Preliminary Injunction,,,, Memorandum Decision, filed by Canvas Technologies. Appeals to the USCA for the 10th Circuit. Filing fee $ 505, receipt number AUTDC–4211650. (Brennan, Sterling) (Entered: 01/06/2022) |

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **INSTRUCTURE, INC., a Delaware corporation,**<br><br>     **Plaintiff,**<br><br>**vs.**<br><br>**CANVAS TECHNOLOGIES, INC., a Delaware corporation,**<br><br>     **Defendant.** | **MEMORANDUM DECISION AND ORDER GRANTING PRELIMINARY INJUNCTION, GRANTING JUDICIAL NOTICE REQUESTS, DENYING DEFENDANT'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S MOTION TO DISMISS**<br><br>**Case No. 2:21-CV-00454-DAK-CMR**<br><br>**Judge Dale A. Kimball** |

This matter is before the court on five motions: (1) Plaintiff Instructure, Inc's ("Instructure") motion for preliminary injunction; (2) Defendant Canvas Technologies, Inc.'s ("Canvas Tech") motion to dismiss Instructure's Third Claim for Relief – the cybersquatting claim; (3) Instructure's request for judicial notice in connection with its opposition to Canvas Tech's motion to dismiss the cybersquatting claim; (4) Instructure's motion to dismiss Canvas Tech's counterclaims; and (5) Instructure's request for judicial notice in connection with its motion to dismiss counterclaims. The court held a hearing on these motions on December 14, 2021. At the hearing, Plaintiff was represented by Tamara L. Kapaloski, Michael J. Keyes, and Mark A. Miller, and Defendant was represented by Vincent Badolato, Sterling Arthur Brennan, Stephanie Calnan, Jason Sobel, and Peter J. Willsey. The court has carefully considered the parties' arguments and submissions, as well as the law and facts relevant to the motion. Now being fully advised, the court now renders the following Memorandum Decision and Order.

1

# I. FINDINGS OF FACT

*Instructure Canvas Marks*

      Instructure owns federal registrations for CANVAS. On April 1, 2010, Instructure filed

an intent-to-use trademark application with the United States Patent and Trademark Office

("USPTO") to register CANVAS as a mark. On January 3, 2012, the USPTO issued to

Instructure U.S. Registration No. 4,080,698 (the "'698 Registration") on the Principal Register

for the CANVAS mark based on this application. (ECF No. 14; Exh. 1). The description of

services in this CANVAS trademark registration is as follows:

> FOR: APPLICATION SERVICE PROVIDER (ASP) FEATURING SOFTWARE FOR
> USE IN EDUCATIONAL COURSE AND CURRICULUM MANAGEMENT, ONLINE
> COMMUNICATION BETWEEN TEACHERS, ACADEMIC RESEARCHERS, AND
> STUDENTS, TRACKING STUDENT PROGRESS, AND FOR FACILITATING AND
> CONDUCTING ONLINE CONNECTIONS, COLLABORATIONS, AND
> INTERACTIVE DISCUSSIONS BETWEEN CLASSROOM STUDENTS;
> TECHNICAL SUPPORT SERVICES, NAMELY, TROUBLESHOOTING OF
> COMPUTER SOFTWARE PROBLEMS, IN CLASS 42 (U.S. CLS. 100 AND 101).[1]

      On May 22, 2012, Instructure filed with the USPTO another application to register

CANVAS as a mark. On April 25, 2017, the USPTO issued to Instructure Reg. No. 5,191,435

(the "'435 Registration") on the Principal Register for the CANVAS mark based on this

trademark application. (ECF No. 14; Exh. 2 and ¶ 5). The description of services in this

CANVAS trademark registration is as follows:

> CLASS 42: Application service provider (ASP) featuring software to enable uploading,
> posting, showing, displaying, tagging, blogging, sharing or otherwise providing
> electronic media or information over the internet or other communications network, all
> excluding technical graphics or imaging, and technical graphic or imaging software and
> pertinent support services in the fields of science, engineering, aviation, petrochemical,
> and geographical information systems.

---

[1] Instructure asserts this mark has become incontestable, ECF No. 13 at 2, meaning that the mark was properly acquired, has been regularly used for 5 consecutive years, and a declaration of incontestability must have been filed between the 5th and 6th anniversary of registration. Where a registration is incontestable, it "shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b).

<u>ECF No. 14</u> Exh. 2

*Instructure Launches Canvas*

In June of 2010, Instructure publicly introduced Canvas, Instructure's online learning management system ("LMS"). Canvas differed from other LMS platforms on the market in 2010 because Canvas allowed for integration with other internet tools such as Google Docs or YouTube, and it allowed students to start discussion groups and to be more engaged with what was going on, including beyond the classroom, among other things.

*Instructure Canvas Growth, Investment, and Wide Recognition*

Shortly after launching, Instructure expanded the services it offers beyond a strict LMS platform. In 2010, Instructure began offering its users the ability to collect and showcase their educational projects, submissions, experiences, and other work product in Canvas ePortfolios that could be shared with future employers. Instructure also added Canvas Community – which allows its 1.35 million members, comprised of administrators, designers, instructors, parents, and students, to share, collaborate, and shape the Canvas product through community forums and content repositories. In 2019, Instructure began offering its Canvas Portfolium services, which allow users to showcase their education and work accomplishments and connect with other professionals. Through Canvas Portfolium, users can also follow companies they are interested in, upload resumes, references, and other skills and qualifications, and discover and apply for jobs.

Since its debut in June of 2010, Instructure has continuously and prominently used its canvas mark. Instructure invests substantial resources in promoting and advertising this mark, and has expended tens of millions of dollars in advertising expenditures related to the mark since 2010. Instructure heavily advertises its canvas mark – as is evidenced by its advertisements on

3

YouTube and in magazines, listing programs, television ads, trade shows, brochures, and
billboards. (ECF No. 14 at ¶ 33-40, 54). Most, if not all, of these ads prominently feature
Instructure's canvas mark and specifically tie Canvas to the services offered by Instructure. (ECF
No. 14 at ¶ 33, 37-41, 43, 54; Exhs. 10-11). Instructure's efforts and accomplishments have
made Instructure's canvas mark a well-known and recognized name across the globe.

Instructure's canvas mark is now widely known by millions of Canvas users. By
February of 2011, at least 26 educational institutions were operating on Instructure's Canvas
platform. By October of 2012, the number of educational institutions on Canvas had grown to
over 300, with more than 4.5 million users connecting to Canvas. In 2017, Canvas surpassed 15
million users globally. In 2018, Instructure's Canvas LMS became the top market share holder in
the U.S. LMS market. It has maintained this status as the paid market share leader in the U.S.
through today. In 2019, Instructure's Canvas platform surpassed 20 million users globally. In
2020, thirteen states across the U.S. adopted Instructure's Canvas platform across the states'
educational institutions, and schools in all 50 states currently use Instructure's Canvas in some
capacity. In recent months, Instructure's Canvas website has been among the top 20 most visited
websites in the U.S.

Instructure's Canvas platform has 30 million users globally, with millions of these users
in the Instructure Canvas Community that has 1,349,719 members, and nearly 400,000 published
posts. As of September 2021, Instructure's Canvas has 48,300 followers on Twitter, nearly
22,700 followers on Facebook, and nearly 4,000 Instagram followers. Instructure's Canvas has
its own app on the Apple store, which is rated #9 in education apps and has nearly 2 million user
ratings. Instructure has hosted a CanvasCon event for several years. In 2020, this event was held

4

virtually due to COVID-19 and it had nearly 20,000 attendees. Instructure's Canvas products have received numerous third-party awards over the past decade.

Today, Instructure's Canvas platform serves as a connection hub for students, educators, administrators, parents, content providers, businesses, employers, and recruiters. The Instructure Canvas platform currently has over 6,000 customers, representing higher education institutions, including all of the Ivy League universities in the U.S., and K-12 districts and schools in more than 90 countries. In July of 2021, Instructure announced its proposed $250 million IPO with giant billboards in New York City's Times Square that prominently displayed the canvas mark. (ECF No. 14 at ¶ 54).

*Instructure Canvas ePortfolios*

An ePortfolio, also known as an electronic portfolio, is essentially a way to upload, showcase, and share an individual's achievements and accomplishments in one place online. By 2008, ePortfolios had become associated with employment recruitment, and employers were beginning to consider ePortfolios to be an important tool in future recruitment efforts. Higher education systems also began to gain interest in students' possible use of ePortfolios in the hiring process.

In July of 2010, Instructure started offering its ePortfolio service through its Canvas platform. This service was a factor for several higher education institutions' decisions to switch to Instructure's Canvas. (ECF No. 14 at ¶ 12-15). Since the launch of its ePortfolio service, every Instructure Canvas user has had the ePortfolio tool in their Canvas account and the ability to create a Canvas ePortfolio. As a result, tens of millions of higher education students have been exposed to the Canvas ePortfolio feature over the past decade, and millions of higher education students have created a Canvas ePortfolio.

5

While the Canvas ePortfolio is integrated into the Instructure Canvas LMS, it is not an LMS itself. The main differences between an LMS and an ePortfolio is ownership and control. In an educational setting, the LMS is owned and controlled by the university or instructor. By contrast, the student owns and controls all aspects of their own ePortfolio, including content and who can view it, and the ePortfolio itself is not tied to any particular course. Typically, a student loses access to an LMS when courses end, whereas ePortfolios remain the property of the students after finishing their coursework, and students have the ability to download their ePortfolios and continue to use and share them after graduation. On Instructure's Canvas platform, the ePortfolio is an available feature on a user's Canvas account, but the ePortfolios are not tied to the LMS or to any specific course. Instead, they are associated with the user. The users own the ePortfolios, retain access to them after graduation, and can download and save them as zip files – which allows them to upload their ePortfolio content wherever they like, including on Facebook, LinkedIn, blogs, computers, or personal web pages. Users can also make their ePortfolios public and include within them hyperlinks to other websites.

While ePortfolios can be used for coursework, Instructure offers the ePortfolio feature as a tool to go beyond coursework as well. (ECF No. 41 at ¶ 26-27). Since at least May 2011, Instructure has expressly marketed and offered its Canvas ePortfolio as a tool to showcase higher education students' accomplishments to future employers. It has done so through YouTube and Vimeo videos, interactions with higher education institutions, and descriptions of ePortfolios directly on the Canvas platform – which explicitly tell users that they can display their ePortfolios for "more than just [their] instructor to see" and that they can "[s]hare [their] work with friends, future employers, etc.". (ECF No. 41 at ¶ 28-40). As a result of the Canvas

6

ePortfolio dashboard, tens of millions of Canvas users have seen this message over the past decade. (ECF No. 41 at ¶ 35).

During the past decade, higher education schools, in line with Instructure's marketing, have expressly instructed their students on using Canvas ePortfolios as a tool to help them connect with employers and job opportunities. At a minimum, this instruction has taken place at the following schools. In August of 2012, Mesa Community College started to train its nursing students to use Canvas ePortfolios as a tool to get hired. (ECF No. 41 at ¶ 42-48). In March of 2014, the University of North Texas Health Science Center began instructing its students to use Canvas ePortfolios to seek employment. (ECF No. 41 at ¶ 49). In March of 2016, North Central Texas College published a guide for its students wherein it instructed the students to use Canvas ePortfolio to connect with job opportunities in order to get hired. (ECF No. 41 at ¶ 50-51). In May of 2017, Mt. San Jacinto College also expressly instructed its students to create a Canvas ePorftolio to aid them in the employment context. (ECF No. 41 at ¶ 52). This instruction has occurred in, at least, one other school as well – as evidenced by a Canvas Community member post from April 2018, stating that their students share their Canvas ePortfolios "via private link with potential employers." (ECF No. 41 at ¶ 53).

*Instructure Canvas Portfolium*

In 2019, Instructure acquired Portfolium for $43 million and began offering its Canvas Portfolium services to users. This service offers online skills portfolio capabilities to higher education students by allowing them to showcase their education and work accomplishments and connect with other professionals. Millions of individuals from thousands of institutions already use Canvas Portfolium, and the service is fully integrated into the Instructure Canvas Platform. Instructure's 2019 press release regarding its Portfolium service says the following:

7

> [T]he student success network [is] built to showcase the achievements, projects, and competencies of dedicated students to potential employers . . . Portfolium was created to help every person realize their full potential by connecting their learning with opportunity. The company helps institutions inspire, assess, and showcase student achievements via its powerful ePortfolio network, student-centered assessment, job matching capabilities, and academic and co-curricular pathways.

ECF No. 14 at ¶ 20.

Through this service, Instructure Canvas users can also follow companies they are interested in, upload resumes, references, and other skills and qualifications, and discover and apply for jobs. In addition, users can download their Canvas ePortfolios and transfer the content into Portfolium.

*The canvas.com Domain*

Instructure does not own the www.canvas.com domain. Branded Holding Group, LLC ("BHG") has owned the canvas.com domain since June 6, 1997. Until recently, BHG had parked the canvas.com domain without any content. In 2012, BHG offered to sell the canvas.com domain to Instructure. Instructure turned down the offer because it did not like the terms and felt that the price was unreasonably high. BHG approached Instructure about the domain again in 2013 and 2016. Each time, Instructure declined to purchase the domain. During September and October of 2020, BHG and Instructure engaged in further negotiations regarding the canvas.com domain. Instructure again declined to pay the price BHG demanded, but then cautioned BHG that it should not sell the domain to anyone operating in similar channels with similar services to Instructure's Canvas-branded platforms.

A domain history report recently obtained by Instructure shows that on March 15, 2021, the registrar was CSC Corporate Domains, Inc. and the registrant was BHG, but that on April 1, 2021 the listed registrar was GoDaddy.com and the listed registrant was Domains By Proxy, LLC. This domain history report is subject to a judicial notice dispute in the present case.

8

In May 2021, it was announced that Jumpstart (now Canvas Tech) had entered into an agreement with BHG to lease the domain name www.canvas.com in a "lease to own" deal. Canvas Tech operates this domain today.

*Jumpstart Launch*

Canvas Tech was founded in 2017 under the name Jumpstart Ventures, Inc. ("Jumpstart") as a diversity recruiting platform created to help companies hire diverse teams and to connect people, especially students, with potential employers. (*See* ECF No. 13 at 6). Jumpstart's online cloud-based platform permits companies to hire diverse teams with insight and transparency into the diversity of applicants and also allows prospective employees to search for employment opportunities. Companies use this platform to understand the diversity of their recruiting pipeline, hire underrepresented talent, conduct virtual events, and measure the efficacy of their diversity recruiting initiatives.

*Jumpstart Rebrand to Canvas*

On May 24, 2021, after acquiring the canvas.com domain, Jumpstart announced $20 million in new funding and that it was changing its name to "Canvas". From then on, Canvas Tech's old website jumpstart.me redirects to www.canvas.com. Of this brand change, Canvas Tech CEO Ben Herman ("Herman") said, "we don't believe that our name [Jumpstart] and domain [jumpstart.me] reflected our vision and our brand awareness and trust that we have built." (ECF No. 13 at 6-7). Herman wanted "a name and a brand that enables us to build something as big as our vision." *Id*. As a result, Jumpstart began "working on a big rebrand" that resulted in Canvas Tech. *Id*. During a June 23, 2021 interview, Herman explained these big changes further as follows:

> Jumpstart . . . never really had the level of trust, authenticity and magnitude of the vision that we had for the company. And we realized it didn't kind of allow us to expand our

horizons and we felt pretty restrained by the [jumpstart.me] domain. So we wanted a big, more relatable brand . . . And, I had great access to the [canvas.com] domain through a mutual friend . . . Canvas.com's never been used, it's always been parked. My, you know, friend introduced me to someone who, you know, is really well-respected when it comes to domains . . . And so [I] connected with this guy and we hit it off and spent the last year talking about how we could make something work and already great dough that made it worthwhile.

ECF No. 13 at 8.

After the rebranding, several commentators noted the significance of the change. One said that "a domain like that just brings instant credibility to any business." (ECF No. 13 at 7). Another said:

Jumpstart's rebrand to Canvas also sees the company move to the incredible Canvas.com domain name. In terms of digital branding, that is an enormous step up from jumpstart.me, and cements an instant sense of trust, legitimacy, and legacy.

ECF No. 13 at 7.

Consumers also provided immediate reactions to the Canvas Tech rebrand. Among the positive responses, there were also inquisitive responses wondering how Canvas Tech was "gonna steal another company's product name" since Instructure's Canvas already existed. (ECF No. 13 at 9). Tweets from October 12, 2021 indicate that consumer confusion regarding the brands Instructure Canvas and Canvas Tech presently exists as well. (ECF No. 66; Exh. 1).

*Acquisition of Canvas Marks*

On July 13, 2021, a few months after Canvas Tech's announcement of its rebrand, the company entered into a trademark assignment agreement with Colby Smith ("Ms. Smith"). In the agreement, Ms. Smith assigned her rights in her CANVAS trademarks to Canvas Tech. One of the CANVAS marks owned by Ms. Smith was a federal trademark registration, No. 4,737,811 (the "'811 Registration"), issued by the USPTO (registration application filed on April 25, 2014). This mark is stylized as follows:



Ms. Smith claimed "the color(s) coral, lime, blue, and black" as a feature of the mark, and the words "concierge alliance napa valley & Sonoma" as expressly part of the mark, which is an acronym for Concierge Alliance Napa Valley And Sonoma. (ECF No. 49). This acronym is registered in connection with the following services:

> FOR: CONDUCTING TRADE SHOWS IN THE FIELD OF HOTEL, FOOD SERVICE, HOSPITALITY, AND CONCIERGE SERVICES; CONDUCTING, ARRANGING AND ORGANIZING TRADE SHOWS AND TRADE FAIRS FOR COMMERCIAL AND ADVERTISING PURPOSES; MEMBERSHIP CLUB SERVICE, NAMELY, PROVIDING ON-LINE INFORMATION TO MEMBERS IN THE FIELDS OF BRANDING, BUSINESS DEVELOPMENT, BUSINESS MARKETING, AND MARKETING; ORGANIZING, PROMOTING AND CONDUCTING EXHIBITIONS, TRADESHOWS AND EVENTS FOR BUSINESS PURPOSES, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

ECF No. 49.

On July 2, 2021, Ms. Smith filed U.S. Application Serial No. 90/808,387 to register her other CANVAS mark in connection with the following services:

> Providing a website featuring technology that enables job applicants to submit applications for employment to companies, and for employers to solicit and accept applications for employment; Providing an interactive website for online recruiting of human resources and for communication among employers and candidates for employment; Providing a website featuring educational information in field of hotel, food and beverage, hospitality, wineries and concierge services.

ECF No. 29; Exh. 3. Claimed first use date is July 18, 2013.

The USPTO has not yet issued a registration for this mark. As such, Canvas Tech has acquired only the USPTO application and the common law rights of this mark.

*Dispute over similar services*

Instructure asserts that there are several points of overlap and similarity between Instructure's Canvas products and Canvas Tech's Canvas products. These include the target

audience, the similarity between Instructure's ePortfolio and Portfolium services with Canvas' Tech's service, and the similar organization and imaging of the companies' respective websites.

Instructure's Canvas services have always been marketed for student use, and that remained a key element of Instructure's Portfolium advertising. In February of 2019, Instructure advertised its Canvas Portfolium as a "student success network built to showcase the achievements, projects, and competencies of dedicated students to potential employers." (ECF No. 14 at ¶ 78). This has translated into actual use of Canvas ePortfolios and Portfolium by higher education institutions to help students showcase their work to potential employers. Instructure has provided evidence that, at a minimum, the University of North Texas, the University of Washington, North Central Texas College, and Lake Land College help and advise students to use Instructure's ePortfolio or Portfolium services. (ECF No. 14 at ¶ 79). Higher education students are also a target audience for Canvas Tech, as evidenced by a statement of purpose from the Jumpstart website before rebranding (ECF No. 14 at 28), statements by Canvas Tech officers Adam Gefkovicz and Maya Grossman explaining that Jumpstart started as a tool for university recruiting (ECF No. 72; Exh. 1 at 19-20), the "University Solutions" section of its current website's drop-down menu (ECF No. 14 at ¶ 66), and by three recent Canvas Tech advertisements targeting students/university recruiting that can be found on its blog, LinkedIn, and a hubspot online. (ECF No. 70; Exhs. 1-3).

The parties agree that Instructure's Portfolium services and Canvas Tech's services are similar. They both offer services in the field of recruiting of human resources where employers and candidates can communicate, and where job seekers can showcase their achievements and apply to jobs. (ECF Nos. 13 at 10, and 61 at 4). The parties disagree whether Instructure's Canvas ePortfolios provided similar services as well.

12

There are also a few similarities in the companies' respective websites. The websites use some similar language, for example Instructure's seeking to "align[] student and institutional success" and Canvas Tech's inviting users to "discover mission aligned companies". (ECF No. 14 at ¶ 80-81). Both websites have community pages for users to network and otherwise interact. (ECF No. 14 at ¶ 82-83). In addition, the icons and login screens on the websites share similar visual elements. (ECF No. 14 at ¶ 84-87).

After learning about Canvas Tech's rebranding and the similarities between the companies' services, Instructure sent a cease-and-desist letter to Canvas Tech alleging trademark infringement on June 2, 2021. (ECF No. 14; Exh. 29). Thereafter, Canvas Tech and Instructure engaged in discussions about a resolution of the matter that would avoid litigation. These discussions ceased after Canvas Tech notified Instructure on July 15, 2021 that Canvas Tech has acquired rights to Ms. Smith's canvas trademarks.

*Jobvite Canvas and Ms. Smith's Canvas*

Canvas Tech asserts that Instructure should have taken, but never took trademark enforcement action against Canvas Tech's predecessor in interest, Ms. Smith, or Jobvite – both of which Canvas Tech believes offer similar recruiting services.

Canvas, by Jobvite, is a text-based interviewing platform that is designed to be an end-to-end recruiting platform that takes the stress out of hiring. (ECF No. 53 at 10). Jobvite uses the USPTO registered CANVAS mark (serial number 87078368) on its website in connection with its recruiting services. On Jobsite's website, the mark looks like this:



ECF No. 27 at 11.

13

The goods and services listed on this trademark's registration are as follows:

> IC 009. US 021 023 026 036 038. G & S: Downloadable software in the nature of a mobile application for recruiting of human resources; downloadable software in the nature of a mobile application for analysis and reporting of data, business analytics, and business intelligence in the filed of human resources; downloadable software in the nature of a mobile application for communicating among professionals in the field of human resources; downloadable software in the nature of mobile application for communicating among employers and employees; and downloadable software in the nature of a mobile application for communicating among employers and candidates for employment. FIRST USE: 20170613. FIRST USE IN COMMERCE: 20170613

> IC 042. US 100 101. G & S: Software as a service (SaaS) services providing on-line non-downloadable software and applications for recruiting of human resources; software as a service (SaaS) services providing on-line non-downloadable software and applications for analysis and reporting data, business analytics, and business intelligence in the field of human resources; software as a service (SaaS) services providing on-line non-downloadable software and applications for communicating among professionals in the field of human resources; software as a service (SaaS) services providing on-line non-downloadable software and applications for communicating among employers and employees; and software as a service (SaaS) services providing on-line non-downloadable software and applications for communicating among employers and candidates for employment. FIRST USE: 20170310. FIRST USE IN COMMERCE: 20170310

ECF No. 30; Exh. 7.

It has since come to light, through Canvas Tech's discovery requests in the present case, that Instructure sent Jobvite a letter on June 17, 2019, and that Jobvite responded on July 1, 2019. Instructure's letter advised Jobvite of its trademark rights and that it was concerned about Jobvite's use of a canvas mark in marketing to educational institutions because it would inevitably mislead consumers, and it had already caused some confusion at that point. Instructure requested that Jobvite remove all references to education offerings, make it clear that its mark is not used in connection with the education community, and put a disclaimer on its website clearly stating there is no affiliation with Instructure's Canvas. The response letter did not agree to those requests, but Jobvite's counsel did state that the company had "no plans to adapt its [] recruiting platform for use by colleges and universities to recruit students, although [it did] not concede that

14

to do so would be an infringement of Instructure's rights." (ECF No. 69; Exh. 2). As far as both parties in the present case are aware, these letters constitute the only enforcement action Instructure has ever attempted to take against Jobvite.

On the other hand, Instructure admits to never having taken enforcement action against Ms. Smith's use of canvas marks because Instructure believes the services do not overlap – Instructure characterizes Ms. Smith's most similar service as a job board for the California-based wine and hospitality industry. However, Canvas Tech asserts that Ms. Smith's use of canvas marks does overlap with Instructure's services because her use is for job recruiting services throughout the U.S. and internationally.

In September 2010, Ms. Smith began using her canvas trademarks individually and through her company, Concierge Alliance, LLC, in connection with the provision of networking services, training and educational programs, educational information, newsletters, and trade shows – all focused on the wine and hospitality industry, with a specific focus on the Napa and Sonoma, California region. (ECF Nos. 27 at 5 and 41 at ¶ 86). Ms. Smith began operating a website, which includes a job board, for her business at jobs.conciergealliance.com in July 2013, and she has continued to operate it ever since – although there is no information provided regarding the website's traffic.

Ms. Smith describes her online job board as an "interactive job board for the recruiting of human resources, and for facilitating communication between employers and job applicants throughout the United States and internationally." (ECF No. 54 at ¶ 1). The actual description of the job board online states that it is "for Job Providers and Job Seekers in Napa and Sonoma". (ECF No. 27 at 5). All of the examples Ms. Smith gives of national and international jobs (jobs

outside of California) that have been posted on her job board are for positions with external divisions of California-based vineyards. (ECF Nos. 27 at 5 and 54 at ¶ 2-6).

Ms. Smith's job board operates in such a way that employers can communicate with candidates, candidates can apply for jobs, and employers can recruit available candidates. Although the technology involved has changed over time, there has been an "Apply Now" functionality as early as January 15, 2014. Since the Web Scribble update to the job board done around February/March of 2018, the job board has also provided career resources to candidates for finding, obtaining, and succeeding in a job.

*Present Action*

On July 27, 2021, Instructure filed the present case against Canvas Tech. On August 17, 2021, Instructure filed a motion for preliminary injunction against Canvas Tech in this case, in order to prevent "ongoing infringement of Instructure's trademark." Canvas Tech then filed a motion to dismiss for failure to state a claim, regarding Instructure's cybersquatting claim, on September 1, 2021. This was followed by Instructure filing its own motion to dismiss all of Canvas Tech's counterclaims for failure to state a claim due to Instructure's allegedly superior trademark rights, as well as a supporting motion re: request for judicial notice, on September 24, 2021. Instructure filed a separate motion re: request for judicial notice regarding a canvas.com domain report on October 1, 2021. The court now addresses all five of these motions.

## II.    CONCLUSIONS OF LAW – PRELIMINARY INJUNCTION

Preliminary injunctive relief[2] is appropriate if the moving party establishes "(1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm

---

[2] The court notes that Canvas Tech filed evidentiary objections as part of its preliminary injunction briefing. However, since the Federal Rules of Evidence do not apply at the preliminary injunction stage, the court will not address these objections in this order.

in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Roda Drilling Co. v. Siegal*, <u>552 F.3d 1203, 1208</u> (10th Cir. 2009). The court believes that this is a prohibitory injunction. However, even if it were a mandatory injunction – which would require the movant to make a "heightened showing" of the four factors – the court concludes, for the reasons set forth below, that Instructure has met this burden and established grounds for issuance of preliminary injunctive relief.

### A. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits of its claim for trademark infringement under the Lanham Act, Instructure must show: (1) its ownership of a valid trademark, and (2) that the alleged infringer is using a confusingly similar mark. *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*, <u>527 F.3d 1045, 1049</u> (10th Cir. 2008).

*Ownership of a Valid Trademark*

It is clear that Instructure and Canvas Tech own valid trademarks in all of their respective registered canvas marks. Instructure argues that its validly owned '435 registration is what Canvas Tech infringed when it rebranded its platform. However, registered trademarks do not supersede common law trademark rights. *Cornaby's v. Carnet, LLC*, <u>2017 WL 3503669</u>, at *8 (D. Utah Aug. 15, 2017) (citing 15 U.S.C. 1057(c)). "[N]onregistered rights of a senior user continue and are not erased by the later federal registration of a junior user. This is true even if the registration has achieved 'incontestable' status." J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition (5th ed.), § 16.18.50. Thus, since the parties dispute who has ownership of the applicable common law trademarks here, what matters in the present case is the priority of common law trademark ownership – which party used the canvas mark first for the

relevant service. Based on the following analysis, the court thinks it highly likely that it will be found that Instructure has priority, and therefore owns the applicable valid trademark.

Instructure's Portfolium and Canvas Tech's platform both provide services that fall within the relevant field of services. This is something that both parties claim, and the court takes it as true. In Instructure's cease-and-desist letter addressed to Canvas Tech, it likens these two services, claims that Canvas Tech's platform is conflicting "with Instructure's market, including its core higher education market," and describes Portfolium as an "online skills portfolio and recruiting system" that helps "students in showcasing their online portfolios to employers." (ECF No. 14; Exh. 29 at 2-3). Instructure and Canvas Tech portray the description of the relevant field slightly differently in their arguments. Canvas Tech describes it broadly as employment recruiting and job placement, while Instructure focuses in on the online portfolios for employment recruiting of students looking to start their careers aspect. It is highly likely that a version of Instructure's description is what the relevant field of services will be found to be, because it is in that field that Instructure repeatedly argues Canvas Tech infringed its canvas trademark rights. Therefore, it is also highly likely that Instructure's ePortfolios will fall into the relevant field of services.

Instructure says that it provided its ePortfolio service (which has always been associated with Instructure's canvas brand), at least partially, so that students could put together a digital portfolio to present to potential employers. The language on Instructure's Canvas platform supports this intention, as do the many examples of advertisements, presentations, and uses of the service by various higher education institutions. Instructure also made the ePortfolio tool function in a way that users (initially student users of Instructure Canvas) can download their ePortfolios and upload them wherever they wish, including on employment-oriented websites

18

like LinkedIn, and users can publish their ePortfolios and make them public so that others can access them, including employers. Additionally, users retain access to their ePortfolios after they graduate and no longer use the rest of the Instructure Canvas LMS.

Instructure's Portfolium is a natural progression of this ePortfolio service because it provides a consolidated platform where users can upload their ePortfolios (instead of leaving it up to the users to upload their ePortfolios to various locations or make them public for easier potential-employer access) and then employers can search for good candidates there – in one, easy-to-access location. While Portfolium is open to any user wishing to create an online portfolio and connect with employers, a major purpose of Instructure acquiring this platform was to provide a better service (that builds on the ePortfolio tool) for students looking to start their careers.[3] Canvas Tech also targets students in this way. In the beginning, Jumpstart also focused on higher education students starting their careers, and the Jumpstart platform provided the tools for these students to create online profiles and connect with potential employers. Although the focus on higher education students as the platform users has since greatly broadened, Canvas Tech still does target higher education students, and it is in this respect that Instructure focuses its claims of trademark infringement. Since Instructure's ePortfolios and Canvas Tech's platform were always, at least partially, intended for students to use in recruitment efforts, the court thinks it highly likely that Instructure's Canvas ePortfolios will be found to be in the same relevant field of services as Portfolium and Canvas Tech.

On the other hand, the court does not think it likely that Ms. Smith's use of canvas marks in connection with her job board is in the same relevant field of services as Portfolium and Canvas Tech. First of all, Canvas Tech has provided no indication that the job board targets

---

[3] The press release of Instructure acquiring Portfolium, which is included in the facts, demonstrates that Instructure saw Portfolium as a developed ePortfolio network, and that Instructure meant to target students with this service.

students seeking to start their careers. In addition, that job board expressly states that it is for the wine and hospitality industry centered in California. While Ms. Smith claims and then provides some evidence that there have been job postings for locations outside of California, every single one of those job postings she provided is for an external office of one California-based vineyard. There is not yet any proof to support Ms. Smith's claim that the job board has ever posted jobs for non-hospitality, or non-vineyard related, jobs that are not connected to California's wine industry. Therefore, it is likely that the scope of Ms. Smith's common law trademark rights in canvas is limited to California's hospitality and wine industry.

Even if it were not that limited, an online job board is likely not similar enough to Instructure Portfolium's and Canvas Tech's services to qualify as being in the same field. Again, the court notes that the job board does not target students in any way, but beyond this, both Instructure Portfolium and Canvas Tech provide much more dynamic platforms where job-seekers create profiles and present portfolios, and then employers can search for the type of applicants they want. This appears to be a more sophisticated tool than a job board, and even Canvas Tech's CEO has said that its platform is not a job board. (ECF No. 72; Exh. 1 at 48). Thus, the court thinks it very unlikely that Ms. Smith's use of canvas marks will be found to be in the same relevant field of services as Canvas Tech and Instructure's Portfolium for the common law trademark rights in canvas that Instructure claims Canvas Tech infringed.

If by some small chance Ms. Smith's use of canvas marks connected to her job board is found to be part of the relevant field of services, then the court thinks it likely that Instructure's ePortfolios would also be found to be in the same relevant field, since Instructure always intended its ePortfolios to be used online as a recruiting tool. If this were found that would mean that Instructure has priority rights in its common law trademark because Instructure started its

20

Canvas ePortfolio service first in July of 2010, and Ms. Smith started operating her job board in July of 2013. If Ms. Smith's use of canvas marks is not found to be in the relevant field, but Instructure's ePortfolios are – the same result occurs. If both of those are not found to be in the relevant field, then only Portfolium and Canvas Tech's platform are in the relevant field, which would mean that Instructure has priority common law trademark rights in its use of its canvas marks with its Portfolium service because Instructure began operating its Canvas Portfolium in 2019 and Canvas Tech rebranded in 2021. Thus, the court thinks it highly likely that Instructure has priority common law trademark rights in canvas here, and therefore owns the applicable valid trademark.

*Likelihood of Confusion*

The Tenth Circuit utilizes the following six-factor test for determining whether a likelihood of confusion exists: "(1) the degree of similarity between the marks; (2) the intent of the alleged infringer in adopting its mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks." *Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002).

*(1) Degree of Similarity*

The similarity of the marks is the "first and most important factor." *Hornady Mfg. Co. v. Doubletap, Inc.*, 746 F.3d 1001 (10th Cir. 2014). The degree of similarity is tested on three levels as encountered in the marketplace: sight, sound, and meaning. *Id.*

Visually, the similarities between Instructure's and Canvas Tech's marks are striking. Both are of the word canvas, and are sometimes accompanied by circular logos to the left of the mark:



Next, sound refers to pronunciation. Since, both marks are pronounced the same way, the marks are perfectly similar in that respect. Finally, the meanings are similar because both marks employ the same word – canvas. Thus, this factor strongly contributes to a likelihood of confusion.

*(2) Intent of Defendant in Adopting Mark*

"The proper focus when determining intent is whether the defendant had the intent to derive benefit from the reputation or goodwill of the plaintiff." *Icon Health & Fitness, Inc. v. Nautilus Group, Inc.*, 2004 U.S. Dist. LEXIS 31511, at *13 (D. Utah Dec. 21, 2004) (citation omitted). "Defendant's intent to bask in the reflected popularity of plaintiff's name is significant in a trademark infringement action in that it creates a presumption that the name chosen will in fact infringe upon plaintiff's mark." *Marker Int'l v. DeBruler*, 635 F. Supp. 986, 999 (D. Utah 1986), *aff'd* 844 F.2d 763 (10th Cir. 1988) (cleaned up). "When a defendant intentionally uses the trademark of another it is presumed he did so in order to cause confusion between his products and those of the one holding the trademark." *Id.*

Instructure and Jumpstart were both negotiating with BHG for the canvas.com domain at the same time. This is a strong indication that Jumpstart was aware of Instructure's canvas mark before Jumpstart rebranded to Canvas Tech. Instructure's extensive advertising, and also the existence of Instructure's Canvas Portfolium in the same relevant field of services as Jumpstart's platform, are other indications that Canvas Tech likely knew of Instructure's canvas mark before rebranding. In addition, after receiving Instructure's cease-and-desist letter, Canvas Tech continued to use the canvas mark and then went through the process to acquire Ms. Smith's canvas marks so that Canvas Tech could continue to use the canvas mark. These elements

suggest that Canvas Tech likely did have the intent to derive benefit from the reputation and goodwill of Instructure's canvas mark.

### (3) Evidence of Actual Confusion

"Although a party need not set forth evidence of actual confusion in order to prevail in a trademark-infringement action, actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Icon Health*, 2004 U.S. Dist. LEXIS 31511, at *14. But, because evidence of actual confusion can be difficult to obtain, its absence is generally unnoteworthy and is given little probative weight." *Id.* (cleaned up).

Immediately upon announcing its rebrand, several Jumpstart users questioned the decision to rebrand to canvas. One user thought Jumpstart was stealing another company's name. Another mentioned that canvas is the name of an online learning platform. Another person directly informed Instructure that another company was now using the name canvas for their website. Tweets from October 12, 2021, including one that says "I keep getting confused" between Instructure's canvas and Canvas Tech, indicate that consumer confusion regarding the brands Instructure Canvas and Canvas Tech presently exists as well. (ECF No. 66; Exh. 1). Thus, there is some evidence of actual confusion, which contributes to a finding of a likelihood of confusion.

### (4) Similarity of Products and Manner of Marketing

"The greater the similarity between the [parties'] products, the greater the likelihood of confusion." *Sally Beauty Co.*, 304 F.3d at 974. This factor is analyzed by considering (1) the similarity of products, and (2) the similarity in how the products are marketed. *Id.* "The issue is not whether the goods and services can be distinguished from each other in some aspect, but

instead it is whether consumers would believe that one entity produced both." *Playnation Play Sys. V. Velex Corp.*, 924 F.3d 1159, 1168 (11th Cir. 2019).

There is overlap in the parties' services in at least three areas: Canvas ePortfolio, Canvas Portfolium, and Canvas Community. First, Canvas ePortfolio. As discussed earlier, Instructure's ePortfolios are tied to users' profiles rather than to a course, can be made public, and permit users to collect information and showcase accomplishments to share with future employers. Users access these ePortfolios from within their Instructure Canvas accounts, and this service is promoted under Instructure's canvas mark. Instructure has asserted that consumers recognize Instructure's ePortfolio services as canvas products and use the canvas mark when describing the ePortfolios.

Next, Canvas Portfolium. In 2019, Instructure added this to its services. Instructure's Canvas Portfolium allows users to showcase work experience to colleagues and potential employers, to connect with other professionals to follow companies they are interested in, to upload ePortfolios, resumes, references, and other skills and qualifications, and to discover and apply for jobs. Employers can search these Portfoliums. Currently, over 40,000 recruiters use this platform. Instructure has promoted Portfolium using its canvas mark, and Instructure has asserted that consumers recognize Portfolium to be an Instructure Canvas product. As previously discussed, and as admitted by Canvas Tech, there is significant overlap between the services offered by Instructure Canvas Portfolium and Canvas Tech. There is likely overlap of platform users as well.

Finally, Canvas Community. Instructure and Canvas Tech platforms both provide a community where users interact with and learn from each other, post questions and comments, and gather information. Instructure's Canvas Community, which has over 1,349,000 members, is

for "Canvas users sharing, collaborating, and shaping Canvas together." Similarly, Canvas Tech's "Canvas talent community" allows its members to ask questions, learn from seasoned members, and network.

The marketing of Instructure's and Canvas Tech's products are similar as well. Visually, both use similar icon graphics for their users, which contain the users' pictures, names, and title. Both use language regarding "aligning" their users with job opportunities and promoting themselves to future employers. Both use similar-looking login screens, clickable resource icons, and circular designs next to the canvas mark. Both also invite users to join by asking if users need a canvas account. The parties also target the same group – higher education students about to enter the job market. In addition, much of the marketing is done online which makes it highly likely that users would come across both parties' services while online. This is likely to cause a presumption that Canvas Tech's platform is affiliated with Instructure's long-established Canvas platform. Thus, because there is substantial overlap in both the parties' services and their manner of marketing, this factor also weighs strongly in favor of finding a likelihood of confusion.

*(5) Degree of Care*

Consumers are less likely to exercise care and more likely to be confused with inexpensive products. *See, e.g., Beer Nuts, Inc. v. Clover Club Goods Co*., 711 F.2d 934, 941 (10th Cir. 1983). Here, the users of the parties' respective platforms do not pay for them – they are purchased and implemented by universities and companies, such that users are simply provided the service by these institutions. Therefore, because users do not spend time researching the services, they are less likely to exercise much care in distinguishing between the parties' platforms such that the use of the exact same name – Canvas – is likely to lead to confusion. Thus, this factor favors finding a likelihood of confusion as well.

25

*(6) Strength of the Marks*

"The stronger the mark, the greater the likelihood that encroachment on the mark will produce confusion." *Sally Beauty*, 304 F.3d at 976. In determining strength, courts must assess both conceptual and commercial strength. *See King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1093 (10th Cir. 1999).

As to conceptual strength, marks are placed in one of five categories, ranging from weakest to strongest: generic, descriptive, suggestive, arbitrary, and fanciful. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004). Marks are suggestive if they "merely suggest[] the features of the product or service, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of the goods or services." *Id*. Marks are arbitrary if they apply "a common word in an unfamiliar way." *Id*. Here, Instructure's canvas mark is likely an arbitrary mark because, while the mark is a common word, it bears no relationship to the actual products. Rather, the canvas mark evokes a strong cloth, which would normally be used for such things as painting, sailing, or constructing tents etc. However, whether the mark is determined to be arbitrary or suggestive, the canvas is still inherently distinctive and entitled to strong protection.

To evaluate commercial strength, courts consider "(1) the length and manner of the mark's use, (2) the nature and extent of advertising and promotion of the mark, and (3) the efforts made to promote a conscious connection, in the public's mind, between the mark and a particular product." *Hornady Mfg.*, 746 F.3d at 1007.

First, Instructure's canvas mark has been on the market for 11 years – since June 2010 – and Instructure has continuously used and advertised this mark. Second, Instructure has spent millions of dollars advertising its canvas products online, in magazines, on tv, at trade shows,

and on billboards. In addition, nearly every brochure, guide, and manual issued over the past 10 years by Instructure has prominently displayed its canvas mark. Third, there is evidence that Instructure has successfully created an association in the public's mind between its canvas mark and its products. This includes Instructure's website being one of the top 20 most visited websites in the U.S., its 30 million global platform users, its 1,349,719 member strong Canvas Community, its 48,300 Twitter followers, its nearly 15,000 Facebook followers, its nearly 4,000 Instagram followers, its #9 app rating made from 2 million user ratings, its nearly 20,000 consumers who attended Instructure's virtual 2020 CanvasCon, its third party awards it has received over the past decade, and consumer comments regarding Canvas Tech's rebrand that reveal that when (at least some) consumers hear "Canvas", they think of Instructure's Canvas.

Thus, the canvas mark is conceptually and commercially strong, which favors a finding of a likelihood of confusion. Since all the other factors also favor finding a likelihood of confusion, the court finds it highly likely that Instructure will succeed on the merits of its trademark infringement claim.

**B. Irreparable Harm**

The Trademark Modernization Act states that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for preliminary injunction or temporary restraining order." 15 U.S.C. § 1116(a). As specified by the statute, this rebuttable presumption is triggered when a party demonstrates a likelihood of success on the merits.

The court has found it highly likely that Instructure will succeed on the merits of its trademark infringement claim, therefore Instructure is entitled to a presumption of irreparable

harm. Canvas Tech tries to rebut this presumption by (1) arguing that Instructure has not acted urgently in seeking this preliminary injunction, and (2) claiming that it is nonsensical for Instructure to argue that it will be irreparably harmed by Canvas Tech's use of the canvas mark, when Ms. Smith and Jobvite have both been using the canvas mark in connection with employment recruiting and job placement services for years before Instructure started using it in conjunction with Portfolium in 2019. As to the first point, Instructure sent Canvas Tech a cease-and-desist letter as soon as it was aware of the infringement, and when negotiations broke down between the parties Instructure quickly brought this lawsuit and subsequent preliminary injunction. Secondly, as discussed previously, Canvas Tech's characterization of the relevant field of services is likely much too broad – the relevant field will likely include a targeting of higher education students. It is unlikely then that Ms. Smith's and Jobvite's uses of the canvas mark are in the relevant field of services, therefore Instructure's lack of action against these entities does not rebut the presumption of irreparable harm in this case.[4]

## C. Balance of Hardships

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because, "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992). "[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement." *GMC v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007). Thus, "courts afford little weight to self-inflicted harms when conducting

---

[4] The court notes that Instructure did send a letter to Jobvite in which Instructure warned Jobvite to stay away from the field of higher education.

the balancing inquiry." *Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1255 (D. Utah 2020).

In this case, Instructure has marketed and sold its services under the canvas mark for over a decade – investing tens of millions of dollars in promoting its products under its mark during this time. To allow Canvas Tech to trade off of the goodwill and reputation that Instructure built would be a significant harm to Instructure. Further, Instructure is not requesting that Canvas Tech no longer promote and sell its services. Instructure is only requesting that Canvas Tech stop using the canvas mark – a mark by which Canvas Tech has been branded for just a few months. While it is true that granting a preliminary injunction against Canvas Tech would force Canvas Tech to rebrand, at least temporarily, the court finds that this harm is minimal in comparison to Instructure's. Thus, the balance of hardships here favors Instructure.

### D. Public Interest

"Infringement and dilution of trademarks are inherently contrary to the public interest." *Harris Research, Inc. v. Lydon*, 505 F. Supp. 2d 1161, 1169 (D. Utah 2007) (granting preliminary injunction). "Public interest in fair competition dictates that Defendant should not be allowed to profit off the efforts of Plaintiff in achieving its commercial success." *Kodiak Cakes LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1237 (D. Utah 2019) (granting preliminary injunction). "The public interest also disfavors allowing competition at the expense of consumer confusion." *Id.* "[P]rotecting the rights of the owner of a registered trademark is consistent with the public interest because trademarks foster competition and promote the maintenance of quality in business." *Delta Western Group, L.L.C. v. Ruth U. Fertel, Inc.*, 2000 WL 33710852, at *8 (D. Utah Sept. 28, 2000) (granting preliminary injunction). "This factor normally weights in favor of

29

the issuance of an injunction because the public interest is the interest in upholding trademark protections." *Id*.

Here, an injunction will eliminate any confusion between Instructure's and Canvas Tech's services and will uphold trademark protections. The proposed injunction will, therefore, serve the public interest.

For the foregoing reasons, the court enters the preliminary injunction requested by Instructure. As for the bond, in consideration of the stakes of a rebranding and the very slight possibility of Canvas Tech having priority, the court directs Instructure to post a bond in the amount of One Hundred Thousand Dollars.

## III.    CONCLUSIONS OF LAW – DEFENDANT'S MOTION TO DISMISS

Following Instructure's preliminary injunction motion, Canvas Tech filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss Instructure's cybersquatting claim. Canvas Tech argues that the claim should be dismissed because Instructure failed to allege an essential element of a cybersquatting claim – that Instructure's alleged canvas mark was distinctive or famous *at the time of the registration* of the canvas.com domain name, as the law requires.

As a preliminary issue, the court grants Canvas Tech's request to take judicial notice that the domain name canvas.com was registered on June 6, 1997, pursuant to Fed. R. Evid. 201(b)(2). The registration is available through ICANN, and Canvas Tech provided accurate screenshots of the website displaying the canvas.com domain registration date. Since Canvas Tech is correct that a court taking judicial notice of such factual information found on the internet is proper, *see Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017); *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004*); MacArthur v. San Juan Cty.*, 309 F.3d 1216, 1221 (10th Cir. 2002), and since Instructure

later asks for judicial notice of a Domain Report that includes that same date information, the court takes this judicial notice.

*Standard of Review*

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in a complaint and views them in the light most favorable to the non-moving party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "need not take as true the complaint's legal conclusions." *Dronsejko v. Thornton*, 632 F.3d 658, 666 (10th Cir. 2011). Thus, to withstand a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to rise above the speculative level and state a plausible claim for relief. *Iqbal*, 556 U.S. at 666.

*Cybersquatting Claim*

"Congress enacted the Anti-Cybersquatting Protection Act (ACPA), 15 U.S.C. § 1125(d), to address a new form of piracy on the Internet caused by acts of cybersquatting, which refers to the deliberate, bad-faith, and abusive registration of Internet domain names in violation of the rights of trademark owners." *Utah Lighthouse Ministry*, 527 F.3d at 1057 (citations and quotations omitted). The statute provides a civil remedy for an owner of a mark where a person:

(i)     Has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii)    Registers, traffics in, or uses a domain name that –

(I)     In the case of a mark that is distinctive *at the time of registration of the domain name*, is identical or confusingly similar to that mark;

(II)    In the case of a famous mark that is famous *at the time of registration of the domain name*, is identical or confusingly similar to or dilutive of that mark; or

(III)   Is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.

15 U.S.C. § 1125(d)(1)(A) (emphasis added). Thus, "[t]o prevail on a cybersquatting claim, [the plaintiff] must show (1) that its trademark . . . was distinctive at the time of registration of the domain name, (2) that the domain names registered by [the defendant] . . . are identical or

confusingly similar to the trademark, and (3) that [the defendant] used or registered the domain names with a bad faith intent to profit." *Utah Lighthouse Ministry*, 527 F.3d at 1057; *see also One Man Band Corp. v. Smith*, 2014 WL 12622274, at \*9 (D. Utah Aug. 19, 2014*); Crossfit, Inc. v. 5280 Realty, Inc.*, 157 F. Supp. 3d 954, 957-58 (D. Colo. 2016); *Cleary Bldg. Corp. v. David A. Dame, Inc.*, 674 F. Supp. 2d 1257, 1263 (D. Colo. 2009).

Here, Canvas Tech solely argues that Instructure's cybersquatting claim should be dismissed because Instructure cannot prove one of the essential elements of a cybersquatting claim: that its mark was famous or distinctive at the time the domain name was registered. Therefore, the court must decide two things: (1) how it will interpret the applicable statutory language "at the time of registration" since this is an undecided question in the Tenth Circuit; and (2) based on that interpretation, whether the court will dismiss Instructure's cybersquatting claim.

The court chooses to follow the interpretation that the registration wording in the ACPA, 15 U.S.C. § 1125(d), include re-registrations based on the following reasons: (1) the plain language of the statute; (2) Congressional intent; (3) public policy; and (4) the trending weight of authority.

First, the ACPA does not define the term register, or registration. This means that there is no definition specifying that registration would only refer to an initial registration. As the Eleventh Circuit states in *Jysk Bed'N Linen v. Dutta-Roy*, the wording simply refers "to a registration, and a re-registration is, by definition, a registration. To 're-register' is to 'register again.'" 810 F.3d 767, 777 (11th Cir. 2015). Thus, the court finds that the plain language of the statute favors interpreting a re-registration as a registration.

Second, Congress's purpose in enacting the ACPA was to prevent cybersquatting – which is something that does not just occur at the time of initial registrations. As the Eleventh Circuit puts it in *Jysk*, "[i]t would be nonsensical to exempt the bad-faith re-registration of a domain name simply because the bad-faith behavior occurred during a noninitial registration, thereby allowing the exact behavior that Congress sought to prevent." *Id*. Since Congress's intent was to prevent cybersquatting – bad faith registrations and uses of others' marks by persons who seek to profit unfairly from the goodwill associated therewith – the court finds that Congress's intent favors interpreting a re-registration as a registration under the ACPA.

Third, the court finds that public policy favors interpreting re-registrations as registrations. If the word registration in the ACPA meant only an initial registration, that would allow domain names to be sold and purchased to anyone, including those with bad faith intentions to profit off the goodwill of others' marks, ad infinitum – so long as the first registration was legal. That is an undesirable outcome because it opens the doors wide for cybersquatting to occur – a result that Congress expressly does not want. There is another public policy argument that Canvas Tech raises, and that is property interests in quieting title. While that is a valid concern for many areas of property law, it is a poor fit for certain areas where technology and property intersect. This is an evolving area of the law, and the court takes that evolution into consideration in this decision. Therefore, the court finds that public policy favors including re-registrations in the registration language of the ACPA.

Finally, the court recognizes that Instructure demonstrates well in its briefing that the weight of authority in other circuits are trending towards interpreting re-registrations as registrations under the ACPA. (ECF No. 51 at 8-12). Notably, Instructure cites to an opinion written by the now Supreme Court Justice Sonia Sotomayor, *Storey v. Cello Holdings, LLC*, 347

F.3d 370, 378 (2d Cir. 2003), and to *Jysk* where J. Baldock of the Tenth Circuit was sitting by

designation – both of which supported the interpretation Instructure argues for. All this, along

with academic criticism (ECF No. 51 at 13-15) of *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1031 (9th

Cir. 2011), which is the only circuit-level case that limits "at the time of registration" to the

initial registration, persuades the court that the best interpretation of the word registration in the

ACPA is that it includes re-registrations.

      Using this interpretation of the statutory language, the court now analyzes whether

Instructure has provided sufficient factual allegations of a re-registration of the canvas.com

domain (during the time that Instructure's canvas brand has been famous), that Instructure's

claim rises above the speculative level and states a plausible claim for relief. *See Iqbal*, 556 U.S.

at 666. Instructure provided these facts via the Domain Report that it submitted and asked the

court to take judicial notice of (ECF No. 52; Exh. 1). This Domain Report shows that between

March 15, 2021 and April 1, 2021, the named registrar and the named registrant identified in the

domain report for canvas.com changed. If the new listed registrar and registrant are truly new

entities that entered into a new contract, then that would be a re-registration during the time in

which Instructure's canvas brand has been famous. That information of an actual new contract,

along with the bad faith factor, is something the court does not know yet, but it is irrelevant

because the registrar and registrant name changes are enough facts to establish that Instructure

has stated a plausible claim for relief. Therefore, the court denies Canvas Tech's motion to

dismiss Instructure's cybersquatting claim.

## IV.    CONCLUSIONS OF LAW – PLAINTIFF'S FIRST REQUEST FOR JUDICIAL NOTICE

      Pursuant to Fed. R. Evid. 201, and in connection with Instructure's opposition to Canvas

Tech's motion to dismiss the cybersquatting claim, Instructure requests that the court take

34

judicial notice of the Domain Report that was prepared on September 29, 2021 and obtained

from www.domaintools.com. (ECF No. 52; Exh. 1).

Courts may take judicial notice of facts that are "not subject to reasonable dispute," such

as those that can be "accurately and readily determined from sources whose accuracy cannot

reasonably be questioned." Fed. R. Evid. 201(b)(2). Rule 201(d) provides that the court "may

take judicial notice at any stage of the proceeding." Under Rule 201(c), a court "must take

judicial notice if a party requests it and the court is supplied with the necessary information."

Here, Instructure seeks judicial notice with respect to the Domain Report, which includes

publicly available WHOIS records that are available through standard Internet DNA and query

protocols for the www.canvas.com domain. In Canvas Tech's motion to dismiss, it requested the

court to take judicial notice of a limited snapshot of the canvas.com domain history. This request

asks the court to take judicial notice of the entire registration history for the domain.

It is common practice for courts to take judicial notice of factual information found on

the internet. *O'Tooele v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007). Thus,

courts have taken judicial notice of facts regarding the registration of a domain, including

WHOIS records like those in the Domain Report. *See, e.g., S. Grouts & Mortars, Inc. v. 3M Co*.,

2008 U.S. Dist. LEXIS 70222, at *50 (S.D. Fla. 2008), *aff'd* 575 F.3d 1235 (11th Cir. 2009)

(searching domain name registrations and taking "judicial notice that several of the domain

names listed by SGM are either not registered to 3M, or have an obviously legitimate connection

to 3M"); *Blanco GmbH + Co. KG v. Vlanco Indus., LLC*, 2014 U.S. Dist. LEXIS 187274, at *10

(S.D. Fla. 2014) (taking judicial notice of the "WHOIS record[s] for the domain name[s]").

Of particular concern to the parties is the section of the Domain Report that lists this

information:

|  | **March 15, 2021**<br>*See* ECF 52-1 (Domain Report) at p. 43 | **April 1, 2021**<br>*See* ECF 52-1 (Domain Report) at p. 41 |
|---|---|---|
| **Registrar** | CSC Corporate Domains, Inc. | GoDaddy.com, LLC |
| **Registrant** | Branded Holding Group, LLC | Domains By Proxy, LLC |

Canvas Tech is concerned about what it would mean to take judicial notice of this information. Canvas Tech argues that "Domains By Proxy" is a privacy service that keeps its clients' contact information private, and a formal "registrant" is not necessarily the person who registered the domain name, and therefore there is no real proof in the Domain Report that the registrar and registrant actually changed (whether there was an actual re-registration of the canvas.com domain). However, Canvas Tech does not dispute that between March 15, 2021 and April 1, 2021, the listed registrar and registrant identified in the domain report changed. Furthermore, Domains By Proxy, LLC is the current identified registrant of the domain that is expressly included within the domain information in Canvas Tech's own motion to dismiss, of which Canvas Tech likewise seeks judicial notice.

Taking judicial notice of the listed information on the Domain Report does not also confirm the underlying information. Therefore, the court takes judicial notice of the listed information in the Domain Report, as it is publicly available information that the parties do not dispute, and because doing so does not decide what the listed names mean or whether a re-registration of canvas.com occurred on or around April 1, 2021. In addition, the court takes judicial notice, as per Canvas Tech's request, that Domains by Proxy, https://www.domainsbyproxy.com/, is a privacy service for domain registration. The court takes this judicial notice because it is an easily searchable, publicly-available fact.

## V.    CONCLUSIONS OF LAW – PLAINTIFF'S MOTION TO DISMISS

Instructure brings this Fed. R. Civ. P. 12(b)(6) motion to dismiss all of Canvas Tech's counterclaims because Canvas Tech fails to adequately allege an essential element – superior trademark rights. Specifically, Instructure disputes Canvas Tech's claim that it owns superior common law trademark rights in employment recruiting services based on Canvas Tech's acquisition of Ms. Smith's marks. Although there is a small web of arguments to untangle concerning the First and Fifth Counterclaims, the core issue for this entire motion is which party has priority in common law trademark rights – a dispute that should not be decided at this stage.

*Standard of Review*

On a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded factual allegations in a complaint and views them in the light most favorable to the non-moving party. *See Iqbal*, 556 U.S. at 678. The court "need not take as true the complaint's legal conclusions." *Dronsejko*, 632 F.3d at 666. Thus, to withstand a 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to rise above the speculative level and state a plausible claim for relief. *Iqbal*, 556 U.S. at 666.

*Canvas Tech's First Counterclaim*

Canvas Tech's First Counterclaim is for federal trademark infringement under 15 U.S.C. § 1114. Canvas Tech clarifies in its opposition to this motion to dismiss that its First Counterclaim alleging trademark infringement under 15 U.S.C. § 1114(1) only concerns the infringement of its federally registered Acronym Mark (the '811 Registration). The actual language of the First Counterclaim can be interpreted this way, and the court does interpret it this way since that was Canvas Tech's intention and, by law, this statutory section only applies to registered marks. *See, e.g., John Bean Techs. Corp. v. BGSE Grp, LLC,* 480 F. Supp. 3d 1274,

1313, n.271 (D. Utah 2020); *Chanel, Inc. v. Pu*, 2009 U.S. Dist. LEXIS 22026, at *23 (D. Kan.

2009); *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 594 (5th Cir.

1985).

Next, a claim of infringement of a registered mark is not limited by the specific goods

and services identified in the registration. *Applied Info. Scis. Corp. v. eBAY, Inc.,* 511 F.3d 966,

972 (9th Cir. 2007). However, registered marks are only presumed valid as to the specific

services listed in the registration. *Id*. at 970; *see also* 15 U.S.C. § 1115. Therefore, Canvas Tech

can only rely on its Acronym Mark to establish prior rights in the services listed in the Acronym

Mark registration. Since these listed services are not for "employment recruiting services,"

Canvas Tech must allege prior common law trademark rights with respect to those services.

Canvas Tech has adequately pleaded this at this stage. Canvas Tech has provided enough facts

about Ms. Smith's marks and their uses to establish a plausible claim, albeit unlikely, to priority

rights in its common law canvas mark in the relevant field. (*see* Preliminary Injunction analysis).

The court will therefore not dismiss Canvas Tech's First Counterclaim at this stage because

Canvas Tech has met the required plausibility standard to survive a motion to dismiss.

*Canvas Tech's Other Counterclaims*

Similarly, the court will not dismiss the rest of Canvas Tech's counterclaims because they

are all based on who has priority in their common law canvas trademarks in the relevant field. In

addition, the court rejects the "infringement-plus" standard for the Utah Unfair Competition Act,

Utah Code Ann. § 13-5a-101, *et. seq*., claim (Canvas Tech's Fifth Counterclaim) – a standard

which this court is not bound to follow for a trademark infringement claim under the Utah Unfair

Competition Act (UUCA) unless it finds that the statute necessitates it – and instead follows the

statutory analysis written this year by Judge Parrish in *Siskin Enterprises, Inc. v. DFTAR, LLC*, 2021 WL 734955 (D. Utah Feb. 25, 2021). This analysis is as follows:

> The plain language of the [Utah Unfair Competition] Act does not require that a plaintiff allege behavior that is both trademark infringement *and* unlawful or fraudulent in some *other* way. Rather, Paragraph 13-5a-102(4)(a) is better read as explaining that "unfair competition" is defined as an unlawful, unfair, or fraudulent business act and clarifying that only certain kinds of unlawful, unfair, or fraudulent business acts can provide the basis for a claim under the UUCA. In other words, Sub-paragraphs 13-5a-102(4)(ii)(A)–(D) narrow the field of unlawful business acts that are actionable under the UUCA. Trademark infringement is one of these. Thus, while the statute is phrased "conjunctively," as the *Klein-Becker* court observed, one of the conjuncts, Sub-paragraph 13-5a-102(4)(ii), narrows the first conjunct, Sub-paragraph 13-5a-102(4)(i). Because trademark infringement is by its nature unlawful, unfair, or fraudulent, an allegation of trademark infringement alone—assuming that a plaintiff has also sufficiently alleged that such infringement "leads to a material diminution in value of intellectual property"—suffices to state a claim for unfair competition under the UUCA.

*Siskin Enterprises, Inc.*, 2021 WL 734955, at *3 (internal citations omitted).

The court finds this analysis of the statute to be a better interpretation of the statutory language than the "infringement-plus" standard followed in a few other Utah District Court cases. *See Eleutian*, 2017 U.S. Dist. LEXIS 25589, at *22-24 (D. Utah Feb. 21, 2017); *Betterbody Foods & Nutrition, LLC v. Oatly AB*, 2020 U.S. Dist. LEXIS 215185, at *11 (D. Utah Nov. 16, 2020); *Poison Spider Bicycles, Inc. v. Tap Mfg., LLC*, 2018 U.S. Dist. LEXIS 23495, at *22 (D. Utah Feb. 12, 2018). Therefore, the court agrees with *Siskin* that pleading trademark infringement alone is sufficient to bring a claim under the UUCA. Accordingly, Canvas Tech met the proper statutory standard for pleading a UUCA claim and the claim will not be dismissed on this basis either. Thus, the court denies Instructure's motion to dismiss Canvas Tech's counterclaims in its entirety.

## VI. CONCLUSIONS OF LAW – PLAINTIFF'S SECOND REQUEST FOR JUDICIAL NOTICE

Pursuant to Fed. R. Evid. 201, Instructure requests that the court take judicial notice of the following:

1. Registration No. 4,080,698 issued to Instructure by the United States Patent and Trademark Office ("USPTO") on January 3, 2012, for the CANVAS mark, attached as Exhibit A.

2. Registration No. 5,191,435 issued to Instructure by the USPTO on April 25, 2017, for the CANVAS mark, attached as Exhibit B.

3. Registration No. 4,737,811 issued to Colby Smith by the USPTO on May 19, 2019 for the CANVAS [CONCIERGE ALLIANCE NAPA VALLEY & SONOMA] stylized mark, attached as Exhibit C.

4. The Trademark Assignment Agreement, dated July 13, 2021, between Colby Smith and Defendant recorded in the USPTO on July 15, 2021, attached as Exhibit D. Canvas Tech also submitted the Trademark Assignment Agreement to the court as ECF No. 30; Exh. 1.

5. The website located at jobs.conciergealliance.com, which Canvas Tech relies upon and incorporates into its counterclaims. A printout of portions of this website is attached as Exhibit E.

6. An Internet Archive (also known as the Wayback Machine) capture of the jobs.conciergealliance.com website from January 13, 2014. A printout of the January 13, 2014, capture of the jobs.conciergealliance.com website is attached hereto as Exhibit F. Defendant provided authenticating details for this Internet Archive capture in a declaration it submitted to the court. See ECF 30 (Calnan Declaration) at ¶6. Defendant also relied on this Internet Archive capture in a pleading it submitted to the court. See ECF No. 27 (Defendant's Opposition to Instructure's Preliminary Injunction Motion) at 5.

For Exhibits A-D, Instructure seeks judicial notice because these are documents filed with the USPTO and are publicly available. For Exhibit E, Instructure seeks judicial notice since it is a website that Canvas Tech incorporated by reference in its Counter-complaint. For Exhibit F, Instructure seeks judicial notice of the internet archive capture because that is permissible under Tenth Circuit law. *See Marten Transp., Ltd. V. PlattForm Adver., Inc.*, 2016 U.S. Dist. LEXIS 57471 (D. Kan. Apr. 29, 2016) (the court analyzed Tenth Circuit law regarding Internet Archive captures and concluded that the "Tenth Circuit has sanctioned taking judicial notice of factual information on the internet" which includes "screenshots from the Wayback Machine."). Furthermore, Canvas Tech does not dispute the authenticity of the January 13, 2014 internet capture, and it even relies on this capture in a pleading submitted to the court. *See* ECF No. 27 at 5. For all of these reasons, Instructure requests that the court take judicial notice of Exhibits A-F.

40

Canvas Tech does not oppose this judicial request. Because the motion is unopposed, the reasoning is sound, and to take judicial notice here is proper by law, the court therefore takes judicial notice of Exhibits A-F, found in ECF No. 48, as Instructure has requested.

## VII.    ORDER

Based on the foregoing reasoning, it is hereby ORDERED that:

1. The court takes judicial notice of the June 6, 1997 registration date of the domain name canvas.com

2. The court takes judicial notice that Domains By Proxy, https://domainsbyproxy.com/, is a privacy service for domain registration.

3. The court GRANTS Plaintiff's Judicial Notice requests and thereby takes judicial notice of the domain report submitted in ECF No. 52, Exh. 1, and of Exhibits A-F in ECF No. 49.

4. The court DENIES Defendant's Motion to Dismiss Plaintiff's Cybersquatting Claim.

5. The court DENIES Plaintiff's Motion to Dismiss Defendant's Counterclaims.

6. The court GRANTS Plaintiff's Motion for a Preliminary Injunction.

7. Defendant, and each of its respective officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any one of them, ARE HEREBY PRELIMINARILY ENJOINED AND RESTRAINED pending the final hearing and determination in this action from (a) Continuing to sell, advertise, or promote any product or service using the Canvas Mark, or any other mark that is confusingly similar to the Canvas Mark; and (b) Continuing to use, advertise, promote, or redirect any other websites to the www.canvas.com domain.

8. Within 15 days of the date of this Order, Defendant shall remove or destroy all signs, posters, pictures, billboards, advertisements, or other printed matter that displays the Canvas Mark in any manner;

9. Within 15 days of the date of this Order, Defendant shall remove all internet posts, pictures, or other material (including but not limited to on Defendant's websites, Facebook, Twitter, Instagram, YouTube and other social media pages) that display the Canvas Mark in any manner.

10. Within 10 days of the date of this Order, Plaintiff shall post a bond in the amount of $100,000.

11. This Order is effective immediately upon service on Defendant; and

12. Unless otherwise ordered, this Order shall remain in effect until the final hearing and determination of this action, and during the pendency of any appeals.

DATED this 5th day of January, 2022.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

42

Sterling A. Brennan (UT Bar No. 10060)
sbrennan@mabr.com
MASCHOFF BRENNAN
GILMORE & ISRAELSEN, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850

Peter J. Willsey (Admitted Pro Hac Vice)
pwillsey@brownrudnick.com
Vincent J. Badolato (Admitted Pro Hac Vice)
vbadolato@brownrudnick.com
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1700

Jason M. Sobel (Admitted Pro Hac Vice)
jsobel@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

Stephanie P. Calnan (Admitted Pro Hac Vice)
scalnan@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INSTRUCTURE, INC., a Delaware corporation,<br><br>Plaintiff/<br>Counterclaim-Defendant,<br><br>v.<br><br>CANVAS TECHNOLOGIES, INC., a Delaware corporation,<br><br>Defendant/<br>Counterclaim-Plaintiff. | Civil No. 2:21-cv-00454-DAK-CMR<br><br>**CANVAS TECHNOLOGIES, INC.'S NOTICE OF APPEAL**<br><br>District Judge: Hon. Dale A. Kimball<br>Magistrate Judge: Hon. Cecelia M. Romero |

Notice is given that, pursuant to 28 U.S.C. 1292(a)(1), Defendant/Counterclaim-Plaintiff

Canvas Technologies, Inc. ("Canvas") hereby appeals to the United State Court of Appeals for the

1

Tenth Circuit from the Memorandum Decision and Order Granting Preliminary Injunction (ECF No. 74) entered by the Court in this matter on January 5, 2022.

Dated: January 6, 2022                              Respectfully submitted,

                                                    */s/ Peter J. Willsey*
                                                    Peter J. Willsey (*pro hac vice*)
                                                    Vincent J. Badolato (*pro hac vice*)
                                                    Jason M. Sobel (*pro hac vice*)
                                                    Stephanie P. Calnan (*pro hac vice*)
                                                    BROWN RUDNICK LLP
                                                    pwillsey@brownrudnick.com
                                                    vbadolato@brownrudnick.com
                                                    jsobel@brownrudnick.com
                                                    scalnan@brownrudnick.com


                                                    */s/ Sterling A. Brennan*
                                                    Sterling A. Brennan (UT Bar No. 10060)
                                                    MASCHOFF BRENNAN
                                                    GILMORE & ISRAELSEN, PLLC
                                                    sbrennan@mabr.com

                                                    Attorneys for Defendant/Counterclaim-Plaintiff
                                                    CANVAS TECHNOLOGIES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 6th day of January 2022, a true and correct copy of the foregoing

document was served on counsel of record via CM/ECF.


<u>*/s/ Sterling A. Brennan*</u>
Sterling A. Brennan