Sterling A. Brennan (UT Bar No. 10060)
sbrennan@mabr.com
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850

Peter J. Willsey (Admitted Pro Hac Vice)
pwillsey@brownrudnick.com
Vincent J. Badolato (Admitted Pro Hac Vice)
vbadolato@brownrudnick.com
BROWN RUDNICK LLP
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
Telephone: (202) 536-1700

Jason M. Sobel (Admitted Pro Hac Vice)
jsobel@brownrudnick.com
BROWN RUDNICK LLP
7 Times Square
New York, NY 10036
Telephone: (212) 209-4800

Stephanie P. Calnan (Admitted Pro Hac Vice)
scalnan@brownrudnick.com
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Telephone: (617) 856-8200

Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| INSTRUCTURE, INC., a Delaware corporation,<br><br>   Plaintiff/<br>   Counterclaim-Defendant,<br><br> v.<br><br>CANVAS TECHNOLOGIES, INC., a Delaware corporation,<br><br>   Defendant/<br>   Counterclaim-Plaintiff. | Civil No. 2:21-cv-00454-DAK-CMR<br><br>**CANVAS TECHNOLOGIES, INC.'S EMERGENCY MOTION TO STAY ENFORCEMENT OF PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>District Judge: Hon. Dale A. Kimball<br>Magistrate Judge: Hon. Cecelia M. Romero |

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................... 1

II.    ARGUMENT ............................................................................................ 2

       A.    Legal Standard .............................................................................. 2

       B.    All Four Factors Favor a Stay of the Preliminary Injunction But the Harm
             Factors Overwhelmingly Favor a Stay. ........................................... 3

       C.    Instructure Will Not Be Harmed By a Stay of the Preliminary Injunction........ 5

       D.    The Public Interest Is Strongly Served by Staying the Preliminary Injunction. 6

       E.    This Case Involves Complicated Issues of Trademark Priority and Canvas
             Will Likely Succeed on Appeal. ..................................................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Contractors Indem. Co. v. Bigelow*,
No. 09-8108, 2011 WL 13185712 (D. Ariz. May 19, 2011) ....................................................5

*BetterBody Foods & Nutrition, LLC v. Oatly AB & Oatly, Inc.*
No. 2:20-CV-00492-DAK, 2020 WL 6710433 (D. Utah Nov. 16, 2020) ................................8

*F.T.C. v. Mainstream Mktg. Servs., Inc.*,
345 F.3d 850 (10th Cir. 2003) ..............................................................................................3

*Gila River Indian Cmty. v. United States*,
No. CV-10-1993, 2011 WL 1656486 (D. Ariz. May 3, 2011) .................................................7

*Heideman v. S. Salt Lake City*,
348 F.3d 1182 (10th Cir. 2003) ...........................................................................................6

*Hilton v. Braunskill*,
481 U.S. 770 (1987).............................................................................................................3

*Homans v. City of Albuquerque*,
264 F.3d 1240 (10th Cir. 2001) ...........................................................................................2

*Kalani v. Starbucks*,
No. 13-CV-00734, 2016 WL 693251 (N.D. Cal. Feb. 22, 2016) ...........................................5

*Leiva-Perez v. Holder*,
640 F.3d 962 (9th Cir. 2011) ...............................................................................................3

*McClendon v. City of Albuquerque*,
79 F.3d 1014 (10th Cir. 1996) .............................................................................................2

*Merial Ltd. v. Cipla Ltd.*,
426 F. Appx 915 (Fed. Cir. 2011) (unpublished) .....................................................................8

*Peck v. Upshur Cnty. Bd. of Educ.*,
941 F. Supp. 1478 (N.D. W. Va. 1996) ...............................................................................7

*Standard Havens Products, Inc. v. Gencor Indus., Inc.*,
897 F.2d 51 (Fed. Cir. 1990) ...............................................................................................8

*Stop H-3 Ass'n v. Volpe*,
353 F. Supp. 14 (D. Haw. 1972) ...........................................................................................5

*In re Sunflower Racing, Inc.*,
    225 B.R. 225 (D. Kan. 1998) .................................................................................5

*Zibalstar, L.C. v. Conte*,
    No. 2:17-cv-00563, 2017 WL 2589291 (D. Utah June 14, 2017) ............................................6

**Other Authorities**

Fed. R. App. P. 8 ........................................................................................................1, 10

Fed. R. App. P. 8(a)(1) ...............................................................................................2

Fed. R. Civ. P. 62(d) ...........................................................................................1, 2, 5, 7

Defendant Canvas Technologies, Inc. ("Canvas") respectfully moves pursuant to Federal Rule of Civil Procedure 62(d), on an emergency basis, to stay enforcement of the Court's preliminary injunction (ECF No. 74) pending Canvas's appeal (ECF No. 75) or, in the alternative, pending a decision the Tenth Circuit's ruling on a motion to stay under Fed R. App. P. 8, which Canvas will promptly file if this Court denies from an order denying a stay pending appeal.

## I. INTRODUCTION

On January 5, 2022, this Court entered an order granting Instructure's request for a preliminary injunction (the "Order"). Canvas filed a Notice of Appeal on January 6, 2022.

A preliminary injunction would cause significant and irreversible harm to Canvas and to thousands of job-seeking members of the public and companies looking to fill job vacancies as soon as it takes effect, which will currently occur fifteen days after entry of the Order – i.e., on January 20, 2022. A preliminary injunction, even if only for the time period pending a determination of the appeal, would significantly disrupt Canvas's operations, and jeopardize its contractual and customer relationships, and undermine the substantial investments it made in the launch of the CANVAS brand. Accordingly, serious and irreparable harm to Canvas will occur absent a stay. Moreover, a stay would avert interruption of individuals' job searches and employers' hiring processes, which strongly supports the public interest.

Significantly, without a stay, Canvas's constitutional due process right to appeal will be effectively denied by forcing Canvas to rebrand prior to resolution of its appeal. This is because if Canvas is ordered to rebrand in an unreasonably short period, Canvas could not then rebrand again if its appeal is successful without grave injury to its business. This outcome alone constitutes irreparable harm to Canvas and warrants a stay.

The avoidance of irreparable harm to Canvas and service of the public interest that a stay

provides stand in stark contrast to the potential harm to Instructure, which on the present record is effectively zero. The Court found irreparable harm based on a statutory presumption without concrete evidence of actual or even potential harm to Instructure. Such presumption has no effect on the present motion for a stay.

The Court erred in its finding pertaining to issues of trademark priority and the scope of relevant services covered by the parties' respective uses of the CANVAS mark raise material legal concerns upon which Canvas is likely to prevail on appeal.  Given those legal issues plus the threat of significant harm to Canvas, the lack of any demonstrable harm to Instructure, and the public interest, the Court should exercise its discretion in staying its preliminary injunction while Canvas pursues resolution of these matters on appeal.

## II.    ARGUMENT

### A.    Legal Standard

Rule 62(d) of the Federal Rules of Civil Procedure provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction."  Rule 8(a)(1) of the Federal Rules of Appellate Procedure provides that a party must ordinarily first move in the district court to obtain a stay of the judgment before moving in the appellate court. Fed. R. App. P. 8(a)(1). The purpose of a stay is to preserve the status quo pending appellate determination. *McClendon v. City of Albuquerque*, 79 F.3d 1014, 1020 (10th Cir. 1996).

When considering a stay pending appeal, a four-part test similar to the preliminary injunction test applies:  (1) the likelihood of success on appeal; (2) the threat of irreparable harm to the applicant absent a stay; (3) the absence of harm to opposing parties if the stay is granted; and (4) where the public interest lies.  *Homans v. City of Albuquerque*, 264 F.3d 1240, 1243 (10th Cir. 2001). These equitable factors cannot be reduced to a "set of rigid rules" but rather necessitate

"individualized judgments in each case." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). Although the factors for granting a preliminary injunction and those for granting a stay are similar, there are important differences between preliminary injunctions and stays:

> If anything, a flexible approach is even more appropriate in the stay context. Whereas "the extraordinary remedy of injunction" is the means by which a court "directs the conduct of a party ... with the backing of its full coercive powers," a stay operates only "upon the judicial proceeding itself.... either by halting or postponing some portion of the proceeding, or by temporarily divesting an order of enforceability." In other words, although "[a] stay pending appeal certainly has some functional overlap with an injunction," stays are typically less coercive and less disruptive than are injunctions.

*Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (*quoting Nken v. Holder*, 556 U.S. 418 (2009)) (emphasis added, internal citations omitted). Moreover, in the instant case, Canvas's right of appeal would effectively be eliminated without a stay. (*See infra* at § II.B.) Significantly, "[w]ith respect to the four stay factors where the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is somewhat relaxed." *F.T.C. v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 852 (10th Cir. 2003) (citations omitted).

### B.    All Four Factors Favor a Stay of the Preliminary Injunction but the Harm Factors Overwhelmingly Favor a Stay.

Without a stay of the preliminary injunction, Canvas and its business operations will sustain extreme and serious irreparable injury.  (Declaration of Adam Gefkovicz ("Gefkovicz Decl.) ¶ 6).  The CANVAS mark serves as Canvas's company name and house brand. (*Id.* at ¶ 12). Unlike many trademarks, it is not a brand for a discrete product or service offered by a company. As such, the inability to use the CANVAS mark and associated domain name would negatively impact the company's entire operations, not simply a single product or service that could quickly be re-branded.  Canvas is a relatively small and young company in the early stages of expanding its services and building its brand.  Requiring it to stop all use of the CANVAS mark and the canvas.com domain name within two weeks would be devastating to its business.

3

Critically, rebranding an entire company is a significant undertaking and not one that can be accomplished in a mere 15 days.  Canvas's recent rebranding is the best evidence of how long it takes to reasonably rebrand without significant business interruption.  Canvas's rebrand from Jumpstart to Canvas in early 2021 took almost six months, which itself was a particularly aggressive timeline with human resources that are not currently available. (*Id.* at ¶¶ 8-10).

Moreover, absent a stay, Canvas's business and its customers will suffer extreme harm because its customers, i.e., candidates currently seeking employment and employers seeking to fill existing job openings, will have their respective job and candidate searches disrupted.  (*Id.* at ¶¶ 4-7).  Canvas's business is conducted almost exclusively online – its employment recruiting services are offered online through its website at www.canvas.com and app, where both employers and those seeking employment can connect virtually.  (*Id.* at ¶ 4).  Customers on both sides of the job recruiting equation find Canvas on the Internet via search engines, mobile app platforms, and Canvas's website. Requiring Canvas to stop using the CANVAS mark and associated domain name in 15 days would cause the company significant business harm. (*Id.* at ¶¶ 4-6). Without the ability to use the CANVAS trademark and the canvas.com domain name, neither side of the employment-seeking equation works, and Canvas's business would be hobbled.

The short 15-day time period for application of the preliminary injunction provides Canvas with virtually no opportunity to properly rebrand its company and its services, as Canvas would be unable to properly send the rebrand message to the market.  Canvas currently services almost half a million users seeking new employment opportunities and another 200 companies seeking to fill about 5,200 job vacancies on any given day.  (*Id.* at ¶ 7).

Finally, if the Court does not stay imposition of the preliminary injunction, Canvas's right to appeal, a component of its constitutional due process right, will be mooted. *See infra* at § D

(citing *Gila River*). Courts routinely find that mootness of an appeal constitutes irreparable harm because it is the traditional irreparable injury that is contemplated by the adoption of Rule 62(d). *Am. Contractors Indem. Co. v. Bigelow*, No. 09-8108, 2011 WL 13185712, at *2 (D. Ariz. May 19, 2011) ("Traditionally, the irreparable injury contemplated by Rule 62(c) [now 62(d)] is that which will make the appeal moot."); *In re Sunflower Racing, Inc.*, 225 B.R. 225, 228 (D. Kan. 1998) (granting stay; finding irreparable harm based on likelihood that appeal mooted absent stay); *Kalani v. Starbucks*, No. 13-CV-00734, 2016 WL 693251, at *5 (N.D. Cal. Feb. 22, 2016) (citing *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986) ("[m]ootness of an appeal can constitute irreparable harm.")); *Stop H-3 Ass'n v. Volpe*, 353 F. Supp. 14, 16 (D. Haw. 1972) ("A stay is issued to maintain the status quo where otherwise, absent the stay, there is a substantial likelihood that the basis for the appeal will be mooted by the operation of the injunction.").

Absent the grant of a stay of the preliminary injunction pending appeal, Canvas's success on appeal would be superfluous because it will have already been forced to rebrand from the CANVAS mark. (*Id.* at ¶ 14). Such a rebrand will be irreversible from both practical and business standpoints, and the need to determine the important infringement issues in this case will have been mooted. (*Id.*) As a result, Canvas's constitutional right to appeal—which will seek the relief of maintaining the status quo of the parties' respective uses of the CANVAS marks while the issues are fully vetted through discovery and a trial —would essentially be thwarted.

### C.    Instructure Will Not Be Harmed by a Stay of the Preliminary Injunction.

Instructure did not demonstrate any actual harm in seeking the preliminary injunction, and it will not now be harmed by staying the preliminary injunction. The Court found irreparable harm in this case based on the presumption afforded by the Trademark Modernization Act when a court finds a likelihood of consumer confusion. That type of "irreparable harm" is a legal construct only and in fact does not demonstrate *any* actual harm whatsoever to Instructure.

Rather, as Canvas argued in its Opposition to the Motion for Preliminary Injunction (ECF No. 27) (the "Opp.") and Sur-Reply (ECF No. 53), to constitute irreparable harm, an injury must be "certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Irreparable harm is not simply a harm that is "serious or substantial," *id.,* it is a harm that a court "would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain," *Zibalstar, L.C. v. Conte*, No. 2:17-cv-00563, 2017 WL 2589291, at *4 (D. Utah June 14, 2017) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001)), and a harm of "such *imminence* that there is a clear and present need for equitable relief." *Heideman,* 348 F.3d at 1189. Such harm to Instructure is absent in this case, and Instructure has not alleged otherwise. Monetary damages provide a sufficient remedy.

For example, Instructure has neither alleged nor provided evidence of any economic harm such as a loss in revenue or customers resulting from Canvas's use of the CANVAS mark. And as Canvas also argued in its Opposition, there is no basis to find any irreparable harm to Instructure given its passivity in allowing Canvas's predecessor-in-interest, Colby Smith, and Jobvite to each use CANVAS marks in connection with recruiting services for years earlier.  (Opp. at 20-23).  The Court effectively countenanced Instructure's failure to take enforcement action against both entities by taking an overly narrow view of the relevant services at issue in this case ("the relevant field will likely include a targeting of higher education students" Order, p. 28), a view that Canvas believes will not withstand appeal.  But these two entities use of the CANVAS mark for years with no harm to Instructure also shows that a stay will also not cause any harm to Instructure.

**D.    The Public Interest Is Strongly Served by Staying the Preliminary Injunction.**

A stay of the preliminary injunction would serve the public interest by preventing the disruption of ongoing job searches by individuals and recruiting by employers to fill currently

6

available positions. (Gefkovicz Decl. at ¶¶ 5-7).  The preliminary injunction requires eliminating use of Canvas's name and domain name within 15 days. Therefore, without a stay of the preliminary injunction, an estimated 100,000 people actively using Canvas to search for jobs will suffer a disruption of their job searches. *Id.* Moreover, about 200 employers that are actively using Canvas to collectively fill about 5,200 positions from Canvas's talent pool of about 500,000 people will suffer a disruption of their recruiting efforts. Avoiding the disruption of individuals finding jobs and employers hiring to fill available positions is undeniably a strong public interest.  For this reason alone, a stay should be granted.

Staying the preliminary injunction will also advance the public interest by "preserving the integrity of the right to appellate review[.]" *Gila River Indian Cmty. v. United States*, No. CV-10-1993, 2011 WL 1656486, at *3 (D. Ariz. May 3, 2011) "Indeed, the public has a strong interest 'in the appeal right as one component of the constitutional right to due process in enforcement of the nation's laws.'" *Id.* Again, if the preliminary injunction is enforced and Canvas is forced to rebrand within 15 days in the absence of a stay, Canvas's appeal would be mooted. (*Supra* § B).

E.     **This Case Involves Complicated Issues of Trademark Priority and Canvas Will Likely Succeed on Appeal.**

Having satisfied the standards above regarding harm and the public interest, Canvas is entitled to a stay if it can raise serious issues going to the merits of the dispute. "To find that plaintiffs have a strong likelihood of success on appeal, the Court need not harbor serious doubts concerning the correctness of its decision. Otherwise, relief under rule 62[d] would rarely be granted. What is fairly contemplated is that tribunals may properly stay their own orders when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Peck v. Upshur Cnty. Bd. of Educ.*, 941 F. Supp. 1478, 1481 (N.D. W. Va. 1996).  "To obtain a stay, pending appeal, a movant must establish a strong

likelihood of success on the merits, or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor." *Merial Ltd. v. Cipla Ltd.*, 426 F. Appx 915 (Fed. Cir. 2011) (unpublished) (*citing Hilton*, 481 U.S. 778).

If the harm to the movant is sufficiently serious, however, it is only necessary that there be a *fair chance* of success on the merits. *Standard Havens Products, Inc*. v. Gencor Indus., Inc., 897 F.2d 511, 513 (Fed. Cir. 1990) (*citing William Inglis & Sons Baking Co. v. ITT C'nt'l Baking Co., Inc.*, 526 F.2d 86, 88 ('9th Cir. 1975). Canvas has a strong likelihood of success on the merits of its appeal and at least can raise substantial questions warranting reversal of the preliminary injunction.

The nuanced legal questions in this case are of trademark priority and the relatedness of the services offered and rendered by parties using the CANVAS marks. As the Court accurately noted in the Order, "what matters in the present case is the priority of common law trademark ownership – which party used the canvas mark first for the relevant service." (Order at 17-18). This court correctly stated in *BetterBody Foods & Nutrition, LLC v. Oatly AB & Oatly, Inc*., that "[e]stablishing ownership or priority over a mark can be a fact-intensive endeavor—especially, as is the case here, when one party claims common law ownership of a mark as an affirmative defense against another party's claim that it federally registered the same." No. 2:20-CV-00492-DAK, 2020 WL 6710433, at *3 (D. Utah Nov. 16, 2020). Respectfully, the court erred when it attempted to resolve this fact-intensive inquiry on an abbreviated record and incorrectly delineated the scope of relevant services which was the grounds for finding that Instructure has priority.

Canvas and its predecessor-in-interest Ms. Smith continuously used the CANVAS mark in connection with recruiting and job placement services since at least as early as July 2013. (Opp. at 2-7). Instructure did not begin using the CANVAS mark in connection with recruiting or job placement services until five and a half years later, in 2019, when it acquired Portfolium. *(Id.* at

6-10) The Court erred by ignoring the evidence submitted by Canvas and instead accepting Instructure's factually unsupported argument that the scope of the relevant services in this case are something other than job recruiting or placement services.

For example, Instructure recognized that its ePortfolio service did not support its claim of prior use of the CANVAS mark in the job recruiting field, so it attempted to redefine the relevant field of services as "an online platform that allows higher education students to create a profile by selecting and uploading information which can then be used to network with other students or share with prospective employers." (Instructure's Reply (ECF No. 38), 1, n.2). The Court erroneously accepted this definition as the scope of relevant services at issue in this case.

Compounding the error was the Court's acceptance of Instructure's attempts to diminish the scope of Canvas's senior rights, asserting that its use of the CANVAS marks was limited to California. Instructure relied solely on the argument and speculation of its own CEO, which should have been entitled to no weight and is, in fact, demonstrably incorrect. Moreover, the Court afforded weight to Instructure's argument that its Portfolium product, which *is* in the relevant field of services, was a mere extension of its ePortfolio service, which *is not* in the relevant field of services. In doing so, the Court permitted Instructure to fabricate an earlier priority date.

Instructure simply did not begin using the CANVAS mark in connection with job recruiting services until 2019 when it acquired Portfolium. Instructure's own cease-and-desist letter to Canvas, (Herman Ex. 1 (ECF No. 28-1)), identified Portfolium as the sole basis for its claim of trademark infringement against Canvas while making absolutely no reference to ePortfolio, a service the Court relies heavily upon to substantiate Instructure's redefinition of the relevant services to essentially "online student accomplishment postings" (which is not how Canvas uses the CANVAS mark at all). Instructure never provided any evidence that ePortfolio helps identify

9

job opportunities, match job applicants to opportunities, identify job applicants for employers, or enable communication between applicants and employers, all of which are key elements of the services with which Canvas uses the CANVAS mark. (Opp. at 19-20). Yet the Court accepted Instructure's characterization of the services at issue, which had the incorrect consequence of moving Instructure's priority date further back in time to predate Canvas's own priority date.

Moreover, it was Instructure's burden to prove that Ms. Smith's rights were not nationwide, not Canvas's. But the Court accepted, based on little to no evidence, Instructure's contention that Ms. Smith's use of the CANVAS marks was limited to the California wine and hospitality industry. Yet unrebutted evidence submitted by Canvas demonstrated that Ms. Smith used the CANVAS Marks nationally and internationally, (Smith Ex. 5 (ECF. No. 29-5); Smith Decl., (ECF No 29), ¶¶ 2, 6; Smith Suppl. Exs. A-E (ECF Nos. 54-1-5)). Instructure rested on attorney argument that Ms. Smith's examples were connected to California, which ignores the critical fact that the evidence demonstrated that Ms. Smith serviced consumers nationwide. The Court erroneously flipped the burden of proof on this issue, mistakenly concluding that "it is likely that the scope of Ms. Smith's common law trademark rights in canvas is limited to California's hospitality and wine industry." (Order at 20). In so finding, the Court did not properly analyze Canvas's rights in the CANVAS Marks in the relevant field as nationwide in scope, which in turn led to the erroneous conclusion that Canvas did not have priority over Instructure in use of the CANVAS mark.

These issues merit thorough vetting and resolution on appeal, and when coupled with the significant harm to Canvas and the lack of harm to Instructure that a preliminary injunction would impose, justify a stay of the preliminary injunction.

For the foregoing reasons, the Court should stay the injunction pending appeal, or in the alternative, pending the Tenth Circuit decision on a motion to stay under Fed R. App. P. 8.

Dated: January 7, 2022

Respectfully submitted,

*/s/ Jason M. Sobel*
Peter J. Willsey (*pro hac vice*)
Vincent J. Badolato (*pro hac vice*)
Jason M. Sobel (*pro hac vice*)
Stephanie P. Calnan (*pro hac vice*)
BROWN RUDNICK LLP
pwillsey@brownrudnick.com
vbadolato@brownrudnick.com
jsobel@brownrudnick.com
scalnan@brownrudnick.com


*/s/ Sterling A. Brennan*
Sterling A. Brennan (UT Bar No. 10060)
MASCHOFF BRENNAN GILMORE
ISRAELSEN & WRIGHT, PLLC
sbrennan@mabr.com


Attorneys for Defendant/Counterclaim-Plaintiff
CANVAS TECHNOLOGIES, INC.

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of January 2022, a true and correct copy of the foregoing document was served on counsel of record via CM/ECF.

*/s/ Sterling A. Brennan*
Sterling A. Brennan