Mark Miller (#9563)
Brett Foster (#6089)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
miller.mark@dorsey.com
foster.brett@dorsey.com
kapaloski.tammy@dorsey.com

Mike Keyes (*admitted pro hac vice*)
**DORSEY & WHITNEY LLP**
701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043
Telephone: (206) 903-8800
Facsimile: (206) 903-8820
keyes.mike@dorsey.com

*Attorneys for Plaintiff/Counterclaim Defendant Instructure, Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **INSTRUCTURE, INC.**, a Delaware corporation,<br><br>Plaintiff/Counterclaim-Defendant,<br><br>vs.<br><br>**CANVAS TECHNOLOGIES, INC.**, a Delaware corporation,<br><br>Defendant/Counterclaim-Plaintiff. | **PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Civil No. 2:21-cv-00454-DAK-CMR<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Cecilia M. Romero |

Plaintiff Instructure, Inc. ("Instructure") respectfully provides the following brief reply to the Response and Declaration (Dkt. 94, 95) filed by Defendant Canvas Technologies, Inc. ("Defendant") to the Court's Order to Show Cause (Dkt. 88).

Defendant does not dispute that the elements of contempt are met here—*i.e.*, a valid preliminary injunction order (Dkt 74, "PI Order") exists, Defendant has been aware of the PI Order since the day it issued, and Defendant is not in compliance with the PI Order. Instead,

Defendant attempts to excuse its noncompliance by asserting that it is in "substantial compliance" and that full and timely compliance was "plainly and unmistakably" impossible. Dkt. 94 at 7-8. Quite to the contrary, Defendant's excuses only reveal its contempt for the Court's authority by self-servingly reframing the Court's PI Order into something that it is not. The truth is Defendant is not close to substantial compliance and has not demonstrated by clear and convincing evidence that compliance was impossible.

The PI Order required Defendant to "remove all internet posts, pictures, or other material (including but not limited to on Defendant's websites, Facebook, Twitter, Instagram, YouTube and other social media pages) that display the Canvas Mark in any manner." PI Order at 42 (Dkt. 74). Yet rather than removing its infringing use of Canvas from its online platforms, Defendant believes it is entitled to *first* engage in its "pre-work" and "domain warming" processes to ensure a smooth transition and keep company morale high. Gefkovicz Decl. at ¶¶ 19-23, 28-29 (Dkt. 95). Defendant purports to excuse its noncompliance by unilaterally claiming the right to "complete a rebranding of our business … without interrupting services" by conducting multiple "trademark clearance searches" and evaluating and vetting several potential new company names in order to select a new trademark that will provide Defendant its most comfortable and least disruptive path forward regardless of the timing imposed by the Court. *Id.* at ¶¶ 7-15, 28. But this is not evidence of compliance, as none of this is required by the PI Order. Nothing Defendant has presented suggests it could not have timely removed the Canvas Mark from its online platforms, as required by the PI Order.

Defendant presents the Court with carefully crafted screen shots of its website content where it has removed "Canvas" from some text. Dkt. 94 at 4-5. But carefully hidden in a

footnote is the fact that the Canvas Mark remains *unchanged* at the top of *every one of those pages*, simply because Defendant does not want to change "the name CANVAS in the top banner" until "a new company name is finalized." *Id*. at 3, n.2.

| **Gefkovicz Decl., ¶ 24** | **www.canvas.com** |
|---|---|
|  |  https://www.canvas.com/ |
|  |  https://www.canvas.com/candidates |
|  |  https://www.canvas.com/candidates |

4891-1383-5788\2

| **Gefkovicz Decl., ¶ 24** | **www.canvas.com** |
|---|---|
|  |  |
| | https://www.canvas.com/team |
|  |  |
| | https://www.canvas.com/blog |

In addition, *all* of Defendant's social media remains branded with the Canvas Mark.

| **FACEBOOK** | **TWITTER** |
|---|---|
|  |  |

4

4891-1383-5788\2



Incredibly, Defendant affirmatively posted new content on its LinkedIn account under the Canvas Mark at least 20 times *after* the January 20, 2002 compliance deadline passed, including the two examples below.

https://www.linkedin.com/company/joincanvas/posts/?feedView=all

It is nothing short of outrageous for Defendant to characterize its minor edits to some of its online content as "substantial compliance" when the Canvas Mark continues to *headline* its entire online presence. Mr. Gefkovicz's declaration does not say Defendant could not have removed the Canvas Mark entirely from its website and social media in compliance with the PI

4891-1383-5788\2

Order, even if that meant deactivating some social media accounts temporarily.[1]  But Defendant has already presented this Court and the Tenth Circuit with its rebranding justification for non-compliance in the context of its two emergency stay motions, Dkt. 79-80, both of which were denied, Dkt. 84-90.  For Defendant to now double down on its demand that it is entitled to pursue its rebranding processes on its own terms and timeline before full compliance with the PI Order reveals a brazen lack of respect for this Court's authority that is rarely seen.

Any temporary disruption or discomfort Defendant would encounter due to immediate compliance with the PI Order is a self-imposed hardship stemming from its willful trademark infringement and does not excuse Defendant's contempt.  *See GMC v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) ("[W]hen the case for infringement is clear, a defendant cannot avoid a preliminary injunction by claiming harm to a business built upon that infringement."); *Equitable Nat'l Life Ins. Co. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1255 (D. Utah 2020) ("[C]ourts afford little weight to self-inflicted harms" claimed by trademark infringers).  Specifically, Defendant adopted the Canvas Mark with full knowledge of Instructure's trademark rights, which Defendant has *admitted* causes a likelihood of confusion with Instructure's "strong" trademark,[2] and Defendant did this knowing it did not have priority trademark rights.  As the Court is aware, Defendant's acquisition of Colby Smith's irrelevant trademark rights was an ill-advised afterthought and reaction to Instructure's demand letter—

---

[1] Defendant has a mere 140 YouTube subscribers, 400 Instagram followers, 90 Facebook followers, and 85 Twitter followers.  Any temporary disruption or pause of Defendant's social media is not going to materially harm anyone.

[2] *See* Dkt. 27 at 17, 19 ("Instructure argues that a likelihood of confusion exists. Canvas agrees …"; "Canvas agrees with Instructure that the CANVAS mark is conceptually and commercially strong…").

Defendant did not own any prior rights *when it chose to infringe* the Canvas Mark. Defendant could have responded to Instructure's demand letter by agreeing to rebrand back in June 2021, when Defendant may have had the luxury of creating its plans, organizing focus groups, vetting multiple possible brands, and implementing its purportedly crucial "domain warming" processes. But the circumstances following the Court's PI Order are not the same as existed then. Given the strong record of willful trademark infringement that already exists in this case, Defendant's complaints about the hardship of timely compliance—*e.g.*, how reverting to an old brand is "something we try to avoid" and that Defendant no longer likes the JUMPSTART name—should fall on deaf ears. Gefkovicz Decl. at ¶¶ 25-29.

The inadequacy of Defendant's excuses is underscored by the glaring omission of *any* assurance to the Court and Instructure of an actual date certain on which Defendant will finally be in compliance with the PI Order. All Defendant states is that it has created a plan to comply on some future day, but it does not give any clue as to when this day will be. *Id*. at ¶ 19. Worse yet, Defendant says that its rebranding process is organized into two phases, and that it has not even completed *the first half* of Phase I. *Id*. at ¶¶ 15-16. Defendant admits it has still not chosen a new company name, and Defendant's "domain warming process" comes after that and supposedly "takes at least 30 days." *Id*. at ¶ 29. It is clear that Defendant's compliance with the PI Order will not occur anytime soon.

In sum, Mr. Gefkovicz's declaration amounts to Defendant telling the Court that Defendant will pursue the course of action that *it* chooses after full vetting of all rebranding options in a manner that ensures the most beneficial and smooth rebranding process it can achieve, and that the Court's PI Order is secondary to those considerations. Defendant is in

4891-1383-5788\2

contempt of the PI Order, and it has not come close to establishing substantial compliance. Instead, its conduct and excuses reveal a troubling lack of respect for this Court's authority. Contrary to Defendant's self-serving argument, Dkt. 94 at 9, its own admissions show that there is a compelling need for both coercive and compensatory sanctions. In fact, only the most severe sanctions will be adequate to ensure that Defendant does not approach this Court's orders with a cavalier attitude that places them secondary to Defendant's preferred course of action and timeline.

Regarding compensatory sanctions, awarding Instructure its attorneys' fees is appropriate here. *See Bad Ass Coffee Co. v. Bad Ass Coffee P'ship*, 95 F. Supp. 2d 1252, 1257 (D. Utah 2000) (awarding attorneys' fees as sanction for contempt of preliminary injunction); *Phone Directories Co., Inc. v. Clark*, 209 Fed. Appx. 808, 816 (10th Cir. 2006) (affirming contempt finding and award of fees as sanction). At a minimum, the Court should award Instructure the fees incurred in investigating and initiating the present contempt proceedings. In addition, because Defendant's willful infringement continues to this day and its noncompliance with the PI Order is deliberate and calculated, the irreparable harm to Instructure and its trademark rights is ongoing and Instructure has yet to enjoy any relief from the large investment it made to pursue the preliminary injunction motion. It would, therefore, be appropriate to also award the fees and costs Instructure incurred in the preliminary injunction proceedings.

With regard to coercive sanctions, given Defendant's bold message that its noncompliance with the PI Order will continue indefinitely until it decides it is comfortable with a rebranding strategy, the Court should impose a daily, significant monetary sanction that will compel Defendant's compliance. *See, e.g., Premium Nutritional Prods. v. Ducote*, 571 F. Supp.

2d 1216, 1221 (D. Kan. 2008) ("Because the infringing conduct continues unabated, the Court finds that it is appropriate to impose a coercive fine for each day that the contempt continues."). When crafting an appropriate amount that will have the desired effect of compelling compliance, the Court should take into consideration the fact that Defendant has recently been infused with $70 million in new funding,[3] so it is entirely possible that Defendant has made a calculated business decision to place its rebranding plans above compliance with the PI Order by simply building in the potential cost of contempt sanctions.[4]

Finally, to impose an additional incentive toward compliance, the Court could also order that if Defendant is not in full compliance with the PI Order within one week, the Court will apply terminating sanctions.

> When considering whether to issue terminating sanctions against a party [for contempt], "a district court should ordinarily consider the following factors: (1) the degree of actual prejudice to the [plaintiff]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." "These factors do not constitute a rigid test; rather,

---

[3] Dkt. 14-19 (press release reporting $20 million in new funding in May 2021); Dkt. 38 at 2, n.3 (citing Forbes article reporting $50 million in funding in September 2021)

[4] Defendant tries to cloak itself in good faith by citing its reliance on advice of counsel throughout its rebranding processes. *See* Gefkovicz Decl. at ¶¶ 11-13. Consequently, Defendant has waived the privilege for all attorney-client communications and work product relating to Defendant's rebranding efforts. *See, e.g., U.S. v. Koerber*, 2013 WL 2407662, *3 (D. Utah May 31, 2013) ("As the Tenth Circuit has noted, by raising an advice-of-counsel defense, a party thereby waives the attorney-client privilege regarding the advice counsel has given the party on the issue."). The Court should order Defendant to produce all counsel advice and communications regarding trademark clearance searches, rebranding, and the PI Order, including Defendant's original adoption of the Canvas Mark to determine whether Defendant actually proceeded contrary to the advice it was given.

9

>> they represent criteria for the district court to consider prior to imposing dismissal as a sanction."

*TFG-Michigan, L.P. v. Boersen Farms Grain*, 2017 U.S. Dist. LEXIS 161170, *7-8 (D. Utah 2017) (quoting *Norouzian v. Univ. of Kan. Hosp. Auth.*, 438 Fed Appx 677, 679 (10th Cir. 2011) and *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).  The record here supports terminating sanctions.

*First*, the Court has *repeatedly* found that the actual harm to Instructure is "significant" as Defendant continues "to trade off the goodwill and reputation that Instructure built" and refuses to comply with the PI Order.  Dkt. 74 at 29; Dkt. 84 at 5-6.  *Second*, Defendant's contempt has interfered with the judicial process by necessitating these contempt proceedings.  *Third*, it cannot be refuted that Defendant is entirely culpable for its noncompliance and contemptuous conduct.  *Fourth*, the day before Defendant's compliance was mandated under the PI Order, the Court warned Defendant that "it is required to comply with the preliminary injunction enjoining it from using the canvas mark by January 20, 2022 unless a stay on the preliminary injunction is entered."  Dkt. 84 at 1.  As the Court knows, no such stay has ever been entered by this Court or the Tenth Circuit.  *Fifth*, while it remains to be seen, Defendant's conduct to date and its recent infusion of cash suggests monetary sanctions alone would not be sufficient to compel Defendant's compliance and instill a sense of respect for this Court's orders.

Accordingly, consideration of the factors above indicates terminating sanctions are warranted, and that the Court should strike Defendant's answer and enter final judgment in

Instructure's favor on all claims, which should include an order compelling Defendant to assign the www.canvas.com domain to Instructure.[5]

Instructure respectfully asks the Court to hold Defendant in contempt of the PI Order and impose appropriate compensatory and coercive sanctions.

DATED this 7th day of February, 2022

                            DORSEY & WHITNEY LLP

                            /s/ *Mark A. Miller*
                            Mark Miller (#9563)
                            Brett Foster (#6089)
                            Mike Keyes (admitted pro hac vice)
                            Tamara L. Kapaloski (#13471)

                            *Attorneys for Plaintiff/Counterclaim-Defendant Instructure, Inc.*

---

[5] "[T]ransfer of the domain name to the owner of the mark" is a remedy for Instructure's cybersquatting claim. *See* 15 U.S.C. § 1125(d)(1)(C); Complaint at 27-28. *See also Morrison & Foerster LLP v. Wick*, 94 F. Supp. 2d 1125, 1129-30 (D. Colo. 2000) ("The ACPA allows me to order the … transfer of the domain name to the owner of the mark.") (cleaned up).

4891-1383-5788\2

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of February, 2022, a true and correct copy of the foregoing document was served on counsel of record via the Court's ECF system.

    Sterling A. Brennan: sbrennan@mabr.com
    Charles J. Veverka: cveverka@mabr.com
    Peter J. Willsey: pwillsey@brownrudnick.com
    Vincent J. Badolato: vbadolato@brownrudnick.com
    Jason M. Sobel: jsobel@brownrudnick.com
    Stephanie P. Calnan: scalnan@brownrudnick.com

                                                                                 */s/ Mark Miller*